## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 7 |
| | Case No. 20-10553 (CTG) |
| START MAN FURNITURE, LLC, et al.[1] | Jointly Administered |

| | |
|---|---|
| TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated, | Civil Action No. 22-cv-450 (CFC) |
| | Bankruptcy Case No. 20-10553 (CTG) |
| Appellants, | Bankruptcy Adv. Pro. No. 20-50548 (CTG) |
| | Bankruptcy BAP No. 22-00030 |
| v. | |
| | |
| ALFRED T. GIULIANO, chapter 7 trustee for Debtors Start Man Furniture, LLC, et al., | |
| | |
| Appellee. | |

| | |
|---|---|
| ALFRED T. GIULIANO, chapter 7 trustee For Debtors Start Man Furniture, LLC, et al., | Civil Action No. 22-cv-489 (CFC) |
| | |
| Appellant, | Bankruptcy Case No. 20-10553 (CTG) |
| | Bankruptcy Adv. Pro. No. 20-50548 (CTG) |
| v. | Bankruptcy BAP No. 22-00032 |
| | |
| TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated, | |
| | |
| Appellees. | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

# <u>CROSS-APPELLANT'S OPENING BRIEF</u>

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (Bar No. 4142)
Beth E. Levine (admitted *pro hac vice*)
Colin R. Robinson (Bar No. 5524)
Peter J. Keane (Bar No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  bsandler@pszjlaw.com
        crobinson@pszjlaw.com
        pkeane@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee*

## CORPORATE DISCLOSURE STATEMENT

Each of the Debtors listed below* is wholly directly or indirectly owned by SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) ("<u>Holding</u>"). Holding has no corporate parent, and there is no publicly held corporation that owns 10% or more of its stock.

*<u>Applicable Debtors</u>: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC); SVCE, LLC (f/k/a AVCE, LLC); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC); SVF Parent, LLC (f/k/a AVF Parent, LLC); Levin Parent, LLC; Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC); SVF Franchising, LLC (f/k/a AVF Franchising, LLC); LF Trucking, Inc.; Sam Levin, Inc.; and Comfort Mattress LLC.

# TABLE OF CONTENTS

**Page**

BASIS OF APPELLATE JURISDICTION ...............................................................1

STATEMENT OF ISSUE ON CROSS-APPEAL ....................................................2

SUMMARY OF ARGUMENT ................................................................................2

STANDARD OF REVIEW ......................................................................................4

STATEMENT OF FACTS .......................................................................................4

    A.    General Background    4

    B.    The Planned Liquidation Process    6

    C.    The Chapter 11 Cases    10

    D.    Plaintiffs' Termination by Debtors and the Conversion to Chapter 7    12

    E.    The Adversary Proceeding    15

    F.    Bankruptcy Court Ruling [Adv. D.I. 63 & 64]    16

ARGUMENT .........................................................................................................17

    AVF Was A Liquidating Fiduciary At The Time Of The Layoff And Was Thus Not Subject To The WARN Act Pursuant To Binding Third Circuit Precedent    17

CONCLUSION .....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Flint Glass Workers Union v. Anchor Resolution Corp.*,
  197 F.3d 76 (3d Cir. 1999) ....................................................................... 4

*Bailey v. Jamesway*,
  1997 Bankr. LEXIS 825 (Bankr. S.D.N.Y. 1997) .................................. 19

*Farrell v. Planters Lifesavers Co.*,
  206 F.3d 271 (3d Cir. 2000) ..................................................................... 4

*Fields v. Thompson Printing Co., Inc.*,
  363 F.3d 259 (3d Cir. 2004) ..................................................................... 4

*Hanover Potato Products, Inc. v. Shalala*,
  989 F.2d 123 (3d Cir. 1993) ..................................................................... 4

*In re Mushroom Transp. Co., Inc.*,
  382 F.3d 325 (3d Cir. 2004) ..................................................................... 4

*In re United Healthcare Sys.*,
  1997 U.S. Dist. LEXIS 5090 (D.N.J. March 26, 1997) ........................ 20

*In re United Healthcare System, Inc.*,
  200 F.3d 170 (3d Cir. 1999) ............................................................ passim

*Marco v. Accent Pub. Co.*,
  969 F.2d 1547 (3d Cir. 1992) ................................................................... 4

*Newark Morning Ledger Co. v. United States*,
  734 F.Supp. 176 (D.N.J. 1990) .............................................................. 20

*Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings Ltd.)*,
  481 B.R. 268 (Bankr. S.D. N.Y. 2012) ................................................. 18

*Walsh v. Century City Doctors Hosp., LLC (In re Century City Doctors Hosp., LLC)*,
  417 B.R. 801 (Bankr. C.D. Cal. 2009) .................................................. 18

STATUTES

28 U.S.C. § 157(a) ........................................................................................ 1

28 U.S.C. § 157(b)(1) ................................................................................... 1

28 U.S.C. § 158(a) ...................................................................................... 16

28 U.S.C. § 1334(a) ...................................................................................... 1

29 U.S.C. § 2101(a)(1) ............................................................................... 17

**RULES**

Federal Rule of Civil Procedure 56(c) ........................................................................... 4

Bankruptcy Rule 8001 .................................................................................................... 16

Bankruptcy Rule 8002 ................................................................................................... 16

**REGULATIONS**

54 Fed. Reg. 16042, 16045 (Thurs., April 20, 1989) .................................................. 17

Cross-Appellant and Appellee Alfred T. Giuliano, Chapter 7 Trustee ("Trustee" or "Cross-Appellant"), in connection with his cross-appeal to the United States District Court for the District of Delaware from the final order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), set forth in its *Opinion* and *Order* filed on March 21, 2022 [Adv. D.I. 63 & 64] (Appendix A001693-A001721 and A001722, respectively) (the "Opinion" or "Order"),[2] hereby submits his Cross-Appellant's Opening Brief.

