# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of (a) AVF Parent, LLC (the "Borrower"), and

(b) AVF Holdings II, LLC, Art Van Furniture, LLC, Art Van Furniture of Canada, LLC, AV Pure

Sleep Franchising, LLC, AVCE, LLC, AVF Franchising, LLC, AVF Holding Company, Inc., AVF

Holdings I, LLC, Levin Parent, LLC, LF Trucking, Inc., Comfort Mattress, LLC and Sam Levin,

Inc., each as a debtor and debtor in possession (collectively, with the Borrower, the "Debtors") in

the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this

"Interim Order") pursuant to sections 105, 361, 362, 363 and 507 of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *inter alia*:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

(i)       authorizing the Debtors to use the Prepetition Collateral (as defined herein), including all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code ("<u>Cash Collateral</u>") of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and providing adequate protection to the Prepetition ABL Parties and Prepetition Term Loan Parties for any diminution in value, including resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and, in the case of the Prepetition Secured Parties, the priming of their respective interests in the Prepetition Collateral (including by the Carve Out) pursuant to the terms and conditions set forth herein ("<u>Diminution in Value</u>");

(ii)      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(iii)     scheduling a final hearing (the "<u>Final Hearing</u>") within 30 days of the Petition Date to consider the relief requested in the Motion on a final basis (the "<u>Final Order</u>") and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the exhibits attached thereto, the *Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* and the evidence submitted and argument made at the interim hearing held on March 10, 2020 (the "<u>Interim Hearing</u>"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and all applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"); and the Interim Hearing having

A000239

been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

  A. **Petition Date**.  On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

  B. **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

  C. **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A000240

U.S.C. §§ 1408 and 1409.

        D.     **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

        E.     **Notice**.  Notice of the Motion and the Interim Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

        F.     **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 27 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

        (i)     *Prepetition ABL Facility*.  Pursuant to that certain *ABL Credit Agreement* dated as of March 1, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the Borrower (the "Prepetition ABL Borrower"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) Wells Fargo Bank, National Association, as administrative agent, issuing bank and collateral agent (in such capacity, the "Prepetition ABL Agent"), and (d) the lenders party thereto (collectively, including the Prepetition ABL Agent, the "Prepetition ABL Lenders," and the Prepetition ABL Lenders and the Prepetition ABL Agent, together, the "Prepetition ABL

4

A000241

Parties"), the Prepetition ABL Lenders provided revolving credit, term loans and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility") in an aggregate principal amount of up to $82,500,000.

        (ii)    *Prepetition ABL Obligations*. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than approximately $33,573,784.18, inclusive of not less than $14,900,000 of issued and outstanding letters of credit and the Early Termination Premium as defined in the Prepetition ABL Documents (collectively, together with accrued and unpaid interest, bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

        (iii)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral*. As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, security interests in and continuing liens on

5

(the "Prepetition ABL Liens") substantially all of their assets and property, including (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain Intercreditor Agreement referred to in paragraph F(vii) below) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Loan Priority Collateral (as defined in the Intercreditor Agreement) and proceeds, products, and rents of any of the foregoing (collectively, the "Prepetition Term Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral"), subject only to the liens of the Prepetition Term Loan Agent on the Prepetition Term Priority Collateral and Prepetition ABL Permitted Prior Liens (as defined herein).

(iv)     *Prepetition Term Loan Facility*.  Pursuant to that certain Credit Agreement dated as of March 1, 2017 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the Borrower (the "Prepetition Term Loan Borrower" and together with the Prepetition ABL Borrower, the "Prepetition Borrowers"), (b) Virtus Group, LP, as administrative agent and collateral agent (in such capacities, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), (c) the guarantors thereunder (the "Prepetition Term Loan Guarantors" and, together with the Prepetition ABL Guarantors, the "Prepetition

6

Guarantors"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively, including the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities") in an aggregate principal amount of $100,000,000.

(v)     *Prepetition Term Loan Obligations*.   As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was not less than approximately $175,000,000 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements reimbursable thereunder), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Loan Borrower's and the Prepetition Term Loan Guarantors' obligations pursuant to, or secured by, the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)     *Prepetition Term Loan Liens and Prepetition Term Priority Collateral*.  As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Term Loan Borrower and the Prepetition Term Loan Guarantors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders,

7

security interests in and continuing liens on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets and property, including (a) a first priority security interest in and continuing lien on the Prepetition Term Priority Collateral, and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and Prepetition Term Loan Permitted Prior Liens (as defined herein).

(vii)    *Priority of Prepetition Liens; Intercreditor Agreement.*    The Prepetition Agents entered into that certain Intercreditor Agreement dated as of March 1, 2017 (as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors. Each of the Prepetition Borrowers and Prepetition Guarantors under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(viii)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*    The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Priority Collateral and (2) certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of

A000245

the Bankruptcy Code) or otherwise permitted by the Prepetition ABL Documents (the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value;

9

(b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral and (2) certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition Term Loan Documents (the "Prepetition Term Loan Permitted Prior Liens" and, together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens");[4] (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have

---

[4] For the avoidance of doubt, as used in this Interim Order, no reference to the Prepetition ABL Permitted Prior Liens, the Prepetition Term Loan Permitted Prior Liens, or the Permitted Prior Liens shall refer to or include the Prepetition ABL Liens or the Prepetition Term Loan Liens.

A000247

waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

          (x)    *Release.* The Debtors hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the Prepetition Agents, the Prepetition Secured Parties, all former, current and future Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the Prepetition Secured Facilities, the Prepetition Documents, and/or the transactions contemplated hereunder or thereunder occurring prior to entry of this Interim Order, including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agents and the Prepetition Secured Parties. The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations which the Debtors may now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to this Court entering this Interim Order.

(xi)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that (i) they have been, since February 5, 2020, and are in default of their obligations under the Prepetition ABL Documents, and that an Event of Default has occurred under the Prepetition ABL Documents, and that since February 5, 2020, interest has accrued, and will continue to accrue, on the Prepetition ABL Obligations at the default rate set forth in the Prepetition ABL Agreement, and (ii) they have been, since February 29, 2020, and are in default of the obligations under the Prepetition Term Loan Documents, and that a Default has occurred under the Prepetition Term Loan Documents, and that as of the Petition Date, interest will accrue, on the Prepetition Term Loan Obligations at the default rate set forth in the Prepetition Term Loan Documents.

(xii)    *Consulting Agreement with the Liquidators*.  Pursuant to that certain Consulting and Marketing Services Agreement, dated as of March 5, 2020, by and among Hilco Merchant Resources, LLC, Hilco IP Services, LLC, d/b/a Hilco Streambank, Hilco Real Estate, LLC, Hilco Receivables, LLC, Gordon Brothers Retail Partners, LLC, DJM Realty Services, LLC, d/b/a Gordon Brothers Real Estate, Gordon Brothers Commercial & Industrial, LLC and Gordon Brothers Brands, LLC and certain of the Debtors, acknowledged by the Prepetition Agents (as amended, restated or otherwise modified from time to time, the "Consulting Agreement"), the Debtors have retained the Consultant to conduct "Going Out of Business" sales of the Assets (each as defined in the Consulting Agreement).  The continued existence and validity of the Consulting Agreement and the uninterrupted continuation of the sales contemplated thereby is a condition to the consent of the Prepetition Agents to this Interim Order and the Debtors' use of Cash Collateral hereunder.