## BASIS OF APPELLATE JURISDICTION

The Bankruptcy Court had jurisdiction over the voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code"). The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a). The Bankruptcy Court had jurisdiction over the adversary proceeding as a core proceeding in accordance with 28 U.S.C. § 157(b)(1).

This Court has jurisdiction over this timely appeal from the Opinion and the Order of the Bankruptcy Court, which denied the Trustee's motion for summary judgment (the "SJ Motion") solely with respect to the "liquidating fiduciary" exception under the Federal Worker Adjustment and Retraining Notification Act.

---

[2] All citations herein to "Adv. D.I. __" refer to the adversary proceeding docket in Adversary Number 20-50548 (CSS). All citations to "Bankr. D.I. __" refer to the Debtors' lead Chapter 11 Case, Case No. 20-10553 (CSS).

Pursuant to the Opinion and the Order, the Bankruptcy Court granted the SJ Motion in favor of the Trustee on all other bases.[3]

## STATEMENT OF ISSUE ON CROSS-APPEAL

Did the Bankruptcy Court err in finding that the "liquidating fiduciary" exception to the Federal Worker Adjustment and Retraining Notification Act (the "WARN Act") does not apply to the instant case?

## SUMMARY OF ARGUMENT

The Third Circuit Court of Appeals has specifically held that where, as here, a chapter 11 debtor-in-possession has ceased operating as a going concern and is merely conducting a liquidation, it is not operating a "business enterprise" and is therefore not, an "employer" subject to the WARN Act.[4] *In re United Healthcare System, Inc.,* 200 F.3d 170, 178 (3d Cir. 1999), *cert denied*, 530 U.S. 1204 (2000). The Bankruptcy Court erred by incorrectly determining that the "liquidating fiduciary" exception to WARN Act liability established in *United Healthcare* does not apply to the instant case.

Importantly, as discussed below, the *United Healthcare* court explained that the application of the "liquidating fiduciary" exception would be subject to a sliding scale: "the more closely the [debtor's] activities resemble those of a business

---

[3] Pursuant to the Opinion and Order, the Bankruptcy Court granted the Trustee's SJ Motion with respect to the following: (i) the "unforeseen business circumstances" exception under the WARN Act applies in this case; and (ii) the COVID-19 pandemic falls within the "natural disaster" exception under the WARN Act.

[4] The WARN Act defines an "employer" as "any business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1).

winding up its affairs, the more likely it is the entity is not subject to the WARN Act." 200 F.3d at 178.  The Third Circuit did not view a debtor's liquidation process in a chapter 11 case, including a postpetition sale of the debtor's goodwill (*i.e.*, a going concern sale), as the conduct of business "in the normal commercial sense" that would make the entity an employer for WARN Act purposes.

In determining that the "liquidating fiduciary" exception did not apply, the Bankruptcy Court erroneously focused on the facts that the Debtors conducted postpetition going-out-of-business ("GOB") sales at a number of stores, which would be closed thereafter, and kept certain stores temporarily open pending the going-concern sale of those stores to a third party in the bankruptcy case.  But the *United Healthcare* court recognized that a debtor's actions in connection with and/or in preparation of a goodwill/going concern sale (including limited postpetition business operations) can be consistent with and part of the liquidating fiduciary function and an exception to WARN liability.  As in *United Healthcare*, the Debtors' actions here, from the beginning of the Chapter 11 Cases (and even before the Chapter 11 Cases), publicly and openly demonstrated a clear intent to liquidate the Debtors' stores and other assets, and not to operate their business "in the normal commercial sense."  200 F.3d at 177 (quoting 54 Fed. Reg. at 16045).

Accordingly, the Opinion and the Order of the Bankruptcy Court should be reversed solely with respect to the Bankruptcy Court's rulings relating to the "liquidating fiduciary" exception.  The Bankruptcy Court erred in not granting

summary judgment in favor of the Trustee on the basis of the "liquidating fiduciary" exception articulated by the Court of Appeals for the Third Circuit.

## STANDARD OF REVIEW

This appeal involves review of the Bankruptcy Court's grant of summary judgment, a purely legal determination governed by a *de novo* standard of review. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The District Court assesses the record using the same standards for summary judgment employed by the Bankruptcy Court. *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 335 (3d Cir. 2004) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000)). A Bankruptcy Court abuses its discretion when its ruling is founded on a clearly erroneous finding of fact, an error of law, or a misapplication of law to the facts. *Marco v. Accent Pub. Co.*, 969 F.2d 1547, 1548 (3d Cir. 1992); *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993).

Summary judgment is appropriate where the moving party can demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Appellant is entitled to the evidence in the light most favorable to the non-movant, "draw[ing] all reasonable inferences in favor of the non-moving party." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 265 (3d Cir. 2004).