G.    DIP Facility. On March 9, 2020, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to*

A000249

*11 U.S.C. Sections 105, 361, 364(c) and 364(d); and (II) Granting Related Relief* [Dkt. No. 49] (the "Levin DIP Motion"). To the extent the Court enters the Orders approving the DIP Facility in accordance with the terms and provisions of the DIP Credit Agreement (each term as defined in the Levin DIP Motion), the Prepetition Agents have consented to the DIP Facility (in accordance with the Orders and the DIP Credit Agreement, in form and substance reasonably acceptable to the Prepetition Agents), and the Debtors' compliance with, and the obligations incurred under, the DIP Facility (in accordance with the Orders and the DIP Credit Agreement, in form and substance reasonably acceptable to the Prepetition Agents) shall not give rise to an Event of Default under this Interim Order.

      H.    **Permitted Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition ABL Liens as such claims had on the Petition Date.

      I.    **Cash Collateral**. All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

A000250

J.      **Adequate Protection**.  The Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection as set forth herein to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral.

K.      **Good Faith**.  The Prepetition Secured Parties and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (defined below). The Prepetition Secured Parties have agreed to permit the Debtors to use their Cash Collateral for the Specified Period, subject to the terms and conditions set forth herein, which terms and conditions are fair and reasonable and have been stipulated to by the Debtors in the exercise of their sound business judgment.  Entry of this Interim Order is in the best interests of the Debtors, their estates and their creditors.

L.      **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

M.      **Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Loan Agent; (v) counsel to the Consultant (as defined in the Consulting Agreement); (vi) counsel to Levin Furniture, LLC and Levin Trucking, LLC, and (vii) all other parties entitled to notice under the Bankruptcy Rules and the Local Rules.  The Debtors have made reasonable efforts to

A000251

afford the best notice possible under the circumstances.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    Motion Granted.  The Motion is granted, subject to the terms and conditions set forth in this Interim Order.  The Debtors shall not use Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

2.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, subject to such variances as are permitted by this Interim Order, the Debtors are authorized to use Cash Collateral for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of: (a) the Termination Date, (b) thirty (30) days after the Petition Date and (c) entry of the Final Order; *provided, however*, that, during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary or reasonably advisable to avoid immediate and irreparable harm to the Debtors' estates in accordance with the Budget and as otherwise agreed to by the Prepetition ABL Agent in its sole discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any use of Cash Collateral or proceeds resulting therefrom, except (x) as permitted in the Consulting Agreement or the Levin APA (as defined below), (y) as otherwise consented to by the Prepetition ABL Agent (with respect to Postpetition ABL Priority Collateral) or the Prepetition Term Loan Agent (with respect to Postpetition Term

15

Priority Collateral) in writing, or (z) as otherwise disposed of, or used, in accordance with the

Budget, subject to such variances as are permitted by this Interim Order.

    3.    <u>Adequate Protection Liens.</u>

        (a)    *Prepetition ABL Adequate Protection Liens.*  Subject to the

Carve Out, pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of

the interests of the Prepetition ABL Parties in the Prepetition Collateral to the extent of any

Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the

Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid,

binding, enforceable, and perfected postpetition security interests in and liens (the "<u>Prepetition

ABL Adequate Protection Liens</u>") on any Postpetition Collateral.[5]

---

[5] "Postpetition Collateral" means: all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; (d) subject to entry of a Final Order, proceeds of the Debtors' rights under section 506(c) (solely to the extent such rights result from the use of Postpetition Collateral, and are, therefore, enforceable against parties other than the Prepetition Agents or the Prepetition Secured Parties) and 550 of the Bankruptcy Code; and (e) all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Notwithstanding the foregoing, Postpetition Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases). Postpetition Collateral that is (i) Prepetition ABL Priority Collateral, (ii) of a type that would be Prepetition ABL Priority Collateral; (iii) of a type that would be Prepetition ABL Priority Collateral, but that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date; and (iv) the "Deposit", as defined in that certain letter agreement dated as of March 4, 2020 by and among Levin Furniture, LLC, Levin Trucking, LLC, as Buyer, and Sam Levin, Inc. and LF Trucking, Inc., as Seller (the "<u>Levin LOI</u>") shall, in each case, constitute "<u>Postpetition ABL Priority Collateral</u>." Postpetition Collateral that is (i) Prepetition Term Priority Collateral, (ii) of a type that would be Prepetition Term Priority Collateral; and (iii) of a type that would be Prepetition Term Priority Collateral, but that was not otherwise subject to valid, perfected,

A000253

(b)    *Prepetition Term Loan Adequate Protection Liens*.  Subject to the Carve Out, pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens (the "Prepetition Term Loan Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens") on the Postpetition Collateral.

4.    Priority of Adequate Protection Liens.

(a)    The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral; *provided that*, the Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out and shall be junior only to:  (i) with respect to the Postpetition ABL Priority Collateral, (A) Prepetition ABL Permitted Prior Liens and (B) the Prepetition ABL Liens; and (ii) with respect to the Postpetition Term Priority Collateral, (A) Prepetition Term Loan Permitted Prior Liens, (B) the Prepetition Term Loan Liens, (C) the Prepetition Term Loan Adequate Protection Liens, and (D) the Prepetition ABL Liens.

(b)    The Prepetition Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral;

---

enforceable, and unavoidable liens on the Petition Date shall constitute "Postpetition Term Priority Collateral."  Postpetition Collateral that is (i) the proceeds of the Debtors' real property leases; and (ii) the proceeds of avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents shall be shared Postpetition Collateral, and the Prepetition ABL Liens and Prepetition Term Loan Liens (and corresponding adequate protection liens and claims) on such proceeds shall rank equally in priority and share such proceeds equally (with 50% of such proceeds applied to the Prepetitition ABL Obligations and 50% applied to the Prepetition Term Loan Obligations).  Nothing herein shall be construed to impair any Permitted Prior Liens.

A000254

*provided that*, the Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out and shall be junior only to: (i) with respect to the Postpetition ABL Priority Collateral, (A) Prepetition ABL Permitted Prior Liens, (B) the Prepetition ABL Liens, (C) the Prepetition ABL Adequate Protection Liens, and (D) the Prepetition Term Loan Liens; and (ii) with respect to the Postpetition Term Priority Collateral, (A) Prepetition Term Loan Permitted Prior Liens, and (B) the Prepetition Term Loan Liens.

(c)     Except as provided herein (including with respect to the Carve Out), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"), and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.     Adequate Protection Superpriority Claims.

(a)     *Prepetition ABL Superpriority Claim*.     As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative

18

A000255

expense claim in each of the Cases and any Successor Cases (the "Prepetition ABL Superpriority Claim").

(b)    *Prepetition Term Loan Superpriority Claim.*  As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").

6.    Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.  The Adequate Protection Superpriority Claims shall be subject to the Carve Out and shall be subject to the following priorities:  (a) with respect to Postpetition ABL Priority Collateral, (1) the Prepetition ABL Superpriority Claim and (2) the Prepetition Term Loan Superpriority Claim; and (b) with respect to Postpetition Term Priority Collateral, (1) the Prepetition Term Loan Superpriority Claim and (2) the Prepetition ABL Superpriority Claim.