## STATEMENT OF FACTS

### A.    General Background

Prior to March 8, 2020 (the "Petition Date"), the Debtors had sold furniture for over 60 years, with 169 stores in Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia, and approximately 4,500 employees.[5]

On the Petition Date, Art Van Furniture, LLC ("AVF"), Sam Levin, Inc. ("SLI") and the other related above-captioned debtors (collectively, the "Debtors" or "Art Van") commenced their respective voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") to continue liquidating substantially all of their assets, an effort which had started before the Petition Date.  The Debtors' cases are being jointly administered under lead Case No. 20-10553 (CSS).  Upon the Debtors' motion (the "Conversion Motion"), based on the facts and circumstances described further below, on April 6, 2020, less than a month after the Petition Date, the Chapter 11 Cases were converted to chapter 7 proceedings (the "Cases").

The Debtors filed the Chapter 11 Cases with the express intention of winding down their affairs by liquidating their inventory through store closing sales (the "GOB Sales"), paying down their secured debt, and using any remaining proceeds of their GOB Sales to wind-down their operations.[6]  In addition, as of the Petition Date, the Debtors were party to a binding letter of intent for a sale of 44 Levin and Wolf stores and related assets and operations to a third party buyer.  The GOB Sales, the Levin Sale (as defined and described below), and other actions taken by the

---

[5] *Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. D.I. 12] ("Ladd Declaration") at 2 (Appendix A0000001-000032).

[6] Ladd Declaration at ¶¶ 6 & 18.

Debtors in the Chapter 11 Cases were all part of the orderly liquidation and wind-down started by the Debtors before and continuing after the Petition Date (the "Planned Liquidation Process") to maximize the liquidation value of the estates' assets and the recoveries for the Debtors' creditors.[7]

**B.      The Planned Liquidation Process**

In the months leading up to the Petition Date, Art Van struggled under the weight of poor sales and $208.5 million in secured debt encumbering substantially all of its assets made up of: (i) $33.5 million in an asset-backed loan ("ABL Loan") from Wells Fargo Bank ("Wells Fargo") and (ii) a $175 million term loan (the "Term Loan") from FS KKR Capital Corp. (the "Term Lenders" and together with Wells Fargo, the "Secured Lenders").[8]  Art Van defaulted on the ABL Loan on February 5, 2020 and had only been able to obtain a forbearance from Wells Fargo through February 28, 2020, giving it 23 days to find a buyer, an investor or a means of recapitalizing the business.  As a condition to the forbearance, Wells Fargo insisted that the Debtors begin preparing for going-out-of-business (GOB) sales.[9]

In spite of the Debtors' efforts over the next 23 days in February 2020, by February 28, 2020, the Debtors were unable to secure financing or attract a going concern buyer.[10]  The forbearance period ended on that date, and the Debtors had no

---

[7] Ladd Declaration at ¶¶ 6, 16, 17, 18, 19, 20, 40, 41, 42 & 43.

[8] *See* Ladd Declaration at ¶¶ 7, 8, 13, 14, 16, 17, 18, 31-36.

[9] *See* Ladd Declaration at ¶¶ 14 & 36.

[10] *See* Transcript of March 10, 2020 hearing (attached as Exhibit B to Sandler Declaration) at p. 55, line 25 to 57, line 20 (Appendix A000530-A000532); Ladd Declaration at ¶¶ 14-15.

alternative but to commence an orderly wind-down of their operations and liquidate their assets.[11] To that end, before the Petition Date, the Debtors negotiated a wind-down budget with Wells Fargo ("Wind-Down Budget"), hired a liquidator, and announced publicly that after decades of operations, they were going out of business.[12]

As part of the Planned Liquidation Process, on March 4, 2020, SLI entered into a letter agreement (the "Levin LOI") pursuant to which it agreed to liquidate certain stores (most of which were in Pennsylvania), two distribution centers and certain other assets (the "SLI Assets") by a sale to Robert Levin (the "Levin Sale").[13] The Levin Sale was expected to be approved in bankruptcy and consummated in or about early April 2020.

The Levin LOI contemplated that although the Levin Sale stores would be monetized by  liquidating those assets, the Levin Sale stores would briefly continue operating under the Art Van banner to preserve their value for the buyer pending the

---

[11] *See* Ladd Declaration at ¶¶ 16-18.

[12] *See* Ladd Declaration at ¶¶ 16-18; *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Bankr. D.I. 93] (the "Interim CC Order") at 13 (Appendix A000238-A000302).   On March 5, 2020, the Debtors entered into an agreement (the "Consulting Agreement") with HilcoMerchant Resources, LLC (the "Liquidator") (Appendix A001084-A001123). *See* Interim CC Order at 12. *See also* "Art Van Furniture to close all stores, including 24 in Illinois," *Chicago Tribune*, March 5, 2020, available at https://www.chicagotribune.com/business/ct-biz-art-van-shutting-down-20200305-2efw2ukfk5g2dfpzgooebjv7ry-story.html (Appendix A000776-A000779) ("Art Van GOB Press Release").

[13] Robert Levin had owned the stores that were the subject of the Levin LOI prior to them being sold to the Debtors.

approval of the Levin Sale by the Bankruptcy Court.[14]  Because the Debtors had no money to operate these stores (they only had the money that Wells Fargo had agreed to let them use to conduct the GOB Sales), Robert Levin agreed to extend $10 million of debtor-in-possession (DIP) financing to SLI (the "Levin DIP Loan") to facilitate the bankruptcy process to allow for the Bankruptcy Court's approval of the Levin Sale, which $10 million then would be repaid with and deducted from the sales proceeds of the Levin Sale.[15]

In sum, as of March 5, 2020, the Debtors had put into place an orderly full business liquidation process, comprised of the GOB Sales to liquidate AVF's assets including 125 stores and the Levin Sale to liquidate the SLI Assets.