7.    Adequate Protection Payments and Protections for Prepetition ABL Parties. As further adequate protection, the Debtors are authorized to pay in cash the following: (a) all

A000256

principal and interest at the default rate due under the Prepetition ABL Documents (but subject to the Challenge rights to the extent preserved in paragraph 27 below, (b) immediately upon entry of this Interim Order, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent arising prior to the Petition Date and reimbursable under the Prepetition ABL Documents, (c) in accordance with paragraph 22 herein, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent on and subsequent to the Petition Date reimbursable under the Prepetition ABL Documents, (d) the Prepetition ABL Obligations in accordance with the Budget, and (e) the Prepetition ABL Obligations with the Deposit (as defined in the Levin LOI) upon such Deposit becoming non-refundable in accordance with the terms of the Levin LOI.  In addition, immediately upon the payment in full in cash of the Prepetition ABL Obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted), the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the Prepetition ABL Documents, the Debtors shall fund to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Parties, $500,000 into a non-interest bearing account maintained at Wells Fargo Bank, National Association (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement, or similar continuing

A000257

obligations arising under or related to the Prepetition ABL Documents (the "Prepetition ABL Indemnity Obligations"). The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens, as applicable, whether in these Cases or independently in another forum, court, or venue. The Prepetition ABL Indemnity Obligations shall be secured by a first priority lien on the Prepetition ABL Indemnity Reserve and the funds therein (which shall not be subject to the Carve-Out) and by a lien on the Postpetition Collateral and the Prepetition Collateral (subject in all respects to the Intercreditor Agreement). Subject to paragraph 22 below, the Debtors shall pay all Prepetition ABL Indemnity Obligations as and when they arise and paid; *provided, that* the Prepetition ABL Agent shall have authority in its sole discretion, but not an obligation, to apply amounts in the Prepetition ABL Indemnity Reserve to any Prepetition ABL Indemnity Obligations, without further notice to or consent from the Debtors, a Committee (if appointed), or any other parties in interest and without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to (a) the terms of the Prepetition ABL Documents (including with respect to application of proceeds) and (b) the rights of parties in interest with requisite standing to object to such indemnification claim(s) to the extent set forth in paragraph 27 hereof. The Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens granted to the Prepetition ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations in excess of funds on deposit in the Prepetition ABL Indemnity Reserve. The Prepetition ABL Indemnity Reserve shall be released at such time

A000258

as the Prepetition ABL Indemnity Obligations are Paid in Full.[6]

        8.    <u>Adequate Protection Payments and Protections for Prepetition Term Loan Agent</u>. As further adequate protection, the Debtors are authorized to pay in cash the following: (a) the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent arising prior to the Petition Date and reimbursable under the Prepetition Term Loan Documents, and (b) in accordance with paragraph 22 herein, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent on and subsequent to the Petition Date reimbursable under the Prepetition Term Loan Documents; *provided*, *however*, that any payments made under this paragraph 8 shall be made solely from proceeds of Postpetition Term Priority Collateral.

        9.    <u>Perfection of Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens

---

[6] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility, the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility. No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated, (b) with respect to the Prepetition ABL Obligations (i) the Challenge Deadline (as defined in paragraph 34 of this Interim Order) shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (c) the Prepetition ABL Agent has received (i) a countersigned payoff letter in form and substance satisfactory to the Prepetition ABL Agent and (ii) releases in form and substance satisfactory to the Prepetition ABL Agent in its sole discretion.

A000259

granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each Prepetition Agent is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the Prepetition  Agents, as applicable, all such financing statements, mortgages, notices, and other documents as the Prepetition Agents may reasonably request.  Each Prepetition Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

    10. <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection

A000260

provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

11.     Budget. The use of Cash Collateral during the Specified Period is permitted solely in accordance with a cash collateral budget (the "Budget") approved by the Prepetition Agents,[7] each in their sole discretion, subject to such variances as are permitted by this Interim Order or agreed to in writing by the Prepetition Agents. A copy of the initial approved Budget is attached hereto as Exhibit 1. The Budget shall depict, on a weekly basis and line item basis (i) projected cash receipts, (ii) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, for the first thirteen (13) week period from the Petition Date, and such initial Budget shall be approved by, and in form and substance satisfactory to the Prepetition Agents, each in their sole discretion (it being acknowledged and agreed that the initial Budget attached hereto is approved by and satisfactory to the Prepetition Agents). The Budget shall be updated, modified, or supplemented by the Debtors with the written consent of the Prepetition Agents, but in any event the Budget shall be updated by the Debtors not less than one time in each four (4) consecutive week period, and each such updated, modified, or supplemented budget shall be approved in writing (including by email) by, and shall be in form and substance satisfactory to, the Prepetition Agents, each in their sole discretion), and no such updated, modified, or supplemented budget shall be effective until so

---

[7] For the avoidance of doubt, any reference to the consent rights of the Prepetition Term Loan Agent shall mean the Prepetition Term Loan Agent acting at the direction of the Required Lenders (as defined in the Prepetition Term Loan Agreement).

A000261

approved, and once so approved shall be deemed the Budget; *provided, however*, that in the event the Prepetition Agents, on the one hand, and the Debtors, on the other hand, cannot agree as to an updated, modified or supplemented budget, the Debtors shall continue to operate under the most recent prior-approved Budget and such disagreement shall give rise to an Event of Default once the period covered by such prior Budget has terminated. Each Budget delivered to the Prepetition Agents shall be accompanied by such customary supporting documentation as reasonably requested by the Prepetition Agents and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable at the time of delivery. A copy of any Budget (or updated Budget once approved by the Prepetition Agents) shall simultaneously be delivered to the counsel for a Committee (if appointed), and the U.S. Trustee. All Cash Collateral use must be strictly in accordance with the terms of the Budget, subject to such variances as are permitted by this Interim Order or agreed to in writing by the Prepetition Agents.

    12. <u>Covenants</u>.

    (a) *Budget Compliance*. The Debtors shall not, without the consent of the Prepetition Agents, permit (i) the actual Total Cash Receipts for any rolling two week period to be less than 90% of the Total Cash Receipts set forth in the Budget for such period, (ii) the actual GOB Disbursements for any rolling two week period to exceed 110% of the aggregate GOB Disbursements set forth in the Budget for such period, (iii) the actual Operating Disbursements for any rolling two week period to exceed 110% of the aggregate Operating Disbursements set forth in the Budget for such period, or (iv) the actual Non-Operating Disbursements for any rolling two week period to exceed 110% of the aggregate Non-Operating Disbursements set forth in the

A000262

Budget for such period (with any unspent amounts in this subparagraph (iv) being carried forward for subsequent periods).

(b)     *Borrowing Base*.  Until the Prepetition ABL Obligations are Paid in Full, the Debtors shall at all times maintain actual Total Excess ABL Availability After Covenant (calculated in the manner set forth in the Borrowing Base Certificate attached to the Budget) in an amount not less than $0, it being understood and agreed that the Availability Block set forth in the Borrowing Base Certificate attached to the Budget shall be deemed to be $5,000,000 for each of the weeks beginning March 8, 2020 and March 15, 2020.  Until the Prepetition ABL Obligations are Paid in Full, the Borrowing Base Certificate shall be updated and delivered weekly in accordance with the requirements of an "Increased Reporting Event" as defined in the Prepetition ABL Agreement.  For the avoidance of doubt, the calculation of the Borrowing Base shall at all times deduct the amount of the Carve Out Reserves.  Until the Prepetition ABL Obligations are Paid in Full, the Debtors shall deliver to the Prepetition Agents, by not later than Thursday of each week, an updated Borrowing Base Certificate, substantially in the form attached hereto as Exhibit 2 (the "Borrowing Base Certificate"), and such Borrowing Base Certificate shall include such detail as is reasonably satisfactory to the Prepetition Agents (it being agreed the detail required by the Prepetition ABL Agreement shall be deemed so satisfactory).

(c)     *Variance Testing*.  The Debtors shall, commencing with the week beginning March 15, 2020, deliver to the Prepetition Agents, by not later than Thursday of each week, a certificate, substantially in the form attached hereto as Exhibit 3 (the "Budget Variance Certificate") and such Budget Variance Certificate shall include such detail as is reasonably satisfactory to the Prepetition Agents, showing a reconciliation for the prior two week cumulative period, and certifying that (i) the Debtors are in compliance with the covenants contained in this

26

Section 12 and (ii) to the knowledge of the Debtors, no Event of Default hereunder has occurred or, if such an Event of Default has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto.