On March 5, 2020, Art Van publicly announced that it was liquidating and going out of business.[16]  Indeed, plaintiffs have acknowledged and admitted that the

---

[14] *See* Ladd Declaration at ¶¶ 40-41.  *See also Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. Sections 105, 361, 364(c) and 364(d); and (II) Granting Related Relief* [Bankr. D.I. 49] ("Levin DIP Motion") (Appendix A000033-A000109).

[15] *See* Levin DIP Motion; *Interim Order* on Levin DIP Motion [Bankr. D.I. 137] ("Interim Levin DIP Order").  Because the Levin DIP Loan would be repaid with and deducted from the sales proceeds of the Levin Sale, this financing transaction and the Debtors' related alleged "operation" of the Levin Stores were done to preserve the value of these stores until consummation of the Levin Sale for the benefit of the third party buyer, not the Debtors.  The foregoing cannot be reasonably considered to be the "normal" operation of a business.

[16] *See* Art Van GOB Press Release; "Art Van Furniture to Close All Stores; Going Out of Business Sales to Start Friday, March 6," *PRNewswire* (March 5, 2020), available at https://www.prnewswire.com/news-releases/art-van-furniture-to-close-all-stores-going-out-of-business-sales-to-start-friday-march-6-301017308.html (Art Van "announced today it has made the difficult decision to wind down operations and begin liquidation sales"); M. Feighan, *et al.*, "'Heartbroken,' 'angry': Art Van closing shocks customers, city leaders," *The Detroit News* (March 5, 2020), available at https://www.detroitnews.com/story/news/local/michigan/2020/03/05/art-van-close-all-stores-start-going-out-business-sale-friday/4962367002/ ("Art Van Furniture, a Metro Detroit institution and one of the largest furniture retailers in the Midwest, will close all of its company-owned stores and liquidate its inventory ….").

Debtors began their liquidation plan at this time. *See Class Action Adversary Proceeding Complaint For Violation of WARN Act 29 U.S.C. § 2101, et seq.* [Adv. Docket No. 1] (the "Complaint") (Appendix A000335-A000345), at ¶ 25 ("… Debtors began to execute on its planned liquidation.").

On March 5, 2020, as part of its Planned Liquidation Process, although not required, AVF issued a WARN Act notice to approximately 1,400 potentially "affected employees" who worked in or reported to seven facilities in Michigan, two facilities in Illinois and one in Pennsylvania. Each of the Plaintiffs who worked at an affected location in Michigan and were notified as follows:

> Art Van Furniture, LLC (the "Company") has made the difficult decision to wind-down its operations, which will include the closure of its facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI,49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, and will be permanently terminating the employment of all employees at these locations.

> The Company submits this notice to you to satisfy any obligation that may exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). If no obligations exist, this notice is being provided to you voluntarily.

> All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). While an exact date has not yet been established for these closures, it is anticipated that your employment with the Company will terminate on May 5, 2020 or a date

within 14 days thereafter which may be provided to you by the Company (your "Termination Date"). Nothing in this letter alters your at-will employment status with the Company.

You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(the "GOB Sale WARN Notice") (Appendix A000875).[17]

The Debtors' target date to end the GOB Sales was the end of April 2020.[18]

The GOB Sales commenced as expected, and went well at first.[19]

## C.   The Chapter 11 Cases

On the Petition Date, the Debtors filed their Chapter 11 Cases and filed "first day motions" to obtain approval of, *inter alia*, the Wind-Down Budget,[20] the Levin DIP,[21] and GOB Sales and the Consulting Agreement with the Liquidator.[22]   On March 11, 2020, the Bankruptcy Court entered an interim cash collateral order,

---

[17] Notably, given how transparent and proactive Art Van was from early on in informing its employees and the public and other parties in interest of Art Van's liquidation and wind-down, it cannot be credibly argued that the Debtors were engaged in gamesmanship to avoid any legitimate WARN Act liabilities.

[18] *See* Ladd Declaration at ¶ 18 (Debtors seeking to complete store closure sales in six to eight weeks from March 5, 2020).

[19] *Corrected Motion for Entry of Order Converting Their Chapter 11 Cases to Cases Under Chapter 7* [Bankr. D.I. 252] (Appendix A000304-A000333) (the "Conversion Motion") at ¶ 22.

[20] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Bankr. D.I. 5] (Appendix A000908-A000934).

[21] *See* Levin DIP Motion; Interim Levin DIP Order.