(d)　　*Consent Fee for Prepetition ABL Parties*.  The Debtors shall pay the Prepetition ABL Agent, for the benefit of the Prepetition ABL Parties, a consent fee ("Consent Fee") in the amount of $150,000 per week until such time as the Prepetition ABL Obligations have been repaid in full in cash (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted), the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the Prepetition ABL Documents.  The Consent Fee shall be fully earned on Saturday of each week and shall be paid to the Prepetition ABL Agent on the immediately following Tuesday and shall not be subject to refund, offset or rebate under any circumstances.

(e)　　*Levin Sale Milestones*.　The Debtors shall achieve each of the following milestones, if and when applicable (as the same may be extended from time to time with the consent of the Prepetition ABL Agent (in its sole discretion), the "Levin Sale Milestones"), in each case on terms and conditions, and subject to documentation in form and substance, reasonably acceptable to the Prepetition ABL Agent in all respects:

(i)　　On or before the date that is seven (7) days following the Petition Date, the Debtors shall file a motion to approve the sale of the "Assets", as such term is defined in the Levin LOI (the "Levin Sale"), to the Buyer under the Levin LOI.

A000264

(ii)     On or before the date that is seven (7) days following the Petition Date, the Debtors shall enter into an asset purchase agreement with the Buyer under the Levin LOI for the Levin Sale (the "Levin APA").

(iii)    On or before the date that is twenty-nine (29) days following the Petition Date, the Debtors shall receive an order from the Court approving the Levin Sale.

(iv)     On or before the date that is two (2) business days after the order approving the Levin Sale, the Debtor shall have consummated the Levin Sale and the proceeds thereof shall have been applied to the Prepetition ABL Obligations.

13.     Modification of Automatic Stay.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to:  (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition ABL Agent may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition ABL Parties under this Interim Order; and (d) authorize the Debtors to pay, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

14.     Protections of Rights of Prepetition Secured Parties.

(a)     Subject to the Intercreditor Agreement, unless the Prepetition ABL Agent and Prepetition Term Loan Agent have each provided their respective prior written consent, or all Prepetition ABL Obligations and Prepetition Term Loan Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been Paid in Full, the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and

28

A000265

otherwise shall object to any motion or application seeking entry of, any order (other than this Interim Order or the Final Order, but including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Postpetition Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Interim Order; (ii) the use of Cash Collateral for any purpose other than as permitted in this Interim Order (including any use in accordance with the Budget, subject to variances permitted by this Interim Order); (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the Prepetition Secured Parties' rights under this Interim Order, the Prepetition ABL Documents, or the Prepetition Term Loan Documents with respect any Prepetition ABL Obligations or Prepetition Term Loan Obligations. It shall be an Event of Default under this Interim Order if, in any of these Cases or any Successor Cases, the Debtors take or take to take any of the actions contemplated with respect to provisions (i) through (iv) of the previous sentence or if any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

(b)     The Debtors shall (i) maintain books, records, and accounts to the extent and as required by the Prepetition Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the Prepetition

A000266

Agents, as applicable, all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the Prepetition Agents, as applicable) to provide under the Prepetition Documents, or the provisions of this Interim Order; (iii) upon reasonable advance notice, permit the Prepetition Agents to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the Prepetition Documents; (iv) permit the Prepetition Agents to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the Prepetition Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Postpetition Collateral and Prepetition Collateral, in each case, in accordance with the Prepetition Documents.

15.     _Credit Bidding_.  No Debtor shall object to any Prepetition ABL Parties credit bidding up to the full amount of the applicable outstanding Prepetition ABL Obligations, or with respect to the Prepetition Term Loan Parties, credit bidding up to the full amount of the applicable outstanding Prepetition Term Loan Obligations, in each case including any accrued interest, fees, and expenses, in any sale of any Prepetition Collateral, as applicable, whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, to the extent permitted by section 363(k) of the Bankruptcy Code, and subject in each case to the rights, duties, and limitations, as

A000267

applicable, of the parties under the Intercreditor Agreement, Prepetition Documents and to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid.

16.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time prior to the Prepetition Obligations being Paid in Full, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any Prepetition Collateral or Postpetition Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition ABL Agent (or, following the Prepetition ABL Obligations being Paid in Full, to the Prepetition Term Loan Agent) to be applied in accordance with this Interim Order and the Intercreditor Agreement.

17.    <u>Cash Collection</u>.  From and after the date of the entry of this Interim Order, all collections and proceeds of any Postpetition Collateral and Prepetition Collateral and all Cash Collateral (that does not constitute Prepetition or Postpetition Term Priority Collateral) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition ABL Priority Collateral were deposited under the Prepetition Documents (or in such other accounts as are designated by the Prepetition ABL Agent from time to time) (collectively, the "<u>Cash Collection Accounts</u>"), which accounts shall, until the Prepetition ABL Obligations are Paid in Full, be subject to the sole dominion and control of the Prepetition ABL Agent and any amounts deposited into the Cash

31

A000268

Collection Accounts shall be deemed to be Postpetition ABL Priority Collateral.  Proceeds and other amounts in the Cash Collection Accounts shall be used, subject to the conditions set forth herein, to fund the Budget during the Specified Period, and the Debtors are authorized to pay to the Prepetition ABL Agent, and the Prepetition ABL Agent is authorized to apply, amounts in excess thereof in accordance with the Budget until the Prepetition ABL Obligations are Paid in Full.  In furtherance of the foregoing, each Thursday during the Specified Period the Debtors shall deliver to the Prepetition Agents a schedule of all proposed disbursements for the following seven (7) day period (each a "Disbursement Schedule"), including identification of which line item(s) in the Budget such proposed disbursements relate to.  Upon the Prepetition ABL Agent's receipt of a written cash collateral draw request (each a "CC Draw Request," which shall be delivered to the Prepetition Term Loan Agent at the same time such CC Draw Request is delivered to the Prepetition ABL Agent) (which may be made on a daily basis), and following verification of conformity with the associated Disbursement Schedule and Budget, the Prepetition ABL Agent shall disburse funds from the Cash Collection Account as appropriate to fund the amounts specified in the CC Draw Request; *provided* that, during the period prior to the Prepetition ABL Obligations being Paid in Full, the Prepetition ABL Agent shall only be required to disburse funds if the Debtors are in compliance with the provisions of this Interim Order (including, without limitation, that after giving effect to such disbursement, actual Total Excess ABL Availability After Covenant at such time (calculated in the manner as set forth in the Borrowing Base Certificate attached to the Budget) shall not be less than $0).  For the avoidance of doubt, it shall be a condition to the Debtors' ability to access and use the Prepetition Secured Parties' Cash Collateral that they submit to the Prepetition ABL Agent the CC Draw Request and associated Disbursement Schedule in the manner and time provided herein.  In addition to the foregoing, the

32

A000269

Prepetition ABL Agent (or the Prepetition Term Loan Agent, after the Prepetition ABL Obligations are Paid In Full) is authorized to debit the Debtors' accounts and apply Cash Collateral on deposit therein in an amount sufficient to maintain the "Ending Balance" set forth in the Budget for any applicable weekly period (at the end of the relevant week) and, until the Prepetition ABL Obligations are Paid in Full, the Prepetition ABL Agent is authorized to debit the Debtors' accounts and apply Cash Collateral on deposit therein in an amount such that actual Total Excess ABL Availability After Covenant at such time (calculated in the manner as set forth in the Borrowing Base Certificate attached to the Budget) shall not be less than $0.  Until the Prepetition ABL Obligations are Paid in Full, unless otherwise agreed to in writing by the Prepetition ABL Agent or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the Prepetition ABL Agent (or the Prepetition Term Loan Agent, after the Prepetition ABL Obligations are Paid in Full), in each case, to the extent such direction is made in accordance with this Interim Order.  The Debtors shall cause the proceeds of Prepetition and Postpetition Term Priority Collateral as identified by the Consultant to be deposited into a segregated, non-commingled account which is required to be subject to the control of the Prepetition Term Loan Agent, and the Debtors' use of such proceeds shall be subject to (and limited to the extent set forth in) this Interim Order but, for the avoidance of doubt, may be used in accordance with the Budget, subject to variances permitted by this Interim Order.