[22] *See Debtors' Motion for Entry of Interim and Final Orders  (I) Approving Procedures for Store Closing Sales, (II) Authorizing Customary Bonuses to Employees of Closing Stores; (III) Authorizing Assumption of Consulting Agreement and (IV) Granting Related Relief* [Bankr. D.I. 52] (Appendix A000110-A000237).

authorizing the Debtors to use cash collateral in accordance with the Wind-Down Budget until April 7, 2020 (unless terminated earlier due to default or entry of a final order) to conduct the GOB Sales.  The Wind-Down Budget assumed that the GOB Sales would continue unabated through April 30, 2020, and provided that "the failure by the Debtors to continue sales of the Assets in accordance with the Consulting Agreement and to assume the Consulting Agreement on a timely basis" is a default, and thus, the Debtors continued their ongoing GOB sales.[23]

The unprecedented and extraordinary adverse effects during this period (social, economic, and business) caused by the COVID-19 pandemic, confronting the Debtors and many other businesses, are a matter of public record.[24]  Among other signs of the escalation of the pandemic, on March 13, 2020, then-President Donald Trump declared a national emergency.[25]

Art Van continued the hearing on its first day motions to March 12, 2020.  The Bankruptcy Court apologized for taking the bench 40 minutes late, saying, "I very much apologize. As I'm sure you all are aware, things are developing very quickly. It is taking a lot of my time."[26]  At the hearing, the Bankruptcy Court and the U.S.

---

[23] Interim CC Order at pp. 34-35.

[24] *See Declaration of Bradford Sandler* [Adv. D.I. 46] (Appendix A000435-A001427) (the "Sandler Declaration"), Exhibits L to S attached thereto (Appendix A001206-A001250).

[25] *See* Sandler Declaration, Exhibit L attached thereto (Appendix A001206-A001208).

[26] Transcript of March 12, 2020 Hearings (attached as Exhibit K to Sandler Declaration) at p. 5, lines 5-7. (Appendix A001129).

Trustee expressed concerns about the fee in the Liquidator's Consulting Agreement and continued that portion of the Debtors' GOB sale motion to March 20, 2020.

**D.      Plaintiffs' Termination by Debtors and the Conversion to Chapter 7**

Notwithstanding the careful planning of the Debtors and their advisors, as a result of the COVID-19 pandemic and resultant shutdowns, shortly after the Petition Date, the Debtors' situation changed drastically upending the Debtors' plans for an orderly liquidation.  Customer traffic in the Debtors' stores, which had been robust just days earlier, dissipated to almost nothing within the first week after the Petition Date.  Specifically, during the initial days of the GOB Sales from March 5-8, 2020, deposits from inventory sales were in excess of $23 million; however, for the full week ending March 15, 2020, deposits from sales were just $8 million,[27] suggesting, among other things, a precipitous drop in customer traffic in the Debtors' stores. Further, on March 19, 2020, the proposed purchaser for the Levin Sale notified the Debtors that they would not proceed with the transaction, and thus, the stores covered by the Levin Sale would also have to be immediately closed by the Debtors.[28]

Ultimately, the restrictions on economic and other activity that various state and local governments determined to be necessary to slow the spread of the COVID-19 disease mandated that the Debtors discontinue all retail operations and other non-

---

[27] Conversion Motion at ¶ 22.

[28] Conversion Motion at ¶ 26.

essential business operations – a scenario they had not and could not have planned for when they developed their Planned Liquidation Process.[29]

Soon thereafter, the Debtors' management, with their professionals' counsel and assistance, determined that the Planned Liquidation Process, in its then-existing form, was no longer viable and that a more immediate shutdown of the Debtors' stores and remaining support operations was in the estates' and creditors' best interest.[30]   Thus, on March 19, 2020, the Debtors made the painful decision to suspend all sales operations in all stores and terminate the majority of their employees, excluding workers who would be needed for the rest of the liquidation and wind-down process.[31]

Accordingly, on March 19, 2020, AVF issued a WARN Act notice to employees which stated:

> On March 5, 2020, Art Van Furniture, LLC (the "Company") informed employees that it had made the difficult decision to wind-down its operations, to include the closure of its retail facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, which would in the permanent termination the employment of all employees at these locations.
>
> ***Since initial notice, the Company has been impacted by the novel COVID-19 virus and the resulting, and sudden, negative***

---

[29] Conversion Motion at ¶¶ 1-2.

[30] Conversion Motion at ¶¶ 1-2.

[31] Conversion Motion at ¶ 25.

> ***economic impact. Due to these unforeseen events, the
> Company can no longer support the wind-down of its retail
> operations through the originally projected termination date.
> The Company, therefore, submits this revised notice to you to
> satisfy any obligation that may exist under the federal Worker
> Adjustment and Retraining Notification Act, 29 U.S.C. § 2101
> et seq. (the "WARN Act").***
>
> All terminations of employment will be permanent and you will
> not have bumping rights for other positions (i.e., you will not
> have the right to displace employees with less seniority). The
> employment of Art Van's sales associates and other
> commissioned employees, visuals, housekeepers, drivers,
> helpers, and other hub warehouse staff, Selling Managers and
> Outlet Managers as well as any Sales or Store Manager who is
> not scheduled to perform services on March 21, 2020 or March
> 22, 2020, will be terminated on March 20, 2020.  All CPU's and
> office staff, along with the Store Manager and/or Sales Manager
> scheduled to work on March 21, 2020 or March 22, 2020 will be
> terminated at the end of the business day on March 22, 2020.
> Nothing in this letter alters your at-will employment status with
> the Company.   You will be required to work through your
> Termination Date, following which date you will not be required
> to report to work or provide any services to the Company.

(the "COVID WARN Notice") (Appendix A001252) (emphasis added).

Plaintiffs Todd Stewart and Jennifer Sawle were two of AVF's employees,

and each worked at one of AVF's 82 stores in the State of Michigan (where AVF

also had it main trucking terminal, its corporate headquarters and a distribution

center).  Mr. Stewart was a store manager at an AVF Store in Shelby Township,

Michigan; and Ms. Sawle was a salesperson at an AVF Store in Lansing, Michigan.