33

A000270

18. <u>Maintenance of Collateral</u>. Until all Prepetition ABL Obligations are Paid in Full, the Debtors shall: (a) insure the Postpetition Collateral and Prepetition Collateral as required under the Prepetition Documents; and (b) maintain the cash management system in effect as of the Petition Date, as may be modified with the consent of the Prepetition Agents (such consent not to be unreasonably withheld) or as a result of entry of any order by the Court.

19. <u>Disposition of Collateral</u>. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Postpetition Collateral or Prepetition Collateral other than in the ordinary course of business and in accordance with the Consulting Agreement and the Levin APA, without (subject to the Intercreditor Agreement) the prior written consent of the Prepetition ABL Agent (with respect to Postpetition ABL Priority Collateral) or the Prepetition Term Loan Agent (with respect to Postpetition Term Priority Collateral), and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Secured Parties or from any order of this Court.

20. <u>Events of Default</u>. The occurrence of any of the following events, unless consented to or waived by the Prepetition Agents in advance, in writing, each in their sole and absolute discretion, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including, without limitation, the Covenants in paragraph 12 herein and the payment of all amounts to the Prepetition Secured Parties authorized hereunder);

(b) the failure of the Debtors to obtain a Final Order on the Motion on terms acceptable to the Prepetition Agents on or before 30 days after the Petition Date;

(c) the failure by the Debtors to continue sales of the Assets in

34

accordance with the Consulting Agreement and to assume the Consulting Agreement on a timely basis;

(d) the filing of a motion or any plan of reorganization or disclosure statement attendant thereto by and of the Debtors: (i) to obtain additional financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Interim Order; (ii) to grant any lien other than Permitted Prior Liens upon or affecting any Postpetition Collateral; or (iii) except as provided in this Interim Order, to use Cash Collateral under section 363(c) of the Bankruptcy Code;

(e) (i) the filing of any Prohibited Plan (as defined herein) or disclosure statement attendant thereto, or any direct or indirect amendment to such chapter 11 plan or disclosure statement, by a Debtor, (ii) the entry or request for entry of any order terminating any Debtor's exclusive right to file a chapter 11 plan (unless actively contested by the Debtors) or (iii) the expiration of any Debtor's exclusive right to file a chapter 11 plan;

(f) the entry of an order in any of the Cases confirming a Prohibited Plan;

(g) the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Interim Order or the Cash Management Order, the filing by a Debtor of a motion for reconsideration with respect to this Interim Order or the Cash Management Order, or the Interim Order shall cease to be in full force and effect;

(h) the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget, subject to variances permitted by this Interim Order;

(i) the appointment of an interim or permanent trustee in the Cases, the

35

appointment of a receiver, receiver and manager, interim receiver or similar official over any substantial portion of the assets of the Debtors, or the appointment of a trustee receiver or an examiner in the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors;

(j)     the filing of a motion to approve a Prohibited Sale or to sell all or substantially all of the Debtors' assets other than in accordance with the Consulting Agreement or the Levin LOI;

(k)     the dismissal of any Case, or the conversion of any Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or any Debtor filing a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise or the conversion of the Cases to Chapter 7 of the Bankruptcy Code;

(l)     the filing of a motion seeking, or the Court shall enter an order granting, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition ABL Agent and, subject to the Intercreditor Agreement, the Prepetition Term Loan Agent) to execute upon or enforce a lien on any Postpetition Collateral or Prepetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Debtor providing for payments as adequate protection or otherwise to such secured creditor, or (C) with respect to any lien on or the granting of any lien on any Postpetition Collateral or the Prepetition Collateral to any federal, state or local environmental or regulatory agency or authority, which in either case involves a claim of $250,000 or more;

(m)     the existence of any claim or charges, or the entry of any order of the Court authorizing any claims or charges, entitled to superpriority administrative expense claim status in any Case pursuant to section 364(c)(1) of the Bankruptcy Code *pari passu* with or senior

A000273

to the claims of the Prepetition Secured Parties under this Interim Order, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Postpetition Collateral or the Prepetition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except, in each case, as expressly provided in this Interim Order;

(n)     the Debtors shall file, or any Debtor shall fail to contest in good faith the filing of, a motion or entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Parties shall have been entered by the Court or any other court of competent jurisdiction;

(o)     any Debtor shall challenge, support or encourage a challenge of any payments made to any Prepetition ABL Party with respect to the Prepetition ABL Obligations;

(p)     any Debtors shall challenge, support or encourage a challenge of any payments made to any Prepetition Term Loan Party with respect to the Prepetition Term Loan Obligations;

(q)     the entry of any order by the Court granting, or the filing by any Debtor of any motion or other request with the Court seeking authority to use cash proceeds of any of the Postpetition Collateral or Prepetition Collateral other than as set forth in this Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code;

(r)     any Debtor or any person on behalf of any Debtor shall file any motion seeking authority to consummate a sale of assets, other than in connection with the Consulting Agreement or the Levin APA, with respect to Postpetition Collateral or Prepetition

37

A000274

Collateral having a value in excess of $250,000 outside the ordinary course of business and not otherwise permitted hereunder;

(s)     any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" as approved by the Prepetition Agents in writing (provided that this Interim Order and all orders relating to cash management shall be acceptable to the Prepetition Agents) and (ii) payments approved (A) by the Court or (B) by the Prepetition Agents in writing, in each case in accordance with the Budget, subject to variances permitted by this Interim Order;

(t)     any Debtor shall fail to contest in good faith a request to take any action that if taken by the Debtor would constitute an event of default under this paragraph 20;

(u)     the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the Prepetition Agents or the Prepetition Secured Parties.

21.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default under this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (and the Remedies Notice Period), (a) (i) the Prepetition ABL Agent may declare (any such declaration delivered by the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, shall be referred to herein as a "<u>Termination Declaration</u>") (A) all Prepetition ABL Obligations owing under the Prepetition ABL Documents to be immediately due and payable, and (B) that the application of the Carve Out has occurred through the delivery of the Carve Out

38

A000275

Trigger Notice (as defined herein); and (ii) the Prepetition ABL Agent may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, and (b) the Prepetition Term Loan Agent may (i) declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral that is Postpetition Term Priority Collateral and (ii) after the Prepetition ABL Obligations have been Paid in Full, declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral (the date a Termination Declaration is delivered shall be referred to herein as the "<u>Termination Date</u>"). The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), the Prepetition ABL Agent (if delivered by the Prepetition Term Loan Agent), the Prepetition Term Loan Agent (if delivered by the Prepetition ABL Agent), and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the Prepetition ABL Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "<u>Remedies Notice Period</u>"), the Prepetition ABL Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition ABL Documents and this Interim Order to satisfy the Prepetition ABL Obligations, Prepetition ABL Superpriority Claims, and Prepetition ABL Adequate Protection Liens, subject to the Carve Out (to the extent applicable). During the Remedies Notice Period, the Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Upon expiration of the Remedies Notice Period, unless the Court orders otherwise, the automatic stay, as to the Prepetition ABL Parties, shall automatically be terminated without further notice or order and the Prepetition ABL Parties shall be permitted to exercise all remedies set forth herein, in the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement and this Interim Order. Upon the occurrence

39

and during the continuation of an Event of Default, in each case, subject to the Intercreditor Agreement and paragraph 32, the Prepetition ABL Agent and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the Postpetition ABL Priority Collateral, including pursuant to any Court approved sale process.