In accordance with the COVID WARN Notice, the Trustee believes that Mr. Stewart

and Ms. Sawle were both terminated by AVF, as were most of AVF's and SLI's employees, on March 20, 2022 (the "Layoff").[32]

Wells Fargo declared a default under the Interim CC Order, and terminated use of cash collateral as of March 24, 2020; later extended through March 31 and finally April 6.[33]   Unable to continue the Chapter 11 Cases without the continued consent of the Debtors' secured lenders to use their cash collateral, the Debtors filed the Conversion Motion and the Chapter 11 Cases were converted to chapter 7 proceedings pursuant to an order entered on April 6, 2020.[34]   In ruling on the Conversion Motion, Judge Sontchi stated:

> This case is very unfortunate.  It's really been a parade of unfortunate events that has kind of conspired to put a long-standing, solid business into liquidation.  And, as I sit here today, I certainly don't have enough information to blame anyone or anything other than the coronavirus and the disaster it has left in its wake.[35]

Upon the conversion, Alfred Giuliano was appointed as the chapter 7 trustee [Bankr. D.I. 264] (Appendix A000334).

## E.    The Adversary Proceeding

On March 23, 2020, Plaintiffs initiated the adversary proceeding (the "Adversary Proceeding") by filing the Complaint (Appendix A000335-A000345) in

---

[32] Complaint, at ¶¶ 6, 7, 10.

[33] Conversion Motion at ¶ 27.

[34] *See* Order Granting Debtor's Amended Motion to Convert [Bankr. D.I. 263] (Appendix A001344-A001349) ("Conversion Order').

[35] *See* Transcript of April 6, 2020 Hearing (attached as Exhibit X to Sandler Declaration) at 28, line 24 to p. 29, line 5 (Appendix A001378-A001379).

which they assert that the Debtors violated the WARN Act and seek, *inter alia*, judgment in favor of Plaintiffs and other similarly situated former employees for unpaid wages and other benefits and damages for up to 60 days that would have been otherwise paid, all determined in accordance with the WARN Act.

The Trustee filed an Answer on December 10, 2020 [Adv. D.I. 25] (Appendix A000346-A000362), and in accordance with the Pretrial Scheduling Order [Adv. D.I. 31] (Appendix A000363-A000368), on October 29, 2021, the Trustee filed his First Amended Answer [Adv. D.I. 40] (Appendix A000369-A000387).

**F.     Bankruptcy Court Ruling [Adv. D.I. 63 & 64]**

On November 12, 2021, the Trustee filed his *Motion for Summary Judgment* [Adv. D.I. 43 & 44] (Appendix A000388-A000389, respectively) and supporting *Statement of Undisputed Facts* [Adv. D.I. 45] (Appendix A000422-A000434) and *Declaration of Bradford Sandler* [Adv. D.I. 46] (Appendix A000435-A001427). Plaintiffs filed their *Opposition* [Adv. D.I. 49] (Appendix A001428-A001652).  The Trustee filed his *Reply* in support of the SJ Motion [Adv. D.I. 52] (Appendix A001653-A001692).

On March 21, 2022, the Bankruptcy Court issued its Opinion and Order, pursuant to which the Bankruptcy Court granted the Trustee's SJ Motion, specifically ruling that (i) the "liquidating fiduciary" exception under the WARN Act does not apply to the instant case; (ii) the "unforeseen business circumstances" exception under the WARN Act applies in this case; and (iii) the COVID-19 pandemic falls within the "natural disaster" exception under the WARN Act.

Plaintiffs appealed the Opinion and Order on or about April 4, 2022 [Adv. D.I. 66] (Appendix A001723-A001727).  The Trustee filed his Notice of Cross-Appeal pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8001 and 8002 [Adv. D.I. 72] (Appendix A001728-A001732).   The Trustee cross-appeals only that portion of the Opinion that found that the "liquidating fiduciary" exception does not apply to the facts set forth in the Adversary Proceeding and the Order only to the extent it incorporates that portion of the Bankruptcy Court's Opinion holding that the "liquidating fiduciary" exception to alleged WARN Act liability was inapplicable.  *See* Opinion, at pp. 13-19.

## ARGUMENT

### AVF Was A Liquidating Fiduciary At The Time Of The Layoff And Was Thus Not Subject To The WARN Act Pursuant To Binding Third Circuit Precedent

The Third Circuit Court of Appeals has specifically held that where, as here, a chapter 11 debtor-in-possession has ceased operating as a going concern and is merely conducting a liquidation, it is not operating a "business enterprise" and is therefore not, an "employer"[36] subject to the WARN Act.  *In re United Healthcare System, Inc.,* 200 F.3d 170, 178 (3d Cir. 1999), *cert denied*, 530 U.S. 1204 (2000).[37]

---

[36] The WARN Act defines an "employer" is "any business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)."  29 U.S.C. § 2101(a)(1).

[37] The Department of Labor, the agency responsible for interpreting and implementing WARN Act requirements, has explained in connection with its regulations that "DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a 'business enterprise' in the normal commercial sense."  54 Fed. Reg. 16042, 16045 (Thurs., April 20, 1989).

*United Healthcare* is binding on courts in the Third Circuit. The Bankruptcy Court erred by incorrectly construing and applying *United Healthcare* to this case.