22.      Prepetition Secured Parties' Expenses.  The Debtors are authorized to pay, in accordance with this Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (a) the Prepetition ABL Agent (limited in the case of counsel, to all reasonable and documented out of pocket fees, costs, disbursements and expenses of Morgan, Lewis & Bockius LLP and Burr & Forman LLP, and any successor counsel) and, (b) solely from the proceeds of Postpetition Term Priority Collateral, the Prepetition Term Loan Agent (limited in the case of counsel, to all reasonable and documented out of pocket fees, costs, disbursements and expenses of Riemer & Braunstein LLP and Greenberg Traurig, LLP, and any successor counsel). Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the Prepetition Agents shall not be required to comply with the U.S. Trustee fee guidelines, *provided*, *however* that any time such professionals seek payment of fees and expenses from the Debtors that were incurred after the Petition Date, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S.

40

A000277

Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such summary fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee, or a Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court to the extent they cannot be resolved by the applicable parties. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized to pay upon entry of this Interim Order all reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition ABL Parties as provided in the Prepetition ABL Documents, incurred on or prior to such date without the need for any professional engaged by the Prepetition ABL Parties to first deliver a copy of its invoice as provided for herein. No attorney or advisor to any Prepetition ABL Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

23. <u>Proofs of Claim</u>. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the Prepetition ABL Parties and the Prepetition Term Loan Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising under the Prepetition ABL Documents or the Prepetition Term Loan Documents. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition ABL Parties and the Prepetition Term Loan Parties with regard to all claims arising under the Prepetition ABL Documents or the Prepetition Term Loan Documents, as the case may be. Notwithstanding the foregoing, the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Parties, are hereby authorized

A000278

and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in any of the Cases deemed to be filed in all Cases of each of the Debtors and asserted against all of the applicable Debtors). Any proof of claim filed by the Prepetition ABL Agent or the Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the Prepetition ABL Parties or the Prepetition Term Loan Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

24. Carve Out.

(a) *Carve Out*. As used in this Interim Order, the "Carve Out" means (i) all fees required to be paid to (A) the Clerk of the Court and (B) the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) all reasonable fees and expenses up to $50,000 (and any interest thereon) incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Carve Out"); (iii) to the extent allowed at any time (regardless of whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (as defined below)), whether by interim order, procedural order, or otherwise, all accrued and unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and a Committee (if appointed) pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee

A000279

Professionals" and, together with the Debtor Professionals, the "Professional Persons") (such fees and expenses, the "Allowed Professional Fees") at any time on or prior to the first business day following delivery by the Prepetition ABL Agent of a Carve Out Trigger Notice (as defined herein), *provided* that the amount of such Allowed Professional Fees shall, as relates to the Prepetition ABL Parties, the Prepetition ABL Priority Collateral and the Postpetition ABL Priority Collateral, not exceed, at any time, the amount set forth for Allowed Professional Fees in the Budget at such time (the "ABL Professional Fee Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise (the amounts set forth in this clause (iv) being the "Post Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition ABL Agent to lead restructuring counsel for the Debtors, the U.S. Trustee, and lead counsel to a Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined herein), stating that the Post-Carve Out Trigger Notice Cap has been invoked. Each Professional Person shall deliver bi-weekly (on Thursday of each such week, beginning on the second Thursday following the Petition Date) to the Debtors (and the Debtors shall cause the same to be delivered to the Prepetition Agents on the same day received by the Debtors) a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Persons (through Saturday of such week).

(b) *Carve Out Reserves*. On the day on which a Carve Out Trigger Notice is given by the Prepetition ABL Agent (the "Termination Declaration Date"), the Carve

A000280

Out Trigger Notice shall be deemed a demand to the Debtors, and authorization for the Debtors, to utilize cash on hand and proceeds of the Postpetition Collateral to fund a reserve in an amount equal to the Carve Out. The Debtors shall deposit and hold such amounts in a segregated account at the Prepetition ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees (each, a "Carve Out Reserves"). For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to this Interim Order or the Final Order to secure payment of the Carve Out shall be limited to the Carve Out Reserves, once funded.

(i)     Following payment of all Allowed Professional Fees entitled to benefit from the Carve Out, any remaining funds in the Carve-Out Reserves funded by (x) the proceeds of Postpetition ABL Priority Collateral shall be distributed (A) first, to the Prepetition ABL Agent on account of the Obligations (as defined in the Prepetition ABL Agreement) until such obligations have been Paid in Full, and (B) second, to the Prepetition Term Loan Agent on account of the Obligations (as defined in the Prepetition Term Loan Agreement) until such obligations have been Paid in Full; and (y) the proceeds of Postpetition Term Priority Collateral shall be distributed (A) first, to the Prepetition Term Loan Agent which shall apply such funds to the Obligations (as defined in the Prepetition Term Loan Agreement) in accordance with the Prepetition Term Loan Agreement until such obligations have been Paid in Full, and (B) second, to the Prepetition ABL Administrative Agent on account of the Obligations (as defined in the Prepetition ABL Agreement) until such obligations have been Paid in Full.

(ii)     Notwithstanding anything to the contrary in this Interim Order, following the end of the third business day after delivery of a Carve Out Trigger Notice, (x) the

A000281

Prepetition ABL Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but the Prepetition ABL Agent, on the one hand, and the Prepetition Term Loan Agent, on the other hand, shall have a security interest in any residual interests in the Carve Out Reserves, with any excess paid as provided above; and (y) the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves required to be funded by the proceeds of Postpetition Collateral have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves held in accounts by the Prepetition Term Loan Agent, with any excess paid as provided above.

(iii)     For the avoidance of doubt and notwithstanding anything to the contrary herein or in any Prepetition Secured Facilities, to the extent of any shortfall in the Carve Out Reserves, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens and any and all other forms of adequate protection, liens, or claims securing the obligations under the Prepetition Documents; provided that in all cases, the Carve Out priority with regard to the Prepetition ABL Priority Collateral and the Postpetition ABL Priority Collateral will always be subject to the limitations applicable thereto set forth in the definition of Carve Out.

(c)     *No Direct Obligation To Pay Allowed Professional Fees*.  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the

A000282

Debtors have sufficient funds to pay such compensation or reimbursement.

(d) *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e) *Payment of Carve Out On or After the Termination Declaration Date*. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(f) *Release of Prepetition ABL Parties*. Notwithstanding anything to the contrary contained herein, (i) prior to the delivery of the Carve Out Trigger Notice, the Debtors shall fund the Carve Out Reserves at the reasonable request of the Prepetition ABL Agent in consultation with the Prepetition Term Loan Agent, the Debtors and their advisors, and (ii) upon the repayment in full of the principal amount of all Loans under the Prepetition ABL Agreement, the cash-collateralization of all Letters of Credit under the Prepetition ABL Agreement and the funding of the Prepetition ABL Indemnity Reserve (the date that such events occur, the "ABL Repayment Date"), and after the funding of the Carve Out Reserves in an amount equal to, as of the ABL Repayment Date, the lesser of (x) the amount set forth in the Budget for Professional Persons (plus the amounts set forth in 24(a)(i) and (ii)) and (y) the then accrued Carve Out, the Prepetition ABL Parties and the Prepetition ABL Liens shall be released from all further liability from the Carve Out (such release shall be a condition to the Prepetition ABL Obligations being deemed Paid in Full).