In *United Healthcare*, the creditors' committee argued that the debtor-in-possession -- a hospital that ceased operating and terminated nearly all of its 1,300 employees 16 days after the petition was filed -- was not an "employer" under the WARN Act. The Third Circuit Court of Appeals agreed, reasoning:

> [W]e find that United Healthcare, as the fiduciary in bankruptcy proceedings, was operating not as a "business operating as a going concern," but rather as a business liquidating its affairs. On February 18, 1997, United Healthcare surrendered its certificates of need; on February 19, it filed a voluntary bankruptcy plan under which it would liquidate its assets and cease to exist; and, no later than February 21, United Healthcare had discharged or transferred all of its patients and was no longer admitting new patients. Significantly, after February 19, but in any event no later than February 21, its employees were no longer engaged in their regular duties but instead were performing tasks solely designed to prepare United Healthcare for liquidation.

> We recognize that United Healthcare filed for Chapter 11 bankruptcy, ordinarily used to reorganize, rather than Chapter 7 bankruptcy, generally used to liquidate. **But as discussed, United Healthcare's actions from the time it filed its Chapter 11 petition throughout the proceedings clearly demonstrate its intent to liquidate.** Simultaneously, United Healthcare filed for bankruptcy, agreed to sell its assets and goodwill to St. Barnabas, and surrendered its certificates of need. Had United Healthcare's conduct and activities demonstrated a *bona fide* effort toward reorganization, the evidence may have shown that United Healthcare was an "employer" subject to the WARN Act.

> We believe this analysis is consistent with the legislative purpose behind WARN. . . .

200 F.3d at 178 (emphasis in bold added).[38]   The *United Healthcare* court noted the indisputable point that the debtor in possession in that case (like the Debtors in the prior Chapter 11 Cases) was a fiduciary to the bankruptcy estate and its creditors generally, including in connection with the liquidation of the debtor's business and assets.  *Id.* at 177 n.9.

Importantly, the *United Healthcare* court underscored that the application of the liquidating fiduciary exception would <u>not</u> be black and white in many bankruptcy cases, and that the reviewing court's determination would be subject to a sliding scale:

> In light of the Department of Labor commentary to the regulations and the cases cited, we believe that whether a bankrupt entity is an "employer" under the WARN Act depends on the nature and extent of the entity's business and commercial activities while in bankruptcy, and not merely on whether the entity's employees continue to work "on a daily basis."  The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an "employer" **the more closely the activities resemble those of a business winding**

---

[38] Other courts have similarly recognized the "liquidating fiduciary" principle.  *See, e.g., Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings Ltd.)*, 481 B.R. 268, 272 (Bankr. S.D. N.Y. 2012) ("The U.S. Department of Labor ('DOL') and federal courts addressing WARN Act claims have recognized a 'liquidating fiduciary' principle, excepting from the protection of the WARN Act employee layoffs by liquidating fiduciaries."); *Walsh v. Century City Doctors Hosp., LLC (In re Century City Doctors Hosp., LLC)*, 417 B.R. 801, 804-05 (Bankr. C.D. Cal. 2009), *aff'd* 2010 Bankr. LEXIS 5048 (B.A.P. 9th Cir. Oct. 29, 2010) (holding a chapter 7 trustee who operated a hospital for a few days post-petition (pursuant to an order authorizing him to do so) before terminating its employees was not an "employer" under the WARN Act based on *United Healthcare* where it was clear from the record that the "trustee's intentions have consistently been to close the hospital business at the earliest reasonable time and to liquidate its assets for the benefit of its creditors.  The trustee only operated [the debtor] for approximately a week from the date of filing, and the trustee's brief operation of [the debtor] was not for any commercial purpose."); *Bailey v. Jamesway*, 1997 Bankr. LEXIS 825, at *40 (Bankr. S.D.N.Y. 1997) ("liquidating fiduciaries need not provide notice to terminated employees under the WARN Act").

> **up its affairs, the more likely it is the entity is not subject to the WARN Act**.

*Id.* at 178 (bold emphasis added).  The Third Circuit expressly viewed the sale of the debtor's assets including the debtor's goodwill to an unrelated party named "St. Barnabas" (the "St. Barnabas Sale") early in the chapter 11 case as part and parcel of, and consistent with, the debtor's liquidation which was subject to the liquidating fiduciary exception:

> (i)     "United Healthcare … filed an emergency application [to the bankruptcy court] for the sale of its goodwill to St. Barnabas" (*id*. at 173);
>
> (ii)    "United Healthcare's actions from the time it filed its Chapter 11 petition throughout the proceedings clearly demonstrate its intent to liquidate. Simultaneously, United Healthcare filed for bankruptcy, agreed to sell its assets and goodwill to St. Barnabas …." (*id*. at 178); and
>
> (iii)   "[Following the bankruptcy filing], [debtor] ceased operating its business as a going concern and was simply preparing itself for liquidation. The bankruptcy plan it filed simultaneously with its Chapter 11 petition confirms this assessment: United Healthcare planned to sell its goodwill to St. Barnabas and would itself cease to exist.  Given these prospects and the absence of any evidence United Healthcare structured its bankruptcy petition and the furlough of its employees to avoid WARN Act liability, we hold United Healthcare was no longer subject to the WARN Act when it furloughed its employees" (*id*. at 179).