A000283

25. <u>Limitations on Use of Cash Collateral, and Carve Out</u>. The Postpetition Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the Prepetition Secured Parties' permitted enforcement or realization upon any of the Postpetition Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Interim Order; (c) selling or otherwise disposing of Postpetition Collateral without the consent of the Prepetition Agents; (d) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Postpetition Collateral except as provided for in this Interim Order without the consent of the Prepetition ABL Agent or the Prepetition Term Loan Agent (in the case of Postpetition Term Priority Collateral); (e) incurring Indebtedness (as defined in the Prepetition Documents) without the prior consent of the Prepetition Agents; (f) seeking to amend or modify any of the rights granted to the Prepetition Secured Parties under this Interim Order or the Prepetition Documents, including seeking to use Cash Collateral and/or Collateral on a contested basis; (g) objecting to or challenging in any way the Prepetition Liens, Prepetition Secured Obligations, Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, Prepetition Secured Obligations, or any other rights or interests of any of

A000284

the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow, or avoid the Prepetition Secured Obligations; *provided, however*, without prejudice to the ability of a Committee (if appointed) to contest the Investigation Budget Amount (as defined herein) in connection with the Final Hearing, that the Carve Out and such collateral proceeds may be used for allowed fees and expenses, in an amount not to exceed, subject to the Final Order, $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging), the Prepetition Lien and Claim Matters (as defined herein).

26. <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Budget provided by the Debtors to the Prepetition Agents.

27. <u>Effect of Stipulations on Third Parties</u>.

(a) *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in paragraph F of this Interim Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless and to the extent that a party in interest with proper standing granted by order of the

48

Bankruptcy Court (or other court of competent jurisdiction) has properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) and (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 27) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than the earlier of (A) for a Committee (if appointed), sixty (60) days from the date of formation of the Committee (if appointed), or (B) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the occurrence of (A) and (B), as applicable, the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b) *Binding Effect.* To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition

A000286

Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties, in accordance with paragraph 22, shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 27, the Court may fashion any appropriate remedy.

28. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

29. <u>Section 506(c) Claims</u>. Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Prepetition Secured Parties or any of their respective claims, the Postpetition Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code,

A000287

or otherwise, without the prior written consent of the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such parties.

30. <u>No Marshaling/Applications of Proceeds</u>. Subject to entry of a Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Postpetition Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order, notwithstanding any other agreement or provision to the contrary.

31. <u>Section 552(b)</u>. Subject to entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

32. <u>Access to Collateral</u>. Subject to and effective upon entry of a Final Order, upon expiration of the Remedies Notice Period, the Prepetition Secured Parties, subject to the Intercreditor Agreement, shall be permitted to (a) access and recover any and all Prepetition and Postpetition Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the Postpetition Collateral, *provided*, *however*, in the case of clause (b), notwithstanding anything to the contrary herein, and subject to the Intercreditor Agreement, the Prepetition Secured Parties can only enter upon a leased premises during the continuation of an Event of Default in accordance with (i) a separate written agreement by and between the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of

A000288

the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable Prepetition Secured Party on such notice to the landlord as shall be required by this Court; *provided*, *however*, that solely with respect to rent due to a landlord of any such leased premises, the Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 21 herein that is payable during the period of such occupancy by the Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; *provided*, *further*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease. Nothing herein shall require the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

33. <u>Limits on Lender Liability</u>. Subject to entry of a Final Order, nothing in this Interim Order, the Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The Prepetition Secured Parties shall not, solely by reason of having made loans under the Prepetition Documents, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or

A000289

state statute). Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

34.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the Prepetition ABL Agent (on behalf of the Prepetition ABL Parties) and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties), shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the Postpetition Collateral.

35.    <u>Additional Rights of the Prepetition Term Loan Agent</u>.  Subject to the Prepetition ABL Obligations being Paid in Full and the rights preserved in paragraph 27 herein, any reference in this Interim Order to the Prepetition ABL Agent agreeing to or having the right to do, or refraining from or having the right to refrain from doing, an act, or providing any consent or waiver hereunder, shall automatically, without further order of the Court, be construed as referring to the Prepetition Term Loan Agent.

36.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder.

37.    <u>No Superior Rights of Reclamation</u>.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition ABL Liens as such claim had on the Petition Date.

A000290

38. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents and the Intercreditor Agreement: (a) the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and, unless otherwise set forth in this Interim Order or the Final Order, any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 cases.

39. <u>No Waiver by Failure to Seek Relief</u>. The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Secured Parties.

A000291

40. <u>Binding Effect of Interim Order</u>. Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, all other creditors of any of the Debtors, a Committee (if appointed), or any other court appointed committee, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

41. <u>No Modification of Interim Order</u>. Until and unless the Prepetition Secured Obligations have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the Prepetition ABL Documents which survive such discharge by their terms) the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Prepetition Agents, (i) any modification, stay, vacatur, or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the Prepetition ABL Agent for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from Collateral or Prepetition Collateral; or (c) without the prior written consent of the Prepetition Agents, any lien on any of the Postpetition Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens, other than the Carve Out.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order without the prior written

A000292

consent, as provided in the foregoing, of the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition ABL Agent or the Prepetition Term Loan Agent.

42. <u>Continuing Effect of Intercreditor Agreement</u>. The Debtors and Prepetition Secured Parties each shall be bound by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement.

43. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the Intercreditor Agreement and this Interim Order (solely as between the Prepetition Secured Parties), the provisions of the Intercreditor Agreement shall govern and control.

44. <u>Discharge</u>. The obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full, on or before the effective date of such confirmed plan of reorganization, or each of the Prepetition ABL Agent and Prepetition Term Loan Agent, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that does not require that all Prepetition ABL Obligations be Paid in Full (in the case of the sale of Postpetition ABL Priority Collateral) or that all Prepetition Term Loan Obligations be Paid in Full (in the case of the sale of Postpetition Term Priority Collateral), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a

A000293

"Prohibited Plan or Sale") without the written consent of each of the Prepetition ABL Agent and Prepetition Term Loan Agent, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder.

45.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties granted pursuant to this Interim Order, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until:  (x) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Interim Order, have been Paid in Full; and (y) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Interim Order have been Paid in Full.  In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the repayment in full of the Prepetition ABL Obligations.

46.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order is scheduled for **April 6, 2020 at 1:00 p.m. (EST)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of

A000294

Delaware.  On or before March 12, 2020, the Debtors, or an agent appointed for such purpose, shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) counsel for the Consultant; and (g) counsel for Levin Furniture, LLC, and Levin Towing, LLC.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **March 30, 2020, at 4:00 p.m. (EST)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 201, Wilmington, Delaware 19801-1611, Attn: Michael J. Barrie and Gregory W. Werkheiser; (ii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060, Attn: Jennifer Feldsher, and (b) One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter, and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (iii) counsel to the Prepetition Term Loan Agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf; and (iv) counsel to the Committee (if appointed).

47.     *Nunc Pro Tunc Effect of this Interim Order*.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

58

A000295

48. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the this Interim Order.