In short, the Third Circuit did <u>not</u> view a debtor's liquidation process in a chapter 11 case, <u>including</u> a postpetition sale of the debtor's goodwill (*i.e.*, a going concern sale),[39] as the conduct of business "in the normal commercial sense" that would

---

[39] St. Barnabas, as a result of and after the bankruptcy sale, intended to keep the debtor's children hospital open.  *See In re United Healthcare Sys*., 1997 U.S. Dist. LEXIS 5090, at *19 (D.N.J. March 26, 1997) (St.

make the entity an employer for WARN purposes.  *See id*. at 177 (quoting "normal commercial sense" language from 54 Fed. Reg. at 16045).  Rather, it viewed the debtor as "simply preparing itself for liquidation."  200 F.3d at 179.

Notwithstanding the *United Healthcare* opinion's focus on the question of whether the debtor was conducting its business in the "normal commercial sense," in reaching its determination in this case, the Bankruptcy Court was primarily – and incorrectly – concerned with purportedly how "the Debtors' orderly wind-down process contemplated continued postpetition operations."   Opinion, at 19.  According to the Bankruptcy Court:

> The Debtors' GOB Sales are a perfect example of a hybrid of engaging in business (i.e., continuing operations with its employees for the retail sales of goods) while liquidating at the same time. Also, as the Plaintiffs point out, the Levin LOI called for the continued operation of approximately 44 retail store locations and two related distributed centers pending the proposed sale.  In this case, the Debtors intended to continue their operations in the Chapter 11 bankruptcy case for the benefit of creditors and, based on these facts, the Court concludes that the Debtors were subject to an employer's WARN obligations. The "liquidating fiduciary" exception does not apply to this case.

*Id.* (footnotes omitted).

Yet, as discussed above, the *United Healthcare* court acknowledged there would be gradations on the liquidating fiduciary scale and that a debtor's actions in

---

Barnabas "was committed to keeping the Children's Hospital in one location and providing $5 million in future investments").  *See also Newark Morning Ledger Co. v. United States*, 734 F.Supp. 176, 182 (D.N.J. 1990), *rev'd on other grounds*, 945 F.2d 555 (3d Cir. 1991) ("Goodwill is acquired by the purchase of a going concern where the transfer enables the purchaser to step into the shoes of the seller.").

connection with and/or in preparation of a goodwill / going concern sale (including limited postpetition business operations) can be consistent with and part of the liquidating fiduciary function and exception to WARN liability.[40]   In sum, the Bankruptcy Court's reading and application of all of the elements of *United Healthcare* was overly narrow and erroneous.

Here, as in *United Healthcare*, the Debtors' actions from the beginning of the Chapter 11 Cases (and before) evidence a clear, open, and public intent from the outset to liquidate the Debtors' stores and other assets, and not to operate their business "in the normal commercial sense."  *See* 54 Fed. Reg. 16042, 16045 (Thurs., April 20, 1989).  As discussed above, all of the Debtors' efforts at reorganizing as a going concern stopped even before the Petition Date, and in fact, all of the Debtors' efforts prepetition to reorganize were unsuccessful.  As a result of this failure, and before the Petition Date, the Debtors hired the Liquidator, gave the GOB Sale WARN Notice and commenced GOB Sales, and issued a public statement telling the world that they were liquidating their assets.  When the Debtors ultimately filed their Chapter 11 Cases on March 8, 2020, they intended to, and did, continue liquidating their assets through the GOB Sales and the Levin Sale.  As of the Petition

---

[40] The healthcare/hospital industry in which the debtor in *United Healthcare* was involved is certainly different from the retail furniture industry in which the Debtors were involved, with respect to what constitutes liquidating and wind-down activities and regulatory requirements and aspects related thereto. Thus, it is not surprising that some specific details of United Healthcare's liquidation are different from the Debtors' liquidation as occurred in the Debtors' Chapter 11 Cases, but nonetheless, both United Healthcare and Art Van intended to promptly liquidate their assets in their respective chapter 11 cases, thus falling within the liquidating fiduciary exception.

Date, and before the Layoff, the only business activities to be conducted by the Debtors were those necessary to continue liquidating their assets.

Under the clear facts in this case, there can be no reasonable dispute that the Debtors were at all relevant times – both pre-Petition Date and post-Petition Date – liquidating, as opposed to operating their business in the normal commercial sense, which they stopped doing before the Petition Date and certainly did not do in these Chapter 11 Cases.  As described above, the Debtors intended to be and were acting as liquidating fiduciaries before the Petition Date and at the time of the March 20, 2020 Layoff.  Therefore, as a matter of Third Circuit law, the Debtors were not "employers" under the WARN Act, and as such, summary judgment on the liquidating fiduciary defense should have been entered in favor of the Trustee.

## **CONCLUSION**

Cross-Appellant respectfully submits that the Opinion and the Order are predicated on a flawed reading of the *United Healthcare* case and application thereof to the instant case.  As such, the portion of the Opinion and the Order that held that the "liquidating fiduciary" defense under the WARN Act was inapplicable here should be reversed.

Dated:  June 21, 2022

PACHULSKI STANG ZIEHL & JONES LLP

*/s/Bradford J. Sandler*
Bradford J. Sandler (Bar No. 4142)
Beth E. Levine (admitted *pro hac vice*)
Colin R. Robinson (Bar No. 5524)
Peter J. Keane (Bar No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  bsandler@pszjlaw.com
          crobinson@pszjlaw.com
          pkeane@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7
Trustee*