Dated: 3/11/2020
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

A000296

Exhibit 1

DRAFT - SUBJECT TO CHANGE

**AVF Holding, LLC**
**Cash Collateral Budget (Summary)**

| $ in thousands | Week 1 Fcst 8-Mar | Week 2 Fcst 15-Mar | Week 3 Fcst 22-Mar | Week 4 Fcst 29-Mar | Week 5 Fcst 5-Apr | Week 6 Fcst 12-Apr | Week 7 Fcst 19-Apr | Week 8 Fcst 26-Apr | Week 9 Fcst 3-May | Week 10 Fcst 10-May | Week 11 Fcst 17-May | Week 12 Fcst 24-May | Week 13 Fcst 31-May | 13-Week Total | Remaining Cash Flow | Total Cash Flow |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Cash Receipts | $11,585 | $6,186 | $17,831 | $38,607 | $13,858 | $14,135 | $10,190 | $9,353 | $2,329 | $3,566 | $1,769 | $1,769 | $26 | $131,204 | $2,499 | $133,703 |
| GOB Disbursements | - | (2,603) | (13,666) | (4,564) | (4,112) | (7,380) | (5,544) | (5,771) | (2,923) | (524) | (289) | - | - | (45,377) | (100) | (45,477) |
| Operating Disbursements | (12,063) | (2,712) | (2,844) | (721) | (1,963) | (402) | (2,423) | (664) | (1,414) | (2,555) | (767) | (1,143) | (145) | (29,817) | (3,996) | (33,813) |
| Non-Operating Disbursements | (7,539) | (650) | (1,150) | (4,080) | (4,578) | (650) | - | - | - | - | - | - | 2,100 | (16,547) | 1,101 | (15,446) |
| Net Cash Flow | $(8,017) | $221 | $170 | $29,241 | $3,205 | $5,703 | $3,223 | $2,918 | $(2,008) | $486 | $714 | $1,626 | $1,981 | $39,464 | $(496) | $38,968 |
| FF&E Sales & Other | - | - | - | (3,650) | (70) | (70) | (70) | (70) | (278) | (1,669) | (1,669) | (1,669) | - | (9,212) | (500) | (9,712) |
| Net Cash Flow to ABL | $(8,017) | $221 | $170 | $25,591 | $3,135 | $5,633 | $3,154 | $2,848 | $(2,287) | $(1,182) | $(955) | $(42) | $1,981 | $30,252 | $(996) | $29,256 |
| **Memo: ABL Balance** | | | | | | | | | | | | | | | | |
| Beg. ABL Bal. / (Cash on Hand) | 8,017 | (221) | (170) | (25,591) | (3,135) | (5,633) | (817) | (3,971) | (2,848) | 2,287 | 1,182 | 955 | 42 | | | (1,981) |
| End. ABL Bal. / (Cash on Hand) | $33,934 | $33,713 | $33,543 | $7,952 | $4,816 | $(2,545) | $(3,971) | $(6,819) | $(4,533) | $(3,350) | $(2,395) | $(2,353) | $(4,334) | $(4,334) | $(4,334) | $(3,338) |
| Net Borrowing Base | $34,277 | $37,140 | $34,413 | $10,656 | $8,223 | $2,545 | | | | | | | | | | |
| Ending ABL Balance | 33,934 | 33,713 | 33,543 | 7,952 | 4,816 | - | | | | | | | | | | |
| Borrowing Base Availability | $343 | $3,427 | $870 | $2,705 | $3,407 | $2,545 | | | | | | | | | | |
| **Availability Excess / (Deficiency)** | $343 | $3,427 | $870 | $2,705 | $3,407 | $2,545 | $3,971 | $6,819 | $4,533 | $3,350 | $2,395 | $2,353 | $4,334 | $4,334 | $3,338 | $3,338 |

The cash collateral budget contemplates the loss of credit card receipts that occurred on March 6th and March 7th and impact of store closure on March 8th. This resulted in deferral of certain disbursements that are essential to the Company's business operations, including, but not limited to, rent, freight, fuel, liquidator fees and other critical operating expenses. The loss of the credit card receipts that were reserved and the deferment of the critical disbursements will likely result in business disruption and ultimately reduce recovery to the estate.

For Discussion Purposes Only

A000297

Exhibit 2

# FORM OF BUDGET VARIANCE CERTIFICATE

## BUDGET VARIANCE CERTIFICATE

Date of Certificate: _____

To:     Wells Fargo Bank, N.A.
        125 High Street
        Boston, Massachusetts 02110
        Attention: Danielle Baldinelli & Lauren Murphy
        Danielle.m.baldinelli@wellsfargo.com
        Lauren.murphy@wellsfargo.com

Reference is made to the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Cash Collateral Order"). This certificate is being delivered pursuant to Paragraph 12(c) of the Cash Collateral Order. Capitalized terms used but not defined herein shall have the meanings set forth in the Cash Collateral Order.

The undersigned, a duly authorized and acting responsible officer of the Debtors, in such capacity and not individually, hereby certifies to the Prepetition Agents and the Prepetition Secured Parties on behalf of the Debtors, to the best of his/her knowledge and understanding, as follows:

1. The Debtors are in compliance with the covenants contained in Paragraph 12 of the Cash Collateral Order.

2. To the knowledge of the Debtors, no Event of Default has occurred.

3. [If an Event of Default has occurred, more details can be found in Appendix I.]

4. Attached as Appendix II is the Budget Variance Report for the two week period ending [_____].

A000298

IN WITNESS WHEREOF, the undersigned responsible officer, in his or her capacity and not individually has duly executed this Budget Variance Certificate as of the first date written above.

**ART VAN FURNITURE, LLC**

By: _____

Name: _____

Title: _____

DB1/ 112918635.1

A000299

## Appendix I to Budget Variance Certificate

[An Event of Default has occurred and is continuing, and the following describes the nature and extent of the Event of Default in reasonable detail and the corrective, if any, being taken or contemplated by the Debtors to be taken on account thereof.]

DB1/ 112918635.1

A000300

# FORM OF BUDGET VARIANCE REPORT

|  | Week of _____ | | Variance over Rolling Two Week Period | |
|---|---|---|---|---|
|  | Budget | Actual | Difference | Percent Variance |
| Total Cash Receipts |  |  |  |  |
| GOB Disbursements |  |  |  |  |
| Operating Disbursements |  |  |  |  |
| Non-Operating Disbursements |  |  |  |  |

DB1/ 112918635.1

A000301

**Exhibit 3**

DRAFT
SUBJECT TO MATERIAL CHANGE

**AVF Holding, LLC**
Borrowing Base Certificate

*$ in thousands, unless otherwise noted*

| | Week 1 Fcst. 8-Mar | Week 2 Fcst. 15-Mar | Week 3 Fcst. 22-Mar | Week 4 Fcst. 29-Mar | Week 5 Fcst. 5-Apr | Week 6 Fcst. 12-Apr |
|---|---|---|---|---|---|---|
| **Credit Card Receivables** | | | | | | |
| Total Credit Card Receivables | $ - | $ - | $ - | $ - | $ - | $ - |
| Less: Outstandings > 5 Business Days | - | - | - | - | - | - |
| Less: Credit Card Fees | - | - | - | - | - | - |
| Eligible Credit Card Receivables | - | - | - | - | - | - |
| Credit Card Advance Rate | - | - | - | - | - | - |
| **Total Credit Card Receivables Availability** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Ending Inventory as of:** | | | | | | |
| Stock Ledger Ending Inventory at Cost | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Ineligible Inventory** | - | - | - | - | - | - |
| Eligible Inventory | - | - | - | - | - | - |
| **Total Eligible Inventory Availability** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Gross Borrowing Base Availability** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Less: Availability Reserves** | | | | | | |
| Gift Certificates and Gift Cards (50% of GL Balance, net) | - | - | - | - | - | - |
| Customer Deposits (100%) | - | - | - | - | - | - |
| Professional Fee Reserve | - | - | - | - | - | - |
| Professional fee Payments (cumulative) | - | - | - | - | - | - |
| P-Card | - | - | - | - | - | - |
| Landed Cost Reserves | - | - | - | - | - | - |
| Landlord Lien (PA, VA, WA) | - | - | - | - | - | - |
| Other | - | - | - | - | - | - |
| Carveout | - | - | - | - | - | - |
| **Total Availability Reserves** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Uncapped Borrowing Base** | $ - | $ - | $ - | $ - | $ - | $ - |
| ABL Balance | - | - | - | - | - | - |
| L/C Balance | - | - | - | - | - | - |
| **Sub-total - ABL Balance** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Excess ABL Availability** | $ - | $ - | $ - | $ - | $ - | $ - |
| Availability Block | - | - | - | - | - | - |
| **Total Excess ABL Availability After Covenant** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Beginning Accrued Professional Fees** | $ - | $ - | $ - | $ - | $ - | $ - |
| Professional Fees Accrued in Period | - | - | - | - | - | - |
| Professional Fees Paid in Period | - | - | - | - | - | - |
| **Ending Accrued Professional Fees Balance** | $ - | $ - | $ - | $ - | $ - | $ - |

A000302