## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC., *et al.,*[1]<br><br>                       Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br>v.<br><br>ART VAN FURNITURE, LLC, et al.,<br><br>                       Debtors. | Adv. Pro. No. 20-50548 (CSS) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION TO DEFER RULING

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001428

**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*

A001429

# TABLE OF CONTENTS

STATEMENT OF NATURE AND STATUS OF PROCEEDING .................................................. 1

SUMMARY OF ARGUMENT ......................................................................................................... 1

STATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION TO DEFER ............................... 2

ARGUMENT ..................................................................................................................................... 4

    I.    Legal Standard for Summary Judgment and the Applicable Burden of Proof ...................... 4

    II.   The Court Should Defer Ruling on the Motion to Allow for Discovery ................................. 5

    III.  Defendants Were Not a Liquidating Fiduciary in March 2020 ............................................... 6

    IV.  The Cause of the Employees' Termination Has Not Been Proven......................................... 11

    V.   Defendants Have Not Proved that COVID-19 is a Natural Disaster or that the Layoff was Due to it............................................................................................................................. 23

CONCLUSION................................................................................................................................. 28

A001430

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AB Stable VIII LLC v. Maps Hotels and Resorts One LLC*,
  CV 2020-0310-JTL, 2020 WL 7024929 (Del. Ch. Nov. 30, 2020) .............................................. 25

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970) ................................................................................................................... 5

*Benson v. Enter. Leasing Co. of Fla., LLC*,
  No. 6:20-CV-891-ORL-LRH, 2021 WL 1078185, (M.D. Fla. Jan. 4, 2021) ......................... 15, 26

*Carver v. Foresight Energy LP*,
  No. 3:16-CV-3013, 2016 WL 3812376 (C.D. Ill. July 12, 2016) .............................................. 24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................... 5

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
  467 U.S. 837, (1984) ................................................................................................................. 24

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
  143 F.3d 139 (3d Cir. 1998) ..................................................................................................... 24

*Connecticut Gen. Life Ins. Co. v. C.I.R.*,
  177 F.3d 136 (3d Cir. 1999) ..................................................................................................... 28

*Doe v. Abington Friends School*,
  480 F.3d 252 (3d Cir. 2007) ....................................................................................................... 5

*Easom v. US Well Servs., Inc.*,
  527 F. Supp. 3d 898 (S.D. Tex. 2021) .............................................................................. passim

*Grimmer v. Lord Day & Lord*,
  937 F.Supp. 255 (S.D.N.Y.1996) ............................................................................................. 23

*Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*,
  173 F.3d 175 (3d Cir. 1999) ..................................................................................................... 28

*In Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare
  Sys., Inc. (In re United Healthcare S*ys., Inc.),
  200 F.3d 170 (3d Cir. 1999) ................................................................................................... 7, 8

*In re Deb Stores Holding LLC*,
  14-12676 (KG), 2018 WL 1577606 (Bankr. D. Del. Mar. 28, 2018) ......................................... 6

ii

A001431

*In re Dewey & Leboeuf, LLP,*
    507 B.R. 522 (Bankr. S.D.N.Y. 2014) .......................................................... 23

*In re Kiwi Int'l Air Lines, Inc.,*
    344 F.3d 311 (3d Cir. 2003) ....................................................................... 5

*In re Tweeter OPCO,*
    453 B.R. 534 (Bankr. D. Del. 2011) ........................................................... 23

*In re World Mktg. Chicago, LLC,*
    564 BR 587 (Bankr. N.D. Ill. 2017) ....................................................... 7, 10

*IT Litig. Trust v. Alpha Analytical Labs (In re IT Grp., Inc.),*
    331 B.R. 597 (Bankr. D. Del. 2005) ........................................................... 5

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019) ............................................................................. 27

*Law v Am. Capital Strategies,*
    CIV. 3:05-0836, 2007 WL 221671 (M.D. Tenn. Jan. 26, 2007) .................. 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ............................... 5

*Newman as Tr. of World Mktg. Tr. v. Crane, Heyman, Simon, Welch, & Clar,*
    435 F. Supp. 3d 834 (N.D. Ill. 2020) ......................................................... 23

*Sides v. Macon Cty. Greyhound Park, Inc.,*
    725 F.3d 1276 (11th Cir. 2013) ................................................................. 23

*Thomas Jefferson Univ. v. Shalala,*
    512 U.S. 504 (1994) ................................................................................. 28

*U.S. v. Diebold, Inc.,*
    369 U.S. 654 (1962) ................................................................................. 5

**Statutes**

11 U.S.C. § 503 ........................................................................................... 4
11 U.S.C. § 503(b)(1)(A) .............................................................................. 2
11 U.S.C. § 507 ........................................................................................... 4
11 U.S.C. § 726 ........................................................................................... 4
29 U.S.C. § 2101 ......................................................................................... 2
29 U.S.C. § 2102(b)(2)(A) ........................................................................... 11
29 U.S.C. § 2102 (b)(2)(B) ..................................................................... 24, 27
29 U.S.C. § 2102(b)(3) .......................................................................... 22, 27
29 U.S.C. § 2107 ........................................................................................ 24

iii

**Rules**

Fed. R. Bankr. P. 7056 ....................................................................................................... 5
Fed. R. Civ. P. 56 .............................................................................................................. 1
Fed. R. Civ. P. 56(a) .......................................................................................................... 5
Fed. R. Civ. P. 56(c) .......................................................................................................... 5
Fed. R. Civ. P. 56(d) ....................................................................................................... 2, 6

**Regulations**

20 C.F.R. § 639.9 ............................................................................................................... 5
20 C.F.R. § 639.9(b) ......................................................................................................... 12
20 C.F.R. § 639.9(c)(1)-(3) .............................................................................................. 24
20 C.F.R. § 639.9(c)(3) ..................................................................................................... 27
20 C.F.R. § 639.9(c)(4) ..................................................................................................... 24
*Worker Adjustment and Retraining Notification*,
   54 FR 16042-01 (1989 WL 278605) ......................................................................... 6, 7

A001433

## STATEMENT OF NATURE AND STATUS OF PROCEEDING

Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated (the "Plaintiffs"), submit the following under Fed. R. Civ. P. 56 in opposition to the Motion for Summary Judgment (D.I. 43, 44 (the "Motion")) filed by the Chapter 7 Trustee (the "Trustee") for Debtors Art Van Furniture, LLC and its affiliates ("Art Van" or "Defendants" or "Debtors").

## SUMMARY OF ARGUMENT

1.  The Trustee moves for judgment on three factual issues: (1) that Defendants were a "liquidating fiduciary"; (2) that they decided to conduct a mass layoff caused by an unforeseeable business circumstance; and (3) that the layoffs were caused by a natural disaster. Defendants have not proffered a single similar case in which any of these factual findings were made prior to discovery. This Motion must be deferred until discovery is complete.

2.  But even without discovery, Defendants' own submissions show clearly that they are not entitled to judgment on any of these issues. When the Defendants terminated the putative class it was operating at least a quarter of its stores as a going concern. No court has been asked to, no less has agreed to treat such an employer as a liquidating fiduciary. That would be an oxymoron.

3.  Defendants have not proved that a natural disaster caused the mass layoff, nor can it. While the COVID virus may have developed naturally, the human invention that arguably spread it disqualifies it as a "natural disaster." Absent reliable evidence as to COVID's emergence, all inferences must be drawn in favor of Plaintiffs. Nor have Defendants proved that COVID-19 was a business circumstance that *caused* the mass layoff. Even the inchoate record plausibly suggests that Defendants' board was motivated by other factors than COVID-19. Even if COVID-19 were found to be an unforeseeable natural disaster, the evidence already suggests that the board was bowing to pressures greater than the temporary COVID-19 measures when it shut down the stores.

1

A001434

4. Because Defendants' Motion is premature and Plaintiffs are entitled to take discovery, Plaintiffs cross-move under Rule 56(d) to defer consideration of Defendants' Motion.

**STATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION TO DEFER**

On March 8, 2020, Defendants each filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. (Bankr. No. 20-10553, D.I. 2). On March 10, 2020, the Debtors' cases were consolidated for joint administration. (Bankr. No. 20-10553, D.I. 71). On April 7, 2020, the bankruptcy case was converted to Chapter 7 and the Chapter 7 Trustee was appointed. (Bankr. No. 20-10553, D.I. 263, 264).

On March 23, 2020, Plaintiffs commenced an adversary proceeding against the above-captioned Debtors in this Court (Adv. Proc. No. 20-01584-VFP (CSS) (the "Adversary Proceeding"), D.I.[2] 1) alleging that Debtors violated the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. (the "WARN Act") and seeking relief on behalf of a putative class of present or former employees of the Defendants.

On December 10, 2020, Defendants filed an Answer to the Complaint wherein they generally deny the allegations and assert several affirmative defenses, including that the terminations were caused by unforeseeable business circumstances, that notice was not required because the terminations were caused by a natural disaster, that Debtors acted in good faith, and that the Plaintiffs' claims are not entitled to first priority post-petition administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). (D.I. 25).

On April 28, 2021, Plaintiffs served their First Set of Interrogatories and Request for Production of Documents on Debtors. (Declaration of René S. Roupinian ("Roupinian Decl.") and Exhibits, attached hereto as **Exhibit 1**, ¶3; Ex. A. to Roupinian Dec. ) The parties informally

---

[2] For the balance of this Memorandum, "D.I." alone refers to the docket of the Adversary Proceeding.

A001435

exchanged information regarding the composition of the putative class, covered sites and damages, discussed the substantive issues of the case, and agreed to stay formal discovery pending mediation. (Roupinian Decl., ¶4). The parties negotiated a Stipulated Scheduling Order, entered by the Court on June 10, 2021, reflecting the parties' intention to conduct informal discovery. (Roupinian Decl., ¶¶ 4-5; Ex. B to Roupinian Decl., ¶11) and "fact discovery[] shall be completed and closed within [180] days from the filing of the Mediator's report." (Ex. B to Roupinian Decl., ¶ 22).

On June 21, 2021, pursuant to the parties' agreement to informally exchange documents, Plaintiffs' Counsel emailed an informal request to Trustee's counsel seeking information regarding, *inter alia*, Defendants' efforts to raise capital, the circumstances leading to Plaintiffs' terminations, the effects of the COVID pandemic, efforts to avoid mass layoffs, and minutes of Board of Directors' meetings. (Roupinian Decl., ¶6; Ex. C to Roupinian Decl.).

On July 12, 2021, the Trustee's Counsel responded, naming certain public documents and court filings, and producing a total of three documents: (1) Art Van Holding Co., Inc. Q1 Board Member Meeting dated February 4, 2020 (heavily redacted), (2) Board Member Minutes dated April 2, 2020 (almost entirely redacted), and (3) Wind Down Plans dated March 23, 2020. (Roupinian Decl., ¶7; Ex. D to Roupinian Decl.).

On July 27, 2021, the parties participated in a mediation with the Hon. Kevin Gross but did not settle the Adversary Proceeding, as set forth in the Mediator's Final Report filed on October 15, 2021. (Roupinian Decl. ¶8; Report, D.I. 39). Thereafter, the parties were to resume written discovery pursuant to the pretrial scheduling order entered on June 10, 2021. (Ex. B to Roupinian Decl., ¶ 22). The parties exchanged Rule 26(a) disclosures on October 29, 2021. (D.I. 41-42).

On October 29, 2021, the Trustee filed a First Amended Answer to the Complaint. (Roupinian

A001436

Decl., ¶10; Ex. E to Roupinian Decl.). In its First Amended Answer, the Trustee denies that Debtors were a WARN "employer" and asserts additional defenses, namely that Plaintiffs are required to arbitrate their claims, that at the time notice was required Art Van was a liquidating fiduciary, and that Debtors acted in good faith. The Trustee also denies Plaintiffs' WARN claims are entitled to priority under 11 U.S.C. § 503, 11 U.S.C. § 507 and 11 U.S.C. § 726. (Ex. E to Roupinian Decl., ¶¶ 57-59, 66-67, 71).

On November 16, 2021, Plaintiffs' counsel contacted Trustee's counsel to request that the Trustee serve overdue responses to the first set of discovery requests served on April 28, 2021. (Roupinian Decl., ¶11; Ex. F to Roupinian Decl.).

On November 17, 2021, Plaintiffs served Plaintiffs' Second Request for Production of Documents to Defendants and a corresponding Certificate of Service. (Roupinian Decl., ¶12; Ex. G to Roupinian Decl.). The Second Request for Production of Documents seeks documents relevant to the newly raised affirmative defenses in the Trustee's First Amended Answer, including communications with Defendants' owners and Wells Fargo relating to financing for the company and efforts to liquidate the company. (Ex. G to Roupinian Decl., Request Nos. 11-17). On December 1, 2021, two days before Plaintiffs' response to the Trustee's Motion for Summary Judgment was due, Trustee's counsel served written responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents, which Plaintiffs had served more than 6 months prior. The Trustee produced no documents in conjunction with those responses. (Roupinian Decl., ¶13; Ex. H to Roupinian Decl.).

## ARGUMENT

### I.    Legal Standard for Summary Judgment and the Applicable Burden of Proof

The Trustee's Motion must be denied if the Court finds a genuine dispute over any material

4

fact. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. In evaluating the evidence, the Court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (same); *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 316 (3d Cir. 2003) (citation omitted) (same). A genuine issue of material fact exists where, given the evidence, a reasonable jury could rule in favor of the non-movant. *IT Litig. Trust v. Alpha Analytical Labs (In re IT Grp., Inc.)*, 331 B.R. 597, 600 (Bankr. D. Del. 2005). Under the WARN Act, the employer bears the burden of proof that conditions for the exceptions, that permit the giving of notice less than 60 days in advance, have been met. 20 C.F.R. § 639.9.

## II. The Court Should Defer Ruling on the Motion to Allow for Discovery

The Trustee's Motion is premature because Plaintiffs have not had an opportunity to conduct meaningful discovery on his fact-intensive affirmative defenses, one of which he only first asserted days before filing his Motion.

A party seeking summary judgment must support its position by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] ... admissions, interrogatory answers, or other materials ...." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This standard assumes that there is a fully developed evidentiary record to examine. *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery … This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.").

A001438

As attested to in the Roupinian Declaration, Plaintiffs have not received documents, or been able to take depositions, concerning Defendants' purported liquidation process, the operations of the stores during the pendency of the bankruptcy, Defendants' efforts to obtain financing, and the decision-making process that led to the terminations of Defendants' employees. These facts directly relate to the Trustee's liquidating fiduciary defense, unforeseeable business circumstances defense, and natural disaster defense. Because of the lack of meaningful discovery on these issues, Plaintiffs are unable to justify their opposition to most of the facts asserted in the Trustee's Motion. (Roupinian Decl., ¶15; Pls.' Resp. to Trustee's Statement of Undisputed Material Facts, filed contemporaneously herewith). Pursuant to Fed. R. Civ. P. 56(d), the Court should therefore defer ruling on the Motion until Plaintiffs have had the opportunity to take relevant discovery. *See In re Deb Stores Holding LLC*, 14-12676 (KG), 2018 WL 1577606, at *3 (Bankr. D. Del. Mar. 28, 2018) (deferring summary judgment ruling under Rule 56(d) because "[t]he Court agrees with the Plaintiff and finds that further discovery is necessary.")

## III. Defendants Were Not a Liquidating Fiduciary in March 2020

The phrase "liquidating fiduciary" neither appears in the text of the WARN Act or its notice and comment Regulation. It appears only in a preamble that the Department of Labor ("DOL") appended to the Regulation in the Federal Register. *Worker Adjustment and Retraining Notification*, 54 FR 16042-01 (1989 WL 278605). The preamble recounts that a commentator had asked whether a bankruptcy fiduciary should be treated as a WARN "employer" required to provide notice. The DOL opined "that a fiduciary whose *sole function* in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a 'business enterprise' [the statutory definition of "employer"] in the normal commercial sense." *Id.* at *16045. The DOL qualified

6

that further by stating "where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary *would* succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation." *Id.* (emphasis added). Given that the Code authorizes Chapter 11 debtors in possession to operate their businesses, the DOL's explanation of "liquidating fiduciary" excludes, on its face, Chapter 11 debtors. *In re World Mktg. Chicago, LLC*, 564 BR 587, 600 (Bankr. N.D. Ill. 2017) (under the Code, "the sole function of the chapter 11 debtor in possession or trustee is *not* to liquidate").

The Third Circuit's *United Healthcare* decision is the sole authority in this Circuit interpreting the DOL's preamble language of "operating business" and "normal commercial sense." *In Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc.* (*In re United Healthcare Sys., Inc.*), 200 F.3d 170 (3d Cir. 1999) ("*United Healthcare*"). Under *United Healthcare*, Defendants here were indisputably operating their business not as a liquidating fiduciary but rather as a going concern employer when they terminated the putative class.

In *United Healthcare*, the defendant hospital's board accepted an offer to sell its assets to another hospital and close. Three days later, United Healthcare announced that it would close and surrendered its certificates of need. *Id.* at 173. The same day, it (1) filed a voluntary Chapter 11 bankruptcy petition, (2) provided its approximately 1,300 employees with 60 days' notice of termination, and (3) filed an emergency application for the sale of its goodwill. *Id.*

Within the next 48 hours, United Healthcare had transferred or sent home all its patients. *Id.* Thereafter, United Healthcare's employees were "unable to perform their regular duties but instead cleaned, took inventory, and prepared the company assets for sale." *Id.* They were terminated two weeks later, well short of their 60 days' notice. *Id.* Although the employees were awarded WARN backpay, the Committee appealed, claiming that the debtor had ceased to be a "business enterprise"

7

at the point when they had been reduced from care-givers to caretakers.

Reversing, the Third Circuit panel held:

> [W]hether a bankrupt entity is an 'employer' under the WARN Act depends on the nature and extent of the entity's business and commercial activities while in bankruptcy. … The more ore closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an "employer;" the more closely the activities resemble those of a business winding up its affairs, the more likely it is the entity is not subject to the WARN Act."

*Id*. at 178. Given the hospital's complete abandonment of its ability to do business and the replacement of all its employees normal activities with cleaning and inventory-taking, the panel held that the activities no longer resembled those of going concern. *Id.*

Defendants have not pointed to a single employee whose activities changed before they were terminated. Not only did the company *resemble* a going concern, it was largely, in fact, a going concern. Defendants declared when filing their Chapter 11 petition on March 8, that they planned to conduct a "going concern" sale of 44 stores and two distribution centers during its proceedings. (Ladd Declaration, D.I. 46-1 at 11-12[3]). Those stores comprised almost half of the 92 furniture showrooms. (*Id.*, D.I. 46-1 at 16, ¶27). The goal was to "preserve the going concern on the balance and hopefully save those thousands of jobs" and provide a benefit to creditors. (Transcript of Hearing on March 10, 2020, D.I. 46-1 at 45 lines 11-13.)

Defendants were operating, in large part, as a retailer seller in the "ordinary course" throughout the period of March 8 to March 19 under its Cash Collateral order, which required that it do so. (Cash Collateral Order, D.I. 46-1 at 151.) According to its own motion and proposed Order, which the Court entered on March 16, as a DIP loan borrower Debtor was prohibited from sales "outside the ordinary course of business[.]" (*Id.*) Not only did Defendants have to sell in the "ordinary

---

[3] Page citations to docket entries refer to the page number assigned by the ECF system, e.g., "Pages 10-11 of 201" here.

A001441

course," they were given authorization to purchase inventory in the *ordinary course* of business during the bankruptcy. (DIP Motion, D.I. 46-2 at 11). They were precluded from deviating in any respect from "ordinary course" of business. (*Id.*, D.I. 46-2 at 14 ("Limitations on Use of Proceeds"). They were prohibited from "[s]ubstantially chang[ing] the nature of the business in which [they were] currently engaged" or "purchas[ing] or invest[ing], directly or indirectly, in any assets or property *other than in the ordinary course* of business or other than those which are useful in, necessary for and are to be used in [their] business, as presently conducted." (DIP Credit Agreement, D.I. 46-2 at 60.)

Defendants also planned to wind down their other stores and operations through "going-out-of-business" ("GOB") sales. (Ladd Declaration, D.I. 46-1 at 4, ¶6.) It had begun the process prepetition, with a "soft launch" of GOB sales on March 5. (*Id.*, D.I. 46-1 at 11, ¶18.) Between that date and March 8, the date of the petition, Defendants' "deposits from inventory sales were in excess of $23.0 million." (Conversion Motion, D.I. 46-2 at 112, ¶22.) Its deposits from sales for the post-petition week ending March 15th, were $8.0 million. (*Id.*) Defendants' operating reports through October 2020 show receipts of millions of dollars each month, presumably from receipts from its sale of goods to its customers in its stores. (2020 Monthly Operating Reports of Art Van Furniture, LLC for May-Oct., Bankr. D.I. 790, 842, 1025, 1026, 1027, 1079).

Unlike the United Healthcare employees, Defendants' employees were performing their jobs exactly as they had prepetition on the day they were terminated. Defendants needed "GOB" signage so that customers would be aware they were going to go out of business. Indeed, the stores from which Defendants terminated approximately 1,000 class members on March 19 were ones that Defendants told the Court on March 19 they were "attempting to operate as much as possible in the ordinary course." (Transcript of Hearing on March 19, 2020, D.I. 46-5 at 25 lines 8-12.)

A001442

*In re World Marketing Chicago* is instructive here because, like Art Van, the World Marketing business entered bankruptcy hoping to keep itself afloat for 60 days. 564 B.R. at 602. World Marketing announced that it was shutting down operations, yet had also filed motions to use cash collateral, claiming the cash was necessary "to operate its business." *Id.* It further stated that failure to pay its payroll in a timely fashion would "jeopardize its ability to reorganize." *Id.*

The *World Marketing* court found that even "if the Debtors were conducting their business solely for the purposes of a sale, they were engaged in some form of business," and found several compelling reasons not to apply the "court-made liquidating fiduciary exception." *Id.* at 603. First, exceptions to WARN should be "applied sparingly" given it is "remedial legislation and its exceptions are to be construed narrowly." *Id.* Second, the debtor's public representations regarding reorganization should have some binding effect. Even under the *United Healthcare* exception the court found the debtor "unentitled to the benefit of the liquidating fiduciary exception." *Id.* Here, Defendants' continuing of its business with either "going" appellation, "going concern" or "going out" still denotes business is going on. Customers are enticed to come in and do business equally. United Healthcare's patients were not invited to come in for medical care when its employees were sweeping up. Defendants stretch the loose concept of "liquidation" to cover the monetization of any assets once a shutdown is planned. But Congress enacted WARN precisely to require notice to employees 60 days before a planned shutdown. As one court explained when granting the plaintiff's motion to strike the liquidating fiduciary defense, the exception would "swallow the rule" and "eviscerate [WARN]" if taking the "preliminary steps towards liquidation, while otherwise continuing to carry on its business" exempted an employer from notice. *Law v Am. Capital Strategies,* CIV. 3:05-0836, 2007 WL 221671, at *17 (M.D. Tenn. Jan. 26, 2007).

10

## IV. The Cause of the Employees' Termination Has Not Been Proven

On the surface, Defendants' narrative of their unforeseeable business circumstances ("UBC") defense seems plausible: a company accelerates its WARN mass layoff from 60 days of notice to fifteen, because COVID-19-triggered government orders prevented it from continuing its wind down sales. On closer inspection, however, the record, such as it is, indicates a different story— one that warrants formal discovery. It shows that the Art Van Board of Directors were officers of its private equity owner, T.H. Lee, which had steered it into a disastrous LBO and steep decline. (AVF Holding Company Inc. Board Minutes, Apr. 2, 2020, attached hereto as **Exhibit 2**). They were "out-of-the-money" custodians serving, in effect, the under-secured lenders. Unsurprisingly, while the professionals were in Bankruptcy Court, approaching the temporary COVID issues with the constructive, problem-solving creativity valued there, the Board raced ahead to terminate the workforce permanently - triggering obligations that promptly led the cases to convert.

The WARN Act provides: "An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). The Department of Labor's WARN regulation interprets "circumstances" as meaning those *outside* the company's control that are sufficiently extreme:

(1) An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition ***outside the employer's control***. …

(2) The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. …

11

20 C.F.R. § 639.9(b) (emphasis added). Whether the cause of the mass layoff's acceleration was the onrush of COVID-19 or the fated, final liquidity crisis in the long death spiral can be discerned in the statement of the parties before the Bankruptcy Court in March 2020.

In January 2020, as the world fell into the grip of COVID-19, Art Van fell into the control of its secured lenders. The company's situation became critical as its ABL facility borrowing base was further restricted and its access to credit tightened. (Ladd Declaration, D.I. 46-1 at 8, ¶13.)

On January 31, 2020, the World Health Organization issued a Global Health Emergency[4] and the U.S. declared a Public Health Emergency.[5] On February 5, the company defaulted on its ABL facility and Wells Fargo agreed to forbear until February 28 to allow it to explore a capital raise. But Wells Fargo took "cash dominion" and required the company to begin immediate GOB liquidation before the 28th if the effort was unsuccessful. (Ladd Declaration, D.I. 46-1 at 8, ¶14.)

In February, COVID-19 crossed paths with Art Van and it was fateful. T.H. Lee Partners had formed a Consortium with Art Van's founders to attempt the capital raise. But on February 27, COVID set off the sharpest fall of the stock markets since 2008, with the Dow falling 1,191 points, its largest one-day drop in history.[6] The Consortium purportedly failed to secure the necessary capital commitments because the coronavirus made the Consortium investors' unwilling to contribute the capital. (Ladd Declaration, D.I. 46-1 at 8-9, ¶15.) What followed was no surprise.

When Defendants filed their bankruptcy petition on March 8th, Defendants owed its secured lenders approximately $208.5 million: a Term Loan of $175 million under its Term Loan and $33.5 to Wells Fargo its ABL lender, all secured by its assets. (Ladd Declaration, D.I. 46-1 at 17, ¶31).

---

[4] *Coronavirus Declared Global Health Emergency by WHO*, BBC News, Jan. 31, 2020, available at https://www.bbc.com/news/world-51318246.
[5] *US Declares Public Health Emergency Over Coronavirus,* ABC News, Feb. 1, 2020, available at https://abcnews.go.com/Health/delta-suspends-us-flights-china-amid-coronavirus/story?id=68666037.
[6] *Dow Falls 1,191 Points – The Most in History*, CNN, Feb. 27, 2020, available at https://www.cnn.com/2020/02/27/investing/dow-stock-market-selloff/index.html.

A001445

Their only cash on hand was $11.6 million in cash dominion. (Transcript of Hearing on March 10, 2020, D.I. 46-1 at 78 line 19 to 79 line 6).

Under the plan budget, Defendants would sell collateral through GOB sales that would pay for expenses of Chapter 11 and pay down the ABL revolver. (Transcript of Hearing on March 10, 2020, D.I. 4-1 at 80 line 16 to 81 line 19). Under Wells Fargo's dominion order, Defendants would give Wells Fargo a schedule, saying they need certain things funded and the bank would fund based on the items that it approved to be funded. (*Id.*). Having received deposits from its Store Closing Sales from March 5-8, 2020, in excess of $23.0 million, Defendants reaped $8.0 million more from sales in the first week of its bankruptcy through March 15th. (Conversion Motion, D.I. 46-2 at 112, ¶22). Starting around March 14 some states in which Art Van operated issued "guidance" or closure orders for certain establishments. (Conversion Motion, D.I. 46-2 at 112-113, ¶¶ 22-23.) All these orders were "temporary." (*See, e.g.*, Wolf Order, D.I. 46-4 at 90; Whitmer Order, D.I. 46-4 at 93).

At the March 19 Court status conference, Defendants' counsel downplayed the impact of the government guidance and directives. Defendants' counsel touched on the "different buckets of stores" some of which were the subject of "going concern sales that were largely completed" and eight whose "store closing sales had begun before the filing" and others that were going to be the Levin-Wolf going concern stores." (Transcript of Conference on March 19, 2020, D.I. 46-5 at 25 line 19 to 26 line 7). Counsel then added that, as to those "where we still had ongoing GOBs and -- or were attempting to operate as much as possible in the ordinary course, the company has made the -- you know, the difficult decision, effective as of today, to tell employees not to report to work at those locations." (*Id.*, D.I. 46-5 at 25 lines 8-12).

A001446

Defendants' counsel stated the it was the company's "hope" that the locations it had "at least temporarily, shuttered" that day would not be "forever," but asserted the need to "adapt consistent with our obligations and fiduciary duties." (*Id.*, D.I. 46-5 at 25 lines 12-18).

Defendants' counsel echoed the sentiment of America's employers when it expressed the need for its clients to act as fiduciaries by adapting to the hoped-for temporary crisis that faced the country. Indeed, in the week Defendants let go their employees over 3.3 million others were filing for unemployment, nearly five times more than the one-week record set during the Great Recession.[7]

But many of those 3.3 million Americans were *not* laid off *permanently*. Employees may file for unemployment when they are no longer paid, such as when they were told to take temporary unpaid time off as in temporary layoffs or furloughs. Employers adopted such approaches, included pay cuts, or reduced hour arrangements rather that terminating their employees permanently, due to the temporary nature of COVID-19. To help them meet the unprecedented challenge, the federal government began enacting unprecedented solutions and support. On March 6, after Defendants gave 60 days' notice to its workforce, and prior to its bankruptcy filing, the president signed the first, $8 billion coronavirus relief bill.[8] The day prior to the second WARN notice, on March 18, he signed a $192 billion bill.[9] Then, on March 25, the Senate unanimously passed and the president signed two days later, the largest economic stimulus package in U.S. history - a $2.2 trillion dollar package that included, among other things, payroll money,

---

[7] *A Record 3.3 Million Americans Filed for Unemployment Benefits,* Washington Post, March 26, 2020, available at https://www.washingtonpost.com/business/2020/03/26/unemployment-claims-coronavirus-3-million/.
[8] *Trump Signs $8.3 Billion Emergency* Package, CBS News, Mar. 6, 2020, available at https://www.cbsnews.com/news/trump-signs-8-3-billion-emergency-package-to-combat-coronavirus/.
[9] *Trump Signs Coronavirus Relief Measure*, ABC News, Mar. 18, 2020, available at https://abcnews.go.com/Politics/mcconnell-urges-colleagues-support-coronavirus-economic-relief-bill/story?id=69664853.

A001447

unemployment benefits money, and health care coverage.[10]  Starting in mid-March, temporary paid time in the form of furloughs, layoffs and workforce reductions become prevalent. Millions of employees were put on extended leaves while they waited (and hoped) to be recalled back to work.  While many others lost their jobs, only a dozen WARN Act cases arose in the next six months.[11]  Until today, only two COVID-era WARN Act cases have been reported in the case law - suggesting that COVID did not require kneejerk terminations violating WARN. *See Benson v. Enter. Leasing Co. of Fla., LLC*, No. 6:20-CV-891-ORL-LRH, 2021 WL 1078185, (M.D. Fla. Jan. 4, 2021), vacated sub nom. *Benson v. Enter. Leasing Co. of Orlando*, LLC, No. 6:20-CV-891-RBD-LRH, 2021 WL 1080914 (M.D. Fla. Feb. 4, 2021); *Easom v. US Well Servs., Inc*., 527 F. Supp. 3d 898, 900 (S.D. Tex. 2021).

Upon learning that the Defendants had suspended store operations, the Court "cut to the chase" and inferred that Defendants' counsel was communicating that the final interim cash collateral order hearing would not be going forward the next day, on March 20.  Although not denying it, Counsel segued into a discussion of the company's alternatives to dispel any thought of an immediate shutdown.  (Transcript of Conference on March 19, 2020, D.I. 46-5 at 27 lines 3-14).

Defendants' Counsel sought to immediately make "clear" that "we are trying to explore with our lenders and our other stakeholders … other options short of outright liquidation."  (*Id.*, D.I. 46-5 at 27 lines 9-14).  Counsel specifically mentioned the ongoing "Craftworks" case currently pending before Judge Shannon, in which a pause in the Chapter 11 closing sale plan process was being entertained to adapt to the COVID directives.  (*Id.*).  Counsel continued by intoning the spirit of problem-solving and dialogue:

---

[10] *Trump Signs $2 Trillion Coronavirus Relief Bill*, CNBC, Mar. 27, 2020, available at https://www.cnbc.com/2020/03/27/house-passes-2-trillion-coronavirus-stimulus-bill-sends-it-to-trump.html.
[11] *As Fall Approaches, WARN Act Lawsuits Likely to Heat Up*, National Law Review, Sept. 1, 2020, available at https://www.natlawreview.com/article/fall-approaches-warn-act-lawsuits-likely-to-heat.

A001448

So let me just say then, conceptually, we are looking at the possibility of…going idle or going into a state of dormancy for a period of time, and then the possibility then of either…reopening stores, some subset of stores as, either in furtherance of the going concern transaction…or…closing sales and an orderly liquidation, you know, essentially, once the economic and retail environment and the safety environment have improved to a degree that we can do that. … [T]here are a number of scenarios under consideration… we are right now, engaging in a dialogue with Wells Fargo and our term loan lenders to see if there's a way to pursue that alternative.

(*Id.*, D.I. 46-5 at 27 line 23 to 28 line 13). Defendants' counsel warned, however, that Wells Fargo needed to cooperate, stating the need for

cooperation from the ABL agent and the term loan lenders and… assurances that, while we are having these dialogues…they'll ***take no precipitous action*** to make that -- an already difficult situation worse by [] sweeping all of the cash, for example, that are in the debtors' cash collection accounts and leaving us without even the cash necessary to fund those operating and restructuring expenses already incurred or that might be incurred imminently, as we're [] trying to navigate this situation.

(*Id.*, D.I. 46-5 at 28 line 17 to 29 line 3) (emphasis added).

There was a marked difference, however, between what Defendants told the Court and what it told its employees on March 19. That day, Defendants sent WARN notices telling their thousands of employees that they were permanently terminated. They would receive no pay and no benefits, including health insurance, after that day. (WARN Notice, D.I. 46-5 at 14). But, in Bankruptcy Court, it was Defendants' counsel who was pressuring Wells Fargo not to act precipitously.

Wells Fargo's counsel, Jennifer Feldsher stated: "Debtors' decisions, unfortunately, are coming at us minutes before these hearings." (Transcript of Conference on March 19, 2020, D.I. 46-5 at 30 lines 1-2). She continued that while the bank wanted "to try to find a path forward…for all stakeholders," the debtors here, "as opposed to other cases," had not "fully come to their creditors, other than to say this is somebody else's problem and, put -- you know, fix it for us or don't sweep or do these things." (*Id.*, D.I. 46-5 at 30 lines 2-9). She said "unfortunately, we haven't gotten the information that we need from the company to be able to even consider a full wind-down plan. (*Id.*, D.I. 46-5 at 30 lines 16-18).

16

A001449

Creditors' committee counsel, Mr. Sandler, appointed the day before, carried forward the spirit of cooperation and resistance to simply "pull the plug" as the hallmarks of professionalism. (*Id.*, D.I. 46-5 at 36 lines 14-19). He said "there are other things besides, you know, dollar recoveries." (*Id.*, D.I. 46-5 at 35 lines 15-17). He mentioned the hope that "44 stores would be saved, thousands of jobs would be saved. Maybe that will happen down the road." (*Id.*, D.I. 46-5 at 35 lines 18-21). He emphasized the probability that putting the winddown "on ice" would be advantageous:

> We're talking about something that is not perishable. [F]urniture, whether[] it's in the store today or…a month…or two months from now, it's still the same furniture. So it should be relatively easy to shut the debtor down without any value that would dissipate because of the furniture somehow [] getting destroyed or damaged.

(*Id.*, D.I. 46-5 at 36 lines 6-13). But, he continued, "pulling the plug" would be detrimental:

> Restructuring professionals are…supposed to come up with creative solutions to very very tough problems. And it may be easy to … pull the plug and say let's convert the case to a Chapter 7. I'm not really sure what that gets you. … And it seems to me that this is a creative approach to put everything on ice. And hopefully [] at some time period, whether it's 30 days, 60 days, 90 days…to [] turn the lights back on and resume the liquidation of the stores and hopefully find a going concern for the Wolf Levin properties.

(*Id.*, D.I. 46-5 at 36 line 14 to 37 line 3). He said the committee favored "put[ting] everything on ice and let's come back to in[]a month or two and see." (*Id.*, D.I. 46-5 at 37 lines 4-9).

As he spoke these words, Mr. Sandler, the Court, and perhaps even Defendants' counsel may not have realized that the Defendants *had* effectively "pulled the plug" that day. Defendants had already terminated their workforce *permanently* triggering insurmountable obligations. This came to light at the March 31 conference, when Defendants announced the cases were about to convert to Chapter 7. As counsel made clear, the company had, on March 19, steered the company off the course charted by counsel in open court. Without consultation or communication, Defendants accelerated the terminations and resultant payments with the improbable expectation that the bank would cover them, including the D&O liability Defendants had brought upon themselves.

17

A001450

Reporting to the Court what had happened, Defendants' counsel Mr. Werkheiser put it genteelly that "we were not able to get to a point where we had the agent support and consent for the mothball arrangement primarily because of the company's liquidity issues and cash needs, both as they exist today based on obligations that have accrued thus far since the filing and the expected obligations[.]"  (Transcript of Hearing on Mar. 31, 2020, D.I. 46-5 at 53 lines 1-6).

Mr. Werkheiser then explained that many of the more than 4,000 employees were salespeople. They earned commission when furniture was delivered - which meant a "long tail" of outstanding commissions on over $30 million in sales, earned "in the couple of weeks that the debtors were operating in bankruptcy" were suddenly now due.  (*Id.*, D.I. 46-5 at 53 lines 15-21).  Moreover, there was an even more substantial tail created by the partially self-funded health plan which had been cancelled on March 19.  Those obligations were "approaching $10 million" and the cash in the estate was, he believed, $12 to $13 million.  (*Id.*, D.I. 46-5 at 53 line 22 to 54 line 7).  He said that unless the company could get beyond "the next 12 hours," the debtors would "likely have no choice but to move forward with seeking conversion of these cases to a Chapter 7 liquidation" - insinuating that the estate's fate was up to others. (*Id.*, D.I. 46-5 at 56 lines 15-22).

Wells Fargo's counsel then presented the stark reality: the problem was Defendants' *uncontemplated mass terminations*, which accelerated obligations - already at $16.5 million - that Defendants insisted the bank underwrite to insulate their D&O's.

Ms. Feldsher noted the importance of a "willing partnership between the debtors and their stakeholders." (*Id.*, D.I. 46-5 at 58 lines 5-10).  To that end, "Wells Fargo has funded every single payroll request that the debtors have made for current pay."  (*Id.*, D.I. 46-5 at 58 lines 20-23).  But Defendants' decision to immediately suspend operations, including where there were no shutdown orders in place, and "to terminate all" or "significantly all of their employees," she said, "was not

A001451

something that was done in coordination with the lenders, either the ABL lender or the term lender, or even the [Gordon Brothers store-closing] consultant …who…had remained to support the debtor's efforts to try to continue a GOB sale." (*Id.*, D.I. 46-5 at 59 lines 1-13). Ms. Feldsher continued: "[s]o, as a result of terminating their employees, … the debtors now have significant accrued PTO commissions, other benefits related to the terminated employees as well as healthcare obligations. Most of these were not included in any budget and certainly in the cash collateral budget because there was **no contemplation of a wholesale mass termination of employees**." (*Id.*, D.I. 46-5 at 59 lines 14-20) (emphasis added).

She indicated these obligations could have been avoided had employees been laid off temporarily: "Could these have been mitigated if employees had been furloughed [or by] less drastic more spaced out termination we will never know… but now these expenses exist." (*Id.*, D.I. 46-5 at 59 lines 20-25). "[J]ust the employee obligation alone" were over $14 million. (*Id.*, D.I. 46-5 at 60 lines 1-4). But Defendants were seeking another $2.5 million for a professional fee carve out - thus the demand of the estate was for $16.5 million not taking into account any other expenses that might result. (*Id.*, D.I. 46-5 at 60 line 22 to 61 line 2). She stated that "there is no scenario the debtors have put forth that they believe provides the ABL lenders with payment in full." (*Id.*, D.I. 46-5 at 61 lines 8-10). Wells Fargo had "no issue paying for employee wages that are coming due" for further operations but could not make the blank-check assurances Defendants were demanding (*Id.*, D.I. 46-5 at 61 line 21 to 62 line 4). Ms. Feldsher pointed out Wells was being asked to undertake "obligations for which [Defendants] perceive that there might be D&O liability." (*Id.*, D.I. 46-5 at 62 lines 17-19).

She stated that Defendants would only provide the information creditors needed if Wells Fargo made "guarantee that all potential liabilities for the directors and officers are taken care of full

A001452

stop." (*Id.*, D.I. 46-5 at 63 lines 16-21). Wells Fargo, she explained, was "not in a position to do

that today. We simply can't." (*Id.*, D.I. 46-5 at 63 lines 21-25). As Ms. Feldsher described it,

Wells Fargo would "prefer that we did this consensually" but Defendants were making "late in the

evening demands that say you must pay what we believe are $16 and a half million dollars of

obligations and we'd like to take that money today." (*Id.*, D.I. 46-5 at 64 lines 1-12). Ms. Feldsher

ended by returning to Wells' commitment:

> If the debtors want to work cooperatively, we are here. … we will fund payroll
> expenses for employees and [] we will fund payroll expenses for employees that
> remain at the company today and certain those that we need going forward. But we
> cannot give the debtors assurances that we are going to fund something to deal with
> D&O liabilities today. It's just not appropriate and we're not in position to do so.

(*Id.*, D.I. 46-5 at 65 line 19 to 66 line 1).

When the Court tried to drill down on the unfunded employee obligations, Ms. Feldsher asked

to speak, but Mr. Werkheiser interjected, and was told:

> THE COURT: …You will get your opportunity to speak. I'm trying to figure out
> the facts and, frankly, I'm not getting them very well from you where I have to ask
> your client and others to tell me what's actually going on.

(*Id.*, D.I. 46-5 at 79 line 23 to 80 line 2).

As Defendants' financial advisor, Mr. Stogsdill, had informed the Court, the commissions for

March would have been paid in April but, "because we terminated everybody and shut down the

operations, we moved them up to be paid one to two weeks after the closing" - i.e., $2.2 million

had to be paid that very week. (*Id.*, D.I. 46-5 at 77 lines 2-11).

Ms. Feldsher restated the problem: "So, the commissions, Your Honor, have not been paid yet

and they have not been paid because as you heard from Mr. Werkheiser, *these were delayed and

they were accelerated*, as Mr. Stogsdill said. *They have been accelerated unilaterally by the

company to be payable now.* (*Id.*, D.I. 46-5 at 81 lines 21-25) (emphasis added). There were no

provisions for those obligations or the unpaid PTO or vacation that were triggered by the

A001453

unanticipated termination of "all of their workforce." (*Id.*, D.I. 46-5 at 81 lines 6-8). Emphasizing the issue of transparency, she stated:

> "We've tried very very hard with the debtors … but we need definitive numbers, not estimates. We need actual numbers. We need to know exactly what is being requested.

(*Id.*, D.I. 46-5 at 83 lines 4-9).

Defendants' counsel argued that Wells Fargo shared the blame for the "impossible situation," because as the ABL lender, it had committed to the payroll expenses and it needed to "pay the freight," including the healthcare plan benefits. (*Id.*, D.I. 46-5 at 83 lines 21-23). He stated:

> I do appreciate the difficult situation and perhaps the impossible situation that the court is in and everybody else is in. But what I'm talking about is enforcing a choice that not just the debtor but the lenders made in the order that they agreed to and had Your Honor enter. That order explicitly says that the debtors had the ability to use the cash collateral to meet the payroll obligations.

(*Id.*, D.I. 46-5 at 88 lines 13-20). But the Court referred Mr. Werkheiser to the interim cash collateral order:

> THE COURT: It says payroll obligations and irreparable harm expenses.
>
> MR. WERKHEISER: Yes, Your Honor.
>
> THE COURT: And the only payroll obligations that I've heard are salary, wages, and commissions that have been (indiscernible) but unpaid through today. …The healthcare reimbursements are not payroll obligations. They're just not. Under no reasonable definition of what payroll obligations are would they include healthcare reimbursements under a terminated healthcare policy, many of which are prepetition. And it's terrible and it's ridiculous that in this country you have to have a job to have health insurance, but that is the law.

(*Id.*, D.I. 46-5 at 89 lines 1-14).

Of course, twelve days earlier, on March 19, Defendants had eliminated the employees' jobs and health insurance at the height of the pandemic - passing the unpredictable risks on to them. Just as Defendants insinuated to the Court that the closures were temporary, and that they would work constructively with the stakeholders, they had in fact foreclosed any opportunity to defer

A001454

obligations and negotiate alternatives by taking unilateral permanent action against the employees.

Responding to the Court, Mr. Werkheiser called the employee obligations the "dirty laundry" which he had not prepared himself to discuss: "I understand where the court is coming from. Your Honor, again, despite us airing our *respective* dirty laundry in front of the court today which is not what we had set out to do this afternoon[.]" (*Id.*, D.I. 46-5 at 89 lines 15-19) (emphasis added). He again put it on the lenders to "pay the freight." (*Id.*, D.I. 46-5 at 90 lines 2-21).

Although Defendants may have been liberal in passing some taint along with their burdens, they were less liberal when it came to sharing their financials and plans. This observation is not a matter of hindsight: it was articulated in court at the time. Defendants froze out the stakeholders and ran roughshod over its "Planned Liquidation Process" deciding to cause the ultimate liquidity crises when terminating its workforce. No one had demanded that they do that on March 19 - not Wells Fargo and certainly not COVID-19. What COVID-19 demanded of employers was a transparent, problem-solving approach - the hallmark of Chapter 11 stewardship, not what Defendants did.

WARN, in particular, requires such transparency. Congress required employers to spell out specifically in their WARN notice what prevented them from providing full notice. 29 U.S.C. § 2102(b)(3). That means Defendants had to identify in the March 19 notice why they could not keep employees employed until May 5 as promised - with or without pay or deferments. The notice provided platitudes, not specifics: "Since initial notice, the Company has been impacted by the novel COVID-19 virus and the resulting, and sudden, negative economic impact." (WARN Notice, D.I. 46-5 at 14). COVID-19 forced every employer to adapt. But that did not result in universal mass terminations. It was not COVID-19 alone, but COVID-19 *plus something else* that caused Defendants to permanently terminate its workforce on March 19. In the end, it was their

22

own impetuosity. Defendants chose to keep others in the dark, pull the plug and play the blame game. Defendants, not an unforeseeable outsider - caused the mass layoff that day.

Summary judgment is not appropriate in favor of Defendants, but it may well be in favor of Plaintiffs - even before the commencement of discovery. The statement in a shortened WARN notice must provide "reasonably specific facts that make an exception to the statutory notice period applicable, 'providing an adequate, specific explanation to affected workers'"). *Grimmer v. Lord Day & Lord,* 937 F.Supp. 255, 256-57 (S.D.N.Y.1996), *cited in In re Tweeter OPCO,* 453 B.R. 534, 547 (Bankr. D. Del. 2011) (striking UBC defense because notice merely stated: "Unfortunately, due to adverse business conditions outside our control, we are not able to give you advance notice."). To say the company was "impacted by the novel COVID-19 virus … resulting, and sudden, negative economic impact" is amorphous. It would permit Defendants to "assert litigation-convenient but factually post-hoc justifications for their actions" which is why their defenses may warrant dismissal as a gating issue. *Newman as Tr. of World Mktg. Tr. v. Crane, Heyman, Simon, Welch, & Clar*, 435 F. Supp. 3d 834, 843–44 (N.D. Ill. 2020), *quoting Sides v. Macon Cty. Greyhound Park, Inc.*, 725 F.3d 1276, 1285-86 (11th Cir. 2013). *See also In re Dewey & Leboeuf, LLP*, 507 B.R. 522, 533-34 (Bankr. S.D.N.Y. 2014) (striking affirmative defenses where notice stated the firm was "unexpectedly experiencing extraordinary difficulties [and] [u]nfortunately, the situation is deteriorating at a more rapid pace than was initially anticipated").

## V.    Defendants Have Not Proved that COVID-19 is a Natural Disaster or that the Layoff was Due to it

To carry their burdens of proof, Defendants must prove that COVID-19's spread was a natural disaster, and that the mass layoffs were a direct result of COVID-19. They have not done so because they cannot. The WARN Act provides an exception to the 60-day notice requirement in

23

A001456

the case of "natural disaster."  It provides in pertinent part:

> No notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States.

29 U.S.C. § 2102 (b)(2)(B). Although Congress did not define the phrases "natural disaster" or "due to," it expressly delegated to DOL authority to promulgate interpretive regulations.  29 U.S.C. § 2107.  In the Third Circuit, these regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145 (3d Cir. 1998), *citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, (1984).  The regulation states in pertinent part:

> (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
>
> (2) To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.
>
> (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in §639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.

20 C.F.R. § 639.9(c)(1)-(3).  To ensure the exception is narrowly construed, the DOL added:

> (4) Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.

20 C.F.R. § 639.9(c)(4).

For Defendants to carry their defense, they must prove that the SARS-CoV-2 virus is naturally occurring and that the spread of COVID-19 was free of human intervention. *Easom v. US Well Services, Inc.*, 527 F. Supp. 3d 898, 907 (S.D. Tex. 2021), citing *Carver v. Foresight Energy LP*, No. 3:16-CV-3013, 2016 WL 3812376, at *1, 4 (C.D. Ill. July 12, 2016), ("human involvement in the origins of the combustion events would seem to preclude the events from being considered a

24

natural disaster.)"  Although the Defendants rely on *Easom,* that case was decided in August 2020, well before the scrutiny over COVID-19's origins shifted from the wet market to the laboratory in Wuhan.  Nor were those points raised in the only case cited in *Easom* that COVID-19 "emerged naturally." *AB Stable VIII LLC v. Maps Hotels and Resorts One LLC*, CV 2020-0310-JTL, 2020 WL 7024929, at *58 (Del. Ch. Nov. 30, 2020).  Hewing to the general rule recognized by the *Eason* and *Carver* courts, the Delaware Chancery court opined that a human intervention such as the human creation of COVID-19 as a "bioweapon", if true "could undermine its status as natural disaster" but that the record did not support that contention.  *Id*. at fn. 214.

In the absence of any certainty regarding origins of COVID-19, no court can "rule" as to whether COVID-19 is, or is not, a natural disaster at this point. Defendants cannot avail themselves of this affirmative defense on which they bear the burden of proof, for there is no proof at this time.   The natural inference that the Court must make in Plaintiffs' favor, however, is bolstered by the intelligence community. It accords greater "confidence" to the laboratory leak theory than any other.  Although Defendants are correct that the "bioweapon" theory has been effectively debunked, the report requested by President Biden elevated the creditability of the "laboratory leak" theory above the "market" hypothesis. After examining all available intelligence, the National Intelligence Council and "four [Intelligence Community] elements" assessed with *low confidence* that the initial SARS-CoV-2 infection was most likely caused by natural exposure to an animal infected with it.  (Report, D.I. 46-5 at 173) (emphasis added). But "one Intelligence Community element assesse[d] with *moderate confidence* that the first human infection with SARS-CoV-2 most likely was the result of a laboratory-associated incident.  (*Id.*) (emphasis added).  These analysts assessed that it probably involved experimentation, animal handling, or sampling by the Wuhan Institute of Virology.  They gave "weight to the inherently risky nature of

A001458

work on coronaviruses." (*Id.*) In the end "[a]nalysts at three IC elements remain unable to coalesce around either explanation without additional information. (*Id*.) As a matter of summary judgment, however, Plaintiffs are entitled to the benefit of the laboratory origin inference.

Even assuming *arguendo*, COVID-19 is a "natural disaster" Defendants have not proved that the mass layoff directly resulted from it, as opposed to being an indirect result. The only authority to rule on this issue held mass layoffs caused by COVID-19-related business downturns are only "indirectly" caused by COVID-19. *Benson v. Enter. Leasing Co. of Fla., LLC*, 620CV891ORL37LRH, 2021 WL 1078185, at *4 (M.D. Fla. Jan. 4, 2021), *vacated sub nom. Benson v. Enter. Leasing Co. of Orlando, LLC*, 6:20-CV-891-RBD-LRH, 2021 WL 1080914 (M.D. Fla. Feb. 4, 2021). Neither in *Benson*, nor here, has anyone alleged that the COVID-19 disease harmed anyone directly, as a flood or earthquake might destroy a factory. *Id.* at *4 As the *Benson* Court described: "a dramatic downturn in business" is "more akin to a factory that closes after nearby flooding depressed the local economy." *Id*.

Here, Defendants appear to be arguing that their sales volume dropped due to COVID-19 related restrictions, which led them to lay off their employees. That would be an indirect result of COVID-19, negating the natural disaster defense. Only a UBC defense could be available. *Id.*

The *Benson* decision stands, for the case has settled. For its part, the *Easom* Court interpreted the "due to natural disaster" clause in the WARN Act as offering the widest possible, "but for" scope. *Easom*, 527 F. Supp. 3d at 915. But that interpretation does not withstand scrutiny. First, the Court gave no deference to DOL's express and reasonable interpretation of the words "due to" as precluding the limitless "indirect" effects of natural disasters. Second, the grounds on which the *Easom* Court invalidated the regulation was wholly unrelated to DOL's interpretation of those words. The *Easom* Court did so based on its misconstruction of other words of the statute as DOL

26

has now explained in an amicus brief filed on its behalf in *Benson*'s Court of Appeals docket (See Amicus of United States, attached hereto as **Exhibit 3**).

The *Easom* Court ruled the Department of Labor had no authority to prescribe its rule that "[a]n employer relying on this subsection shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 20 C.F.R. § 639.9(c)(3); *Easom*, 527 F. Supp. 3d at 906.

The *Easom* Court found that incompatible with the statute itself which states that "no notice under this chapter" is necessary in the case of a natural disaster. 29 U.S.C. § 2102 (b)(2)(B). *See Easom*, 527 F. Supp. 3d at 906. But the "no notice" provision refers to the advance notice "in this chapter." The "chapter" is the entire WARN Act whose sole purpose is to a mandate advance notice. The sentence in the sub-subsection relieves *advance* notice because, as the DOL explains, it would be absurd to require *advance* notice ahead of earthquakes and the like. Congress unambiguously stated in § 2102 (b)(3) that the employer relying on subsection (b) (faltering company, UBC, and natural disasters) give as much notice as practicable. (Ex. 3 at 17-18).

Inexplicably, the *Easom* court did not cite or refer to Congress's words in 2102(b)(3). It may have, therefore, wrongly assumed that the "such notice as is practicable" language was a creature of the Department of Labor rather than the statute itself. Although the *Easom* court relied on several courts that simply quoted the "no notice" phrase from the natural disaster clause, none of those cases involved a natural disaster defense.

The defendant in *Benson* sought, in its aborted appeal, to have the Eleventh Circuit Court of Appeal adopt the *Easom*'s court's findings, including its invalidation of the Secretary's regulation and broad interpretation of the natural disaster's causation standard. The DOL's amicus brief sets forth the agency's interpretation of its own rule, which is entitled to deference. *Kisor v. Wilkie*,

27

139 S. Ct. 2400, 2424 (2019) (Roberts, J. concurring in part) ("the reasons that a court might be persuaded to adopt an agency's interpretation of its own regulation: The agency thoroughly considered the problem, offered a valid rationale, brought its expertise to bear, and interpreted the regulation in a manner consistent with earlier and later pronouncements."); *Connecticut Gen. Life Ins. Co. v. C.I.R.*, 177 F.3d 136, 144 (3d Cir. 1999) ("Once an agency has adopted regulations interpreting the statute, the agency's consistent interpretation of its own regulation will also be accorded substantial deference" and court "must defer to the [agency's] interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation'"), *quoting Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

The DOL's amicus brief relies, in part, on the authority of the Third Circuit, citing *Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999). (Ex. 3 at 10, 12). The brief explains that "Congress understood the natural disaster exception as applying in a narrow range of circumstances—i.e., where advance notice is generally not practicable." (*Id.* at 19). And that the Secretary sensibly read "due to" as requiring layoffs be the "direct result" of a natural disaster, while recognizing that a layoff indirectly caused by a natural disaster might be covered by the broader unforeseeable business circumstances exception. (*Id.*)

Given this stage of the litigation, in which inferences in favor of the non-movant are required, Defendants have not proved their claim that COVID-19 is a natural disaster that obviates all notice.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny the Trustee's motion.

Dated: December 3, 2021                    Respectfully Submitted,

A001461

/s/ Michael J. Joyce
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

OF COUNSEL :

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*

A001462

# EXHIBIT 1

A001463

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiff, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Debtors. | |

### DECLARATION OF RENÉ S. ROUPINIAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION TO DEFER RULING

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001464

New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*

René S. Roupinian hereby declares the following under penalty of perjury:

1.        I am a partner of Raisner Roupinian LLP, the law firm that represents Plaintiffs

Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated

("Plaintiffs") in the above-captioned action.  I am an attorney in good standing admitted to

practice in the State of New York and before this Court. I make this declaration in support of

Plaintiffs' Opposition to Chapter 7 Trustee's Motion for Summary Judgment and Cross Motion

to Defer Ruling.

2.        On December 10, 2020, the Chapter 7 Trustee (the "Trustee"), on behalf of the

Debtors, filed an Answer to the Complaint generally denying the allegations and asserting several

affirmative defenses, including that the terminations were caused by unforeseeable business

circumstances, that notice was not required because the terminations were caused by a natural

disaster, that Debtors acted in good faith, and that the Plaintiffs' claims are not entitled to first

priority post-petition administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). (D.I. 1, 25).

3.        On April 28, 2021, my office served Plaintiffs' First Set of Interrogatories to

Defendants, Plaintiffs' First Request for Production of Documents to Defendants and a

Certificate of Service on counsel for the Trustee. (Attached hereto as **Exhibit A**).

4.        In early June 2021, I negotiated a stipulated scheduling order with counsel for the

Trustee.  Among the issues we discussed was an agreed informal exchange of information to

2

A001465

narrow the issues of contention and obtain information relevant to the makeup of the putative

class given Defendants had not yet responded to Plaintiffs' First Request for Production of

Documents and First Set of Interrogatories. We also agreed to stay formal discovery. This

agreement is reflected in paragraph 10 of the Stipulated Scheduling Order entered by the Court

on June 10, 2021 (D.I. 31, attached hereto as **Exhibit B**).

5.     The June 10th Stipulated Scheduling Order also provides that "[t]he Parties shall

exchange informal discovery requests by June 21, 2021," (Ex. B, ¶ 11) and "fact discovery[]

shall be completed and closed within [180] days from the filing of the Mediator's report." (Ex.

B, ¶ 22). The Stipulated Scheduling Order also states that "Plaintiffs reserve the right to oppose

the Trustee's Summary Judgment Motion on all grounds including, that the Trustee Motion is

premature and should be filed, if at all, at the conclusion of fact discovery." (Ex. B, ¶ 20).

6.     On June 21, 2021, pursuant to the parties' agreement to informally exchange

documents prior to mediation, I emailed an informal request to Trustee's counsel seeking the

following information (Attached hereto as **Exhibit C**):

1.   Documents which shows that on or about Jan 5, 2020, Debtor was engaged in discussions for an amount of capital that if received would have avoided the GOB sale.

2.   Documents which show any unforeseeable business circumstance that occurred between Jan 5 and Mar 5 that made the GOB sale and sending of WARN notice on March 5 unforeseeable.

3.  Documents which show any COVID related event that took place prior to March 19 that affected Debtor's ability to remain viable.

4.   Documents which show decision(s) that precipitated Debtor's pursuit of GOB sales.

5.   Documents which show the Debtor's options up to March 19 to avoid conducting permanent terminations on or around that date.

6.  Documents which show the infeasibility of Debtor's options that would have avoided permanent terminations on or around March 19.

7.   Documents which show the number of employees Debtor engaged after March to carry out GOB sales or other business, at the eight WARN locations.

8.  Board minutes from January 1, 2020 and thereafter.

3

7. On July 12, 2021, Trustee's Counsel responded (response attached hereto as **Exhibit D**), naming certain public documents and court filings and producing a total of three documents: (1) Art Van Holding Co., Inc. Q1 Board Member Meeting dated February 4, 2020 (heavily redacted), (2) Board Member Minutes dated April 2, 2020 (almost entirely redacted), and (3) Wind Down Plans dated March 23, 2020.

8. On July 27, 2021, the parties attended mediation with the Hon. Kevin Gross but no settlement was reached, as set forth in the Mediator's Final Report filed on October 15, 2021. (D.I. 39). The filing of the Mediator's Report triggered a resumption of fact discovery pursuant to the June 10 Scheduling Order. (Ex. B, ¶ 22).

9. On October 29, 2021, the parties exchanged initial Rule 26(a) disclosures (D.I. 41-42).

10. On October 29, 2021, the Trustee filed a First Amended Answer to the Complaint (D.I. 40) (attached hereto as **Exhibit E**). In his First Amended Answer, the Trustee denies that Debtors were an "employer" under 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and asserts additional new defenses, namely that Plaintiffs are required to arbitrate their WARN claims, that at the time notice was required Art Van was no longer operating as a going concern but was a liquidating fiduciary, and that Debtors acted in good faith in carrying out the terminations. The Trustee also denies that Plaintiffs' WARN claims are entitled to priority under 11 U.S.C. § 503, 11 U.S.C. § 507 and 11 U.S.C. § 726. (Ex. E, ¶¶ 57-59, 66-67, 71).

11. On November 16, 2021, Plaintiffs' counsel contacted Trustee's counsel to request the Trustee serve overdue responses to the first set of discovery requests served on April 28, 2021. On November 17, 2021, Trustee's counsel responded that Defendants would serve responses on or before December 1, 2021. (Attached hereto as **Exhibit F**).

4

12.    On November 17, 2021, my office served Plaintiffs' Second Request for Production of Documents to Defendants and a corresponding Certificate of Service. (Attached hereto as **Exhibit G**). The Second Request for Production of Documents seeks documents relevant to the newly raised affirmative defenses in the Trustee's First Amended Answer to the Complaint, including communications with Defendants' owners and Wells Fargo relating to financing for the company and efforts to liquidate the company.   (*See, e.g.*, Ex. G, Request Nos. 11-17).

13.    On December 1, 2021, two days before Plaintiffs' response to the Trustee's Motion for Summary Judgment was due, Trustee's Counsel propounded written responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents, served April 28, 2021.  (Attached hereto as **Exhibit H**). Trustee's Counsel produced no documents in response to those requests.

14.    Attached are true and correct copies of the documents listed and described above in support of Plaintiffs' Opposition to Chapter 7 Trustee's Motion for Summary Judgment and Cross-Motion to Defer Ruling.

15.    Plaintiffs have not received documents, or been able to take depositions, concerning Defendants' purported liquidation process, the operations of the stores during the pendency of the bankruptcy, Defendants' efforts to obtain financing, and the decision-making process that led to the terminations of Defendants' employees.  These facts directly relate to the Trustee's liquidating fiduciary defense, the unforeseeable business circumstances defense, and the natural disaster defense.  Because of the lack of meaningful discovery on these issues, Plaintiffs are unable to justify their opposition to most of the facts asserted in the Trustee's Motion.

5

A001468

DATED: December 3, 2021        Respectfully submitted,

        By:  /s/ René S. Roupinian
             RENÉ S. ROUPINIAN

A001469

# EXHIBIT A

*to Declaration of René S. Roupinian*

A001470

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiffs, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure Plaintiffs Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated (the "Plaintiffs"), by and through their attorneys, requests that Debtor Art Van Furniture, LLC, et al. (together "Debtors" or "Defendants"):

## DEFINITIONS

Unless indicated otherwise, the following words and phrases are defined and used herein as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001471

1.　　　"Plaintiffs" shall mean Todd Stewart and Jennifer Sawle, the persons named as Plaintiffs in the caption of this action.

2.　　　"Defendants" or "Debtors" shall mean the entities named in the caption of this action, including each of the names under which it conducts business, its respective employees, officers, directors, agents, advisors, consultants, attorneys and representatives and all other persons under its control.

3.　　　"Putative Class Members" shall mean the putative class defined as: Plaintiffs and all persons (i) who worked at, reported to, or received assignments from Defendants' Facilities, (ii) who were terminated without cause beginning on or about March 19, 2020, and within 90 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about March 19, 2020, and (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

4.　　　"Facilities" shall mean the sites where Defendants conducted business operations during the period January 1, 2020 through September 30, 2020 and which fall under the WARN Act's definition of "Facility or Operating Unit" or "Single Site of Employment" (29 C.F.R. § 639.3), including, but not limited to, the facilities located at 6500 E. 14 Mile Road, Warren, Michigan, 14055 Hall Rd. Shelby Township, Michigan and 8748 West Saginaw Highway, Lansing, Michigan.

5.　　　"Affirmative Defense" shall mean a ground for dismissal that Defendants have or intend to assert including in the Answer to the Complaint, dated December 10, 2020 (ECF 25).

6.　　　The "WARN Act" shall mean the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*.

2

A001472

7.     "Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise such as in e-mail form.

8.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or computerized data compilations such as e-mails. A draft or non-identical copy is a separate document within the meaning of this term.

9.      "Identify" with respect to documents:  When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it.

10.     "Identify" with respect to persons:  When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address, and the last known business address of the person.

11.     The terms "Plaintiff" or "Defendants," as well as a party's full or abbreviated name or a pronoun referring to a party shall mean the party and, where applicable, its officers, directors, employee, partners, corporate parent, subsidiaries, or affiliates.

12.     "Person" is defined as any natural person or any business, legal or governmental entity or association.

13.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.     The terms "all" and "each" shall be construed as all and each.

3

A001473

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. The use of the singular form of any word includes the plural and vice-versa.

## INSTRUCTIONS

1. In answering the following Interrogatories, you shall furnish all information that is available to you, including information in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, or other agents.

2. If, in answering the following Interrogatories, you are unable to answer fully, after exercising due diligence to obtain the information to do so, you shall answer said Interrogatory to the fullest extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the portion thereof not fully answered.

3. If, in answering the following Interrogatories, you state in whole or in part "unknown" or otherwise indicate any similar lack of knowledge, you shall state by whom efforts were and are being made to obtain the information requested.

4. If you claim that the attorney-client privilege or any other privilege is applicable to the response to any Interrogatory, you shall state the following: (a) the nature of the allegedly privileged communication, i.e., written or oral, (b) the date of that communication, (c) the parties to that communication, and (d) the subject matter and circumstances of each communication in sufficient detail to allow a ruling on such claim as to that communication.

5. You shall respond completely to each Interrogatory or subdivision thereof, setting forth the question in full followed by each answer.

4

A001474

6.     These Interrogatories are continuing in nature.  If following responses hereto additional responsive information comes into Defendants' possession or control, you are required to provide that information in a supplemental response.

### INTERROGATORIES

1.     Identify every person who participated in any discussions on behalf of Defendant regarding the decision to wind-down operations beginning on March 5, 2020 and terminate the Plaintiffs and the Putative Class Members.

**ANSWER:**


2.      Identify every individual who received the "WARN Act Notice" dated March 5, 2020 from Cathrine Wenger, Senior Counsel, that was distributed to employees (attached as Exhibit B to Plaintiffs' First Request for Production of Documents to Defendants), including a) the date received, b) his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**ANSWER**:


3.     Identify every individual who received the document titled "Termination of Benefits" dated March 19, 2020 (attached as Exhibit C to Plaintiffs' First Request for Production of Documents to Defendants), including a) the date received, b) his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**ANSWER:**

A001475

4.      Identify the total number of employees at each of Debtors' facilities where the March 19, 2020 "Termination of Benefits" (attached as Exhibit C to Plaintiffs' First Request for Production of Documents to Defendants) was distributed.

**<u>ANSWER:</u>**

5.      Identify every individual who received the document titled "Memorandum" to "Employees Affected By Closing of Art Van Furniture Stores located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321" dated March 19, 2020 (attached as Exhibit D to Plaintiffs' First Request for Production of Documents to Defendants), including a) the date received, b)  his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**<u>ANSWER:</u>**


6.      Identify the date that drafting of the following documents began and all persons who participated in the drafting of each document:

(a) Frequently Asked Questions-Store Associates (Art Van, Levin and Wolf Closing), (attached as Exhibit E to Plaintiffs' First Request for Production of Documents to Defendants);

(b) Meeting Instructions to Art Van and Wolf Leaders (WARN Announcement/Talking Points) dated March 5, 2020 (attached as Exhibit F to Plaintiffs' First Request for Production of Documents to Defendants);

6

A001476

(c) "Frequently Asked Questions #1/ Benefits Contacts" (attached as Exhibit G to Plaintiffs' First Request for Production of Documents to Defendants); and

(d) "Important Company Announcement, Memorandum to All Team Members" dated March 5, 2020 (attached as Exhibit A to Plaintiffs' First Request for Production of Documents to Defendants).

**ANSWER:**

7.  For every meeting held (including in person, telephonically or remotely) with the Plaintiffs and Putative Class Members regarding their terminations, state the date of each meeting, identify every attendee at the meeting, and describe all written communications distributed to employees at the meeting.

**ANSWER:**

8.  Identify every employee who signed the WARN Act Notice Receipt Acknowledgment (attached as Exhibit H to Plaintiffs' First Request for Production of Documents to Defendants) and produce all lists of attendees, sign-in sheets, scripts, memos, summaries, and compilations of such lists.

**ANSWER:**

9.  State whether Defendants consulted with legal counsel regarding the drafting of Exhibits A-H to Plaintiffs' First Request for Production of Documents to Defendants and, if the answer is in the affirmative, identify the name of such legal counsel, state the date on which each communication occurred and the participants.

**ANSWER:**

A001477

10.     Identify every address and location where Defendants conducted business operations where the employees did not receive a WARN Notice and state the reason employees there did not receive a WARN Notice.

**ANSWER:**

11.     State whether Plaintiffs and the Putative Class Members were paid all earned bonuses including productivity bonuses and variable compensation following their terminations. If the answer is in the negative, please state or produce documents sufficient to determine, the amount of each Putative Class Member's accrued but unpaid bonuses and variable compensation.

**ANSWER:**

12.     Identify every partner, employee, manager, principal, or executive of Defendants who participated in any discussions leading to the decision to terminate the employment of Plaintiffs and the Putative Class Members.

**ANSWER:**

13.     State in detail why 60 days' notice was not provided to Plaintiffs and the Putative Class Members, and identify at least one officer, director, or manager of Defendants with personal knowledge thereof.

**ANSWER**:

8

A001478

14. Identify each and every person who participated in drafting Exhibits A through H to Plaintiffs' First RTP to Defendants, including the dates of his or her participation.

**ANSWER:**


15. State in detail the "business circumstances that were not reasonably foreseeable at the time notice would have been required" as set forth in Defendants' First Affirmative Defense and identify at least one individual with personal knowledge of these circumstances.

**ANSWER:**


16. State every date Defendants conducted a meeting of its boards of directors during the period March 1, 2019 through June 30, 2020 and, for each date, identify the participants in the meeting.

**ANSWER:**


17. State the name of each member of Defendants' boards of directors during the period March 1, 2019 through June 30, 2020 and, for each person state the term and professional affiliation.

**ANSWER:**


18. Identify each officer, director, managing director, principal, executive, agent, employee, partner, and managing partner of any party, including, but not limited to, Thomas H. Lee Partners, L.P., who participated in the negotiation and/or decision-making of obtaining

A001479

financing and/or working capital for Defendants during the period March 1, 2019 through March 19, 2020.

**ANSWER**:

19.     Identify each and every partner, employee, manager, principal or executive of any party, including, but not limited to, Thomas H. Lee Partners, L.P. who negotiated on behalf of Defendants to enter into contracts with lenders to provide operating capital to the Facilities during the March 1, 2019 through March 19, 2020.

**ANSWER:**

20.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and sources of capital including investors or prospective investors, and lenders and prospective lenders that occurred regarding efforts to obtain financing for Defendants during the period March 1, 2019 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

21.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and any party regarding any transaction to sell all or parts of Defendants' business or assets during the period March 1, 2019 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

A001480

**ANSWER:**

22.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and any party that occurred regarding efforts to obtain new business for Defendants during the period March 1, 2019 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

23.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and any party that occurred regarding efforts to liquidate Defendants during the period January 1, 2020 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

24.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants at which the impact of COVID-19 was discussed January 1, 2020 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

11

A001481

25. Identify (or produce documents sufficient to identify) all capital investments, loans and guarantees made to Defendants from March 1, 2019 through June 30, 2020.

**ANSWER**:


26. State in detail the facts and legal grounds and identify the witnesses and identify (or produce) the documents on which Defendants intend to rely to support each of their affirmative defenses to Plaintiffs' Complaint, as set forth in the Answer dated December 10, 2020 (ECF 25).

**ANSWER**:


27. Identify all documents that Defendants intend to utilize at trial in this matter.

**ANSWER**:


28. Identify all witnesses that Defendants intend to call at trial in this matter.

**ANSWER**:



Dated: April 28, 2021

By:     */s/ René S. Roupinian*
René S. Roupinian, Esq. (P52737)
Jack A. Raisner, Esq.
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

A001482

**THE LAW OFFICES OF JOYCE, LLC**
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

*Attorneys for Plaintiffs and the putative class*

A001483

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiffs, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

## PLAINTIFFS' FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Plaintiffs Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated (the "Plaintiffs"), by and through their undersigned counsel, request that Debtor Art Van Furniture, LLC, et al. (together "Debtors" or "Defendants") respond to the following requests for production within 30 days of the date of service:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001484

## **DEFINITIONS**

Unless indicated otherwise, the following words and phrases are defined and used herein as follows:

1. "Plaintiffs" shall mean Todd Stewart and Jennifer Sawle, the persons named as Plaintiffs in the caption of this action.

2. "Defendants" or "Debtors" shall mean the entities named in the caption of this action, including each of the names under which it conducts business, its respective employees, officers, directors, agents, advisors, consultants, attorneys and representatives and all other persons under its control.

3. "Putative Class Members" shall mean the putative class defined as: Plaintiffs and all persons (i) who worked at, reported to, or received assignments from Defendants' Facilities, (ii) who were terminated without cause beginning on or about March 19, 2020, and within 90 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about March 19, 2020, and (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

4. "Facilities" shall mean the sites where Defendants conducted business operations during the period January 1, 2020 through September 30, 2020 and which fall under the WARN Act's definition of "Facility or Operating Unit" or "Single Site of Employment" (29 C.F.R. § 639.3), including, but not limited to, the facilities located at 6500 E. 14 Mile Road, Warren, Michigan, 14055 Hall Rd. Shelby Township, Michigan and 8748 West Saginaw Highway, Lansing, Michigan.

5. "Affirmative Defense" shall mean a ground for dismissal that Defendants have or intend to assert including in their Answer to the Complaint, dated December 10, 2020 (ECF 25).

2

A001485

6. The "WARN Act" shall mean the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*

7. "Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise such as in e-mail form.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or computerized data compilations such as e-mails. A draft or non-identical copy is a separate document within the meaning of this term.

9. "Identify" with respect to documents: When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it.

10. "Identify" with respect to persons: When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address, and the last known business address of the person.

11. The terms "Plaintiff" or "Defendants," as well as a party's full or abbreviated name or a pronoun referring to a party shall mean the party and, where applicable, its officers, directors, employee, partners, corporate parent, subsidiaries, or affiliates.

12. "Person" is defined as any natural person or any business, legal or governmental entity or association.

13. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14. The terms "all" and "each" shall be construed as all and each.

3

A001486

15.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     The use of the singular form of any word includes the plural and vice-versa.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.     With respect to each document produced, Plaintiffs request that Defendants specify the Request(s) to which the document is responsive.

2.     Pursuant to Fed. R. Civ. P. 34, each document shall be produced as it is kept in the usual course of business and shall be organized and labeled with the categories in these requests.

3.     At or before the filing of the complaint in this case, Defendants were under a duty to preserve documents and ESI related to this matter. Accordingly, Plaintiffs expect that Defendants and its counsel will prevent the destruction or alteration of any documents requested herein by the operation of any electronic information system (routine or otherwise) and hereby put Defendants on notice that any destruction or alteration of such documents, or any action that makes such documents more difficult or expensive to access and use, without completing a meet and confer process with Plaintiffs' counsel regarding such action, will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f). If Defendants does not believe that it can reasonably comply with this instruction, Plaintiff requests that Defendants contact Plaintiffs' counsel in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

4

4.      Unless otherwise indicated, Plaintiffs request that Defendants produce responsive documents pursuant to the agreements reached by the parties after their meet and confer discussions about the preferred format for such production.  Plaintiffs request that Defendants not unilaterally select an electronic format for production.

5.      Alternatively, if Defendants do not wish to meet and confer about the format for production of documents, Plaintiffs request such documents as follows:

a.      Documents should be provided on DVD, CD or external hard drive. The volume of the ESI will determine whether documents are provided on CD, DVD or hard drives.

b.      Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

c.      Defendants may compress and/or encrypt the production archive for delivery purposes but should provide passwords for any compressed archives under separate cover, along with a description of any software needed to decrypt the archive.

d.      A cover letter or fact sheet should be included describing in as much detail as practicable the contents of the collection.

e.      Documents created or stored electronically should not be produced in hard copy.  All ESI should be produced with the metadata requested below.

f.      All documents should be produced as they are ordinarily maintained, for example, organized by custodian or source.

g.      All productions should be free of computer viruses.

h.      All deliverables should include a metadata load file that is a .DAT or .TXT format with standard Concordance delimiters, and contain all fields outlined below.  Image load files should be provided in .OPT format.

A001488

i. Documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example, with a placeholder.

j. All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

k. Paper documents should be scanned and processed to TIFF files. If a document is available to Defendants both in paper and electronic form, Plaintiffs request that Defendants produce the requested document in electronic form, as described herein.

l. For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

6

A001489

m. Documents originating in spreadsheet or presentation programs such as Excel or Powerpoint should be produced in native form. For deliverables containing native files such as Excel and PowerPoint files, a native file path/link should be included in the metadata load file. Additionally, a Bates-stamped TIFF placeholder should be included in the production and reflected in the image load file. The number of native files per folder should be limited to 1,000 files.

n. In the event that responses to these requests contain ESI from proprietary or non-proprietary databases, the parties will meet and confer to discuss the fields contained in the database and the best means of producing responsive information from them, such as running reports or queries. In the event that ESI will be produced directly from a database, the ESI should be produced in a comma delimited file or in Excel format, with all formulae and records of irregular or manual manipulation of data reflected. If proprietary software is required to access or use documents in their native format, please supply such software. A written list of all database fields and a reasonable description for each field, or a "database dictionary" should be included.

o. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

p. For deliverables containing multi-media files, the following production format should be used:

i. Audio Data Files: Audio data files should be produced in audio Windows Media Audio ("WMA") format or "MP3" format.

7

A001490

ii.      Video Files: Video files should be produced in Audio/Video Interleaved ("AVI") format.

iii.      Image Files: If providing color images, files should be produced in "JPEG/JPG" format with a resolution of 150 to 300 DPI.

q.      Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
| --- | --- | --- |
| BEGDOC | Starting bates | Hardcopy, edoc, email and attachment |
| ENDDOC | Ending bates | Hardcopy, edoc, email and attachment |
| PARENTID | First bates number of parent email. (Populate in child(ren) record(s) only) | Emails and attachments (populated through processing) |
| FAMLYRNG OR ATTACHRNG | Family (Range of bates related documents (i.e. email & attachment) - this field will be populated for all records in the family.) | Hard copy, edoc, emails and attachments (populated through processing) |
| BEGATTACHID | First BATES of attachment(s) | Hard copy, edoc, emails and attachments (populated through processing) |
| ENDATTACHID | Last BATES of family (populate on families only) | Hard copy, edoc, emails and attachments (populated through processing) |
| CUSTODIAN | Person from whom file was obtained | Hardcopy (if coded), edoc, email and attachment (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record Type – will be either "email", "attachment", "edoc" or "hardcopy" | |
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |

8

A001491

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| CC | CC field - In the event of emails | Emails (populated through processing) |
| BCC | Bcc field - in the event of emails | Emails (populated through processing) |
| SUBJECT | Subject | Emails (populated through processing) |
| DOCTITLE | Document Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc or attachment (populated through processing) |
| DOCDATE | Document Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email and Attachments |
| DATESENT | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| TIMESENT | Date sent 00:00:00 AM/PM | Emails (populated through processing) |
| DATECREATED | Date first created, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| DATESVD | Date last saved/modified, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| TIMESVD | Time saved 00:00:00 AM/PM | (populated through processing) |
| DATERCVD | Date received/accessed, format MM/DD/YYYY | Emails (populated through processing) |
| TIMERCVD | Time received 00:00:00 AM/PM | (populated through processing) |
| PAGECOUNT | Document page count | Edoc or attachment (populated through processing) |
| ATTILE | File name/Attachment Name | Electronic files and/or attachments (populated through processing) |
| APPLICAT | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files and/or emails, attachments (populated through processing) |
| FOLDERID OR ORIGFOLDERPATH OR FILEPATH | File path/folder structure of original native file as it existed at the time of collection. i.e. Path of email in mailbox (populate for email attachments also); Filepath of edocs or scanned docs (if requested) | Electronic files and/or emails, attachments (populated through processing) |

9

A001492

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **DOCLINK** or **NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files and/or emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments or emails, this will enable us to search by document type. Sample contents: *PST, MSG, PDF, DOC, PPT, HTM,* etc. etc. | Electronic files and/or emails, attachments (populated through processing) |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the document | For Hard Copy docs (if coded) or electronic files and or attachments (populated through processing) |
| **HASH** | Hash value for de-dupe | Electronic files and/or attachments (populated through processing) |
| **HEADER** | Contains all the routing information from the header section of an email message | Emails (populated through processing) |
| **TEXT** | Text of email in the event of emails; text of attachment in the event of attachments; We recognize that some attachments will not have text that can be properly rendered into text (JPGs, GIFs, Flash Files, etc.), but for those flat files such as PDFs which do not have extractable text, we would like them OCR'd, and the contents placed in the TEXT field. | For Hardcopy, electronic files, emails and attachments. |

6.     With respect to each request, Defendants are requested to provide all documents in its possession, custody, or control that are known to Defendants or that Defendants can locate or discover through reasonably diligent efforts.

7.     If Defendants cannot respond or produce documents in response to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons

A001493

for Defendants' inability to respond or produce documents in response to the remainder of the Requests.

8.      If, to Defendants' knowledge, documents responsive to one or more requests were never in Defendants' possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

9.      If any responsive document was formerly in Defendants' possession, custody, or control but has been eliminated from Defendants' possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

    a.   The basis for withholding such document;

    b.   A generic description of the document being withheld;

    c.   The date the information contained in the document was learned or the document created;

    d.   The identity of the individual(s) who learned the information or authored the document;

    e.   The date the document was transmitted or otherwise made available to anyone; and

    f.   The specific Request(s) to which the withheld document relates.

10.     If requested documents are maintained in a file, folder, or other container, please produce the file, folder, or other container, or a complete copy of same, with the documents.  For ESI that originates in a digital folder structure, please produce the folder names and relationships as metadata.

11.     The scope of your search for ESI shall include all forms of ESI collection, preservation, transmission, communication, and storage, including:

A001494

a. All ESI generated and maintained in the ordinary course of business, including ESI stored on mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored;

b. Distributed data or removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including email hosted by Internet service providers, handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, and flash memory drives;

c. Forensic copy or backup ESI, including archive and backup data tapes and discs;

d. Network ESI, including voice mail systems, email servers, ISP servers, network servers, cloud servers and fax servers;

e. Legacy ESI, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f. Metadata, i.e., information regarding a particular data set which describes how, when and by whom it was collected, created, accessed and modified and how it is formatted.

12.     Unless otherwise indicated in writing, the failure to produce any documents in response to any request herein means that such documents do not exist, or are not in Defendants' possession, custody, or control, or the possession, custody, or control of Defendants' agents or anybody acting on Defendants' behalf.

13.     To the extent documents responsive to these requests have already been produced by Defendants, state the unique identifier (e.g., MD 5 Hash value) or Bates number for each responsive document that was previously produced.

## DOCUMENT REQUESTS

1.     Produce all documents that relate to or reflect Defendants' responses to Plaintiffs' First Set of Interrogatories to Defendants.

2.     Produce all documents and/or communications reflecting communications that relate to this action.

A001495

3. Produce all documents and/or communication sent and received by every director, board member and officer of Defendants concerning the decision to terminate the employment of Plaintiffs and Putative Class Members.

4. Produce documents that reflect the number of employees who worked at each of the Facilities during the period between October 1, 2019 through June 30, 2020, including their beginning-and-end dates of employment.

5. Produce documents that reflect the number of employees (including part-time and full-time) who worked at each of Defendants' Facilities during the period between October 1, 2019 through June 30, 2020, including their beginning-and-end dates of employment.

6. Produce documents that reflect the address of each of Defendants' Facilities where employees received a termination notice dated March 19, 2020, and the names of employees at each store who received the notice.

7. Produce documents that reflect the address of each of Defendants' Facilities where employees received the document dated March 5, 2020, titled "Important Company Announcement", addressed to All Team Members from the Executive Team (attached hereto as Exhibit A), and the names of employees at each store who received the notice.

8. Produce documents that reflect the address of each of Defendants' Facilities where employees received a WARN notice dated March 19, 2020, and the names of employees at each store who received the notice.

9. Produce documents that reflect the address of each of Defendants' Facilities where employees received a copy of the document dated March 5, 2020, titled "WARN Act Notice," from Cathrine Wenger, Senior Counsel, that was distributed to employees (attached hereto as Exhibit B), and the names of employees at each store who received the notice.

13

10.     Produce all documents and/or communications reflecting the drafting of the documents dated March 5, 2020, titled "WARN Act Notice," from Cathrine Wenger, Senior Counsel, that was distributed to employees in Michigan and Illinois (attached hereto as Exhibit B).

11.     Produce documents that reflect Plaintiffs and the Putative Class Members' employment benefits, including health insurance (medical, dental and vision), supplemental insurance, life insurance, long and short-term disability benefits, time-off benefits, retirement savings, health and welfare benefits, including 401k plans, company vehicle, fuel, and education reimbursement.

12.     Produce all documents and/or communications concerning every in-person meeting held on or before March 5, 2020 at which Defendant's managers, executives, directors, board members or supervisors met with Defendant's employees regarding their terminations, including all lists of attendees, sign-in sheets, scripts, memos, handouts and talking points for such meeting(s).

13.     Produce all documents and/or communications reflecting the drafting of the document "Termination of Benefits" dated March 19, 2020 (attached hereto as Exhibit C).

14.     Produce all documents and/or communications reflecting the drafting of the document titled "Memorandum" to "Employees Affected By Closing of Art Van Furniture Stores located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321" dated March 19, 2020 (attached hereto as Exhibit D).

14

A001497

15.　Produce all documents and/or communications reflecting the drafting of the document "Frequently Asked Questions-Store Associates (Art Van, Levin and Wolf Closing)" (attached hereto as Exhibit E)

16.　Produce all documents and/or communications reflecting the drafting of the document titled "Meeting Instructions," dated March 5, 2020, addressed to "Art Van and Wolf Leaders" from Michelle Dolski & Irene Fostyk (attached hereto as Exhibit F).

17.　Produce all documents and/or communications reflecting the drafting of the document titled "Frequently Asked Questions #1/ Benefits Contacts" (attached hereto as Exhibit G).

18.　Produce all documents reflecting every employee who signed the WARN Act Notice Receipt Acknowledgment, including lists of attendees, sign-in sheets, scripts, memos, summaries, and compilations of such lists (attached hereto as Exhibit H).

19.　Produce all minutes, records, and resolutions of Defendants' Board of Directors meetings during the period March 1, 2019 through June 30, 2020, including submissions to the Boards of Directors and committees of the Boards of Directors at, or in anticipation of, such meetings.

20.　Produce all documents and/or communications reflecting efforts to seek additional business which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

21.　Produce all documents and/or communications concerning Defendants' financing during the period. March 1, 2019 through June 30, 2020.

22.　Produce all documents and/or communications during the period March 1, 2019 through June 30, 2020 reflecting proposals for financing, loans, capital investments, loan

15

guarantees and capital infusions from any source, including but not limited to Thomas H. Lee Partners, L.P., to the Debtors to fund Debtors' operations.

23.     Produce all documents and/or communications during the period March 1, 2019 through June 30, 2020 reflecting Debtors' default of its revolving credit facility with Wells Fargo, including all communications regarding Wells Fargo's agreement to a forbearance until March 28, 2020.

24.     Produce all documents and communications during the period March 1, 2019 through March 28, 2020 reflecting Wells Fargo assuming control of Defendants' available cash.

25.     Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting all agreements between Defendants and Wells Fargo that Defendants would immediately begin preparing for a "going-out-of-business" liquidation if was unable to raise capital by February 28, 2020.

26.     Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting the terms of all outstanding loans, credit lines, and other indebtedness between Defendants and its lenders that were in existence as of February 28, 2020.

27.     Produce all documents and/or communications between Defendants and its lenders during the period March 1, 2019 through September 30, 2020 referencing the maturity date of all outstanding loans, credit lines, and other indebtedness by Defendant that were in existence as of March 19, 2020.

28.     Produce all documents and/or communications between Defendants and its lenders during the period March 1, 2019 through March 19, 2020 that refer or relate to all forbearance agreements between Defendants and its lenders that were in effect during that period.

16

29.     Produce all documents and/or communications reflecting efforts to seek capital or financing which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

30.     Produce all documents and/or communications reflecting efforts to renegotiate leases or reduce expenses which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

31.     Produce all documents and/or communications concerning Defendants' seeking of capital during the period. March 1, 2019 through June 30, 2020.

32.     Produce all documents and/or communications during the period March 1, 2019 through June 30, 2020 reflecting proposals for financing, loans, capital investments, loan guarantees and capital infusions from any source, including but not limited to Thomas H. Lee Partners, L.P., to the Debtors to fund Debtors' operations.

33.     Produce all documents and/or communications reflecting efforts to seek capital or financing which would have enabled Defendant to avoid the terminations of Plaintiffs and Putative Class Members.

34.     Produce all documents and/or communications concerning a sale of all or parts of Defendants' company or operational assets during the period March 1, 2019 through June 30, 2020.

35.     Produce all documents and/or communications that reflect any agreement by Robert Levin to purchase Levin Furniture and select Wolf stores pending court approval.

36.     Produce all documents and/or communications from the period March 1, 2019 through June 30, 2020 concerning any proposed sale of Defendants' assets to any third-party entity.

17

37.     Produce all documents and/or communications concerning Defendants' efforts to renegotiate leases or reduce expenses during the period March 1, 2019 through March 31, 2020.

38.     Produce all documents and/or communications concerning Defendants' decision to file for bankruptcy during the period March 1, 2019 through March 8, 2020.

39.     Produce all documents and/or communications concerning Defendants' liquidation, including its winddown and cessation of operations during the period December 1, 2019 through September 30, 2020.

40.     Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting all agreements between Defendants and Wells Fargo that Defendants would immediately begin preparing for a "going-out-of-business" liquidation if was unable to raise capital by February 28, 2020.

41.     Produce all documents and/or communications concerning any change in the terms or conditions of the employment of Defendants' employees during the period January 1, 2020 through September 30, 2020.

42.     Produce all documents and/or communications concerning the consideration of COVID-19 as it related to Defendants during the period January 1, 2020 through September 30, 2020.

43.     Produce all documents and/or communications that refer to Defendants' First Affirmative Defense in its Answer that the terminations were caused by "business circumstances that were not reasonably foreseeable as of the time that notice would have been required" and that "AVF and LEVIN gave as much notice as was practicable along with a brief statement of the basis for reducing the notification period pursuant to 29 U.S.C. § 2102(b)(3)." (ECF 25)

18

A001501

44.     Produce all documents and/or communications that refer to Defendants' Second Affirmative Defense in its Answer that the mass layoffs or plant closings were caused by a natural disaster and that "AVF and LEVIN gave as much notice as was practicable along with a brief statement of the basis for reducing the notification period pursuant to 29 U.S.C. § 2102(b)(3)." (ECF 25)

45.     Produce all written opinions by Defendants' legal counsel to Defendants' owner(s), officers and/or directors concerning Defendants' legal obligations to its employees pursuant to the WARN Act.

46.     Produce all documents and/or communications that Defendants will rely upon to defend this action.

Dated: April 28, 2021

*/s/ René S. Roupinian*
René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**THE LAW OFFICES OF JOYCE, LLC**
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

*Attorneys for Plaintiffs and the putative class*

A001502

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC., *et al.,*[1]<br><br>        Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>ART VAN FURNITURE, LLC, et al.,<br><br>        Defendants. | Adv. Pro. No. 20-50548 (CSS) |

## CERTIFICATE OF SERVICE

      I, Jenny Hoxha, under penalty of perjury, certify the following as true and correct:  I am not a party to this action, employed by Raisner Roupinian LLP, and I am over 18 years of age. I hereby certify that I caused true and correct copies of *Plaintiffs' First Set of Interrogatories to Defendants, Plaintiffs' First Request for Production of Documents to Defendants, Exhibits A-H* and the corresponding *Certificate of Service* to be served upon the parties listed below via email as listed below:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001503

**Service List**:

Bradford J. Sandler
Colin R. Robinson
Peter J. Keane
Beth Levine
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
crobinson@pszjlaw.com
pkeane@pszjlaw.com
blevine@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee for Debtors*

Dated:  April 28, 2021

/s/      *Jenny Hoxha*
        Jenny Hoxha

# EXHIBIT B

*to Declaration of René S. Roupinian*

A001505

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.*,[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiff, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

## PRETRIAL SCHEDULING ORDER

Todd Stewart and Jennifer Sawle (the "Plaintiffs"), together with Alfred T. Giuliano, the

Chapter 7 Trustee for Debtors (the "Trustee") (collectively "the Parties"), by and through their

counsel, hereby submit this Pretrial Scheduling Order, and, in support thereof, aver the following:

1.      On March 8, 2020, the Debtors each filed a Voluntary Petition for Relief under

Chapter 11 of the Bankruptcy Code.  (Bankr. No. 20-10553, D.I. 2).

2.      On March 10, 2020, the Debtors' cases were consolidated for joint administration.

(Bankr. No. 20-10553, D.I. 71).

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463) (collectively, the "Debtors").

A001506

3.      On March 23, 2020, Plaintiffs commenced an adversary proceeding against the above-captioned debtor-defendants ("Defendants"), which adversary proceeding is docketed as No. 20-50548 (CSS) (the "Adversary Proceeding") (Adv. D.I. 1).

4.      The Complaint alleges that the Defendants violated the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq*. (the "WARN Act") and seeks relief on behalf of a putative class of present or former employees of the Defendants (the "Complaint").

5.      On April 7, 2020, the bankruptcy case was converted to Chapter 7 and the Trustee was appointed. (Bankr. No. 20-10553, D.I. 263, 264).

6.      Between March and December, the Parties agreed to extend the deadline for Defendants to respond to the Complaint and utilized the extensions to work cooperatively and diligently in exchanging information relevant to the WARN claim.

7.      On December 10, 2020, the Debtors filed an Answer to the Complaint. (Adv. D.I. 25).

8.      On April 28, 2021, Plaintiffs served *Plaintiffs' First Set of Interrogatories* and *Plaintiffs' First Request for Production of Documents* on Defendants (collectively, the "Plaintiffs' Discovery Requests").

9.      On May 26, 2021, the Court entered an Order Assigning Adversary Proceeding to Mediation setting July 26, 2021, as the deadline for submission of a Mediation Report. (Adv. D.I. 26).

10.     The Parties have conferred and agreed, subject to Court approval, to stay litigation and proceed to mediation with the exchange of limited informal discovery prior to mediation so long as it is without prejudice to the Trustee's right to move for summary judgment and

2

A001507

Plaintiffs' right to oppose summary judgment as premature absent full discovery, should the Parties not reach a mediated settlement.

To promote the efficient and expeditious disposition of adversary proceedings, the following schedule shall apply to the above-captioned adversary proceeding.

**IT IS HEREBY ORDERED** that:

11.    The Parties shall exchange informal discovery requests by June 21, 2021.

12.    The Parties have conferred and agree to Ret. Judge Kevin Gross as Mediator (the "Mediator").

13.    Subject to the Mediator's schedule, the Parties shall complete mediation by August 31, 2021.

14.    All formal discovery and litigation shall be stayed during the mediation process, including without limitation, the Trustee's obligation to respond to the Plaintiffs' Discovery Requests.

15.    If the Parties are unable to reach a consensual resolution of the Adversary Proceeding the following deadlines shall apply:

16.    Unless otherwise agreed to by the parties or ordered by the Court, Plaintiffs and the Trustee shall exchange their Initial Disclosures as detailed in Bankruptcy Rule 7026(a)(1) within  fourteen (14) days of the filing of the Mediator's Report stating a settlement has not been reached ("Mediator's Report").

17.    Unless otherwise agreed to by the parties or ordered by the Court, all amended pleadings shall be filed within fourteen (14) days of the filing of the Mediator's Report.

18.    The Trustee may file and serve a motion for summary judgment (the "Trustee Summary Judgment Motion"), if any, within thirty (30) days of the filing of the Mediator's

DOCS_DE:234840.1 05233/003

A001508

Report. To the extent the Trustee Summary Judgment Motion is filed, and unless the Court

orders otherwise, supporting memoranda shall be filed with the Trustee Summary Judgment

Motion at the time of its initial presentation.  With respect to the Trustee Summary Judgment

Motion, a responding memorandum shall be filed within 21 days following the filing of the

Trustee Summary Judgment Motion, and a reply memorandum, if any, shall be filed 14 days

thereafter.

19.     Unless otherwise ordered by the Court, the length of all memoranda and briefs

filed in connection with any substantive motion (whether the Trustee Summary Judgment

Motion, Class Certification Motion (as defined below) or otherwise) shall be governed by Rule

7007-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

20.     Plaintiffs reserve the right to oppose the Trustee Summary Judgment Motion on

all grounds including, that the Trustee Motion is premature and should be filed, if at all, at the

conclusion of fact discovery.

21.     Plaintiffs shall file a Motion for Class Certification (the "Class Certification

Motion"), if any, no later than  thirty (30) days from the filing of the Mediator's Report. Unless

otherwise ordered by the Court, a responding memorandum shall be filed within 21 days

following the filing of the Class Certification Motion, if any, and a reply memorandum, if any,

shall be filed 14 days thereafter.

22.     Unless otherwise agreed by the parties and approved by the Court, to the extent

applicable, all fact discovery, shall be completed and closed within one-hundred and eighty (180)

days from the filing of the Mediator's Report. Unless otherwise agreed by the parties or Order by

Court, all discovery of electronic documents shall proceed in accordance with Local Rule 7026-

3.

A001509

23.     To the extent applicable, the parties shall exchange expert reports regarding any issue on which he, she, it or they bear the burden of proof within two-hundred and forty (240) days of the filing of the Mediator's Report, and the other party shall have thirty (30) days thereafter to file a rebuttal report.  Depositions of experts shall be completed within thirty (30) days from the date of submission of the last rebuttal report ("Final Expert Report Submission Date"), after which time all expert discovery shall be completed and closed.

24.     To the extent applicable, the parties may file dispositive motions within thirty (30) days after the Final Expert Report Submission Date.  To the extent any dispositive motions are filed, and unless the Court orders otherwise, supporting memoranda shall be filed with any dispositive motion at the time of its initial presentation,  responding memoranda shall be filed within 21 days following the filing of a dispositive motion, and reply memoranda, if any, shall be filed 14 days thereafter.

25.     The parties shall comply with the General Order Governing Pre-Trial Procedures in Adversary Proceedings Set for Trial before Judge Christopher S. Sontchi as may be amended or restated from time to time. The parties shall file, no later than three (3) business days prior to the earlier of the date set for (i) pre -trial conference (if one is scheduled) or (ii) trial, their Joint Pre-Trial Memorandum approved by all counsel and shall contemporaneously deliver two (2) copies thereof to Judge Christopher S. Sontchi's chambers.

26.     The above dates may be modified by consent of the parties without need for further order of this Court or by Order of this Court.

27.      The parties will contact the Bankruptcy Court for a date for a status conference, which status conference shall be for the purpose of (i) setting a date by which pre-trial disclosures under Bankruptcy Rule 7026(a)(3) shall be served, (ii) scheduling a pre-trial

5

A001510

conference to schedule a date and time of trial, and (iii) addressing such other issues as the

Bankruptcy Court or the parties deem necessary and appropriate.

        28.     The Plaintiffs shall serve this Pretrial Scheduling Order on the Trustee's counsel

within 5 business days after the entry of this Pretrial Scheduling Order.

**Dated: June 10th, 2021**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

A001511

# EXHIBIT C

*to Declaration of René S. Roupinian*

A001512

| From: | Rene Roupinian |
|---|---|
| To: | Erin Gray; Jack Raisner |
| Cc: | Bradford J. Sandler; Beth Levine; Alfred Giuliano; Gail Lin |
| Subject: | RE: Stewart v. Art Van; Subject to FRE 408 |
| Date: | Monday, June 21, 2021 6:01:16 PM |

Erin,

Thank you for your email.

Similarly, following is our informal request for documents in advance of the scheduled mediation.

1.  Documents which shows that on or about Jan 5, 2020, Debtor was engaged in discussions for an amount of capital that if received would have avoided the GOB sale.
2.  Documents which show any unforeseeable business circumstance that occurred between Jan 5 and Mar 5 that made the GOB sale and sending of WARN notice on March 5 unforeseeable.
3.  Documents which show any COVID related event that took place prior to March 19 that affected Debtor's ability to remain viable.
4.  Documents which show decision(s) that precipitated Debtor's pursuit of GOB sales.
5.  Documents which show the Debtor's options up to March 19 to avoid conducting permanent terminations on or around that date.
6.  Documents which show the infeasibility of Debtor's options that would have avoided permanent terminations on or around March 19.
7.  Documents which show the number of employees Debtor engaged after March to carry out GOB sales or other business, at the eight WARN locations.
8.  Board minutes from January 1, 2020 and thereafter.

Please note we are working to create a putative damages model to share in advance of the mediation so the parties are, ideally, apples to apples. To the extent we do not have certain information or employee data to determine the putative class composition and damages, we reserve the right to supplement this request. Thank you.

Best,

René S. Roupinian | Partner
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
T & F 212-221-1747
rsr@raisnerroupinian.com
www.raisnerroupinian.com
www.warnlawyers.com


-----Original Message-----
From: Erin Gray <egray@pszjlaw.com>
Sent: Monday, June 21, 2021 8:18 PM
To: Jack Raisner <jar@raisnerroupinian.com>; Rene Roupinian <rsr@raisnerroupinian.com>
Cc: Bradford J. Sandler <bsandler@pszjlaw.com>; Beth Levine <blevine@pszjlaw.com>; Alfred Giuliano <atgiuliano@giulianomiller.com>
Subject: Stewart v. Art Van

Dear Jack and Rene:

Pursuant to the parties agreed scheduling order, below please find the informal discovery that the Trustee would like to have in advance of the scheduled mediation.

As to each plaintiff, please provide the following:

1.  A copy of the Warn Act Notice that each plaintiff received;

2.  Copies of all applications (including the initial application, subsequent applications and biweekly or periodic certifications) each plaintiff made, if any, for unemployment insurance benefits ("UIB") on or after March 19, 2020.

3.  With respect to UIB applied for and/or received after March 19, 2020, documents evidencing the amount and duration of UIB each plaintiff received from March 19, 2020 to present.

4.  Documents evidencing efforts by each plaintiff to obtain employment from March 19, 2020 to present.

5.  Documents evidencing any stimulus payments received by each plaintiff.

Sincerely,

Erin Elizabeth Gray

A001514

# EXHIBIT D

*to Declaration of René S. Roupinian*

A001515

| | |
|---|---|
| **From:** | Gail Lin |
| **To:** | Gail Lin |
| **Subject:** | FW: In re Art Van: Warn Act Litigation Informal Discovery Requests |
| **Date:** | Thursday, December 2, 2021 9:07:52 AM |
| **Attachments:** | 1. AVF Holding Company Fiscal 2020 Q1 Board Member Update Final_REDACTED....pdf |
| | AVF Holding Company Inc Board Minutes_04.02.20_REDACTED.PDF |
| | Art Van Wind Down Plan-CFs 3.23.20 FINALv2.pdf |

**From:** Erin Gray <egray@pszjlaw.com>
**Sent:** Monday, July 12, 2021 7:50 PM
**To:** Jack Raisner <jar@raisnerroupinian.com>; Rene Roupinian <rsr@raisnerroupinian.com>
**Cc:** Beth Levine <blevine@pszjlaw.com>; Bradford J. Sandler <bsandler@pszjlaw.com>;
'atgiuliano@giulianomiller.com' <atgiuliano@giulianomiller.com>
**Subject:** In re Art Van: Warn Act Litigation Informal Discovery Requests

Dear Jack and Rene:

Below (and attached) please find the Trustee's responses to your informal discovery requests. The highlighted items are attached to this email. The others are all either pleadings, transcripts or executive orders/proclamations related to COVID that are publically available.

Beth will get back to you on your email of today.

Sincerely,

Erin Gray

1. **Documents which shows that on or about Jan 5, 2020, Debtor was engaged in discussions for an amount of capital that if received would have avoided the GOB sale.**

The Trustee objects to this request on the grounds that it is not reasonably calculated to lead to discoverable information.

2. **Documents which show any unforeseeable business circumstance that occurred between Jan 5 and Mar 5 that made the GOB sale and sending of WARN notice on March 5 unforeseeable.**

It is not the Trustee's position that sending the WARN ACT notice on March 5 (which contemplated a May 5 shut down) and the GOB Sales that were to take place prior to the May 5 shutdown were unforeseeable. It is the Trustee's position that the shutdown of the country, the closing of nonessential businesses and the shelter-in-place orders due to COVID-19 that occurred between March 5 and March 19 was an unforeseeable business circumstance (and a natural disaster) that caused the layoffs on March 20, 2020 after the Company issued the March 19, 2020 Revised WARN Act Notice.

3. **Documents which show any COVID related event that took place prior to March 19 that**

A001516

affected Debtor's ability to remain viable.

The Trustee objects to this request on the grounds that the terms "remain viable" are ambiguous. Notwithstanding the objection and without waiving it, please refer to the following:

> Transcript of Hearing on March 12, 2020
> Transcript of Hearing on March 19, 2020
> Transcript of Hearing on April 6, 2020
> Declaration of David Lane [Doc 12]
> Interim Cash Collateral Order [Doc. 93]
> Amended Motion to Convert [Doc. 252]
> Executive Order 2020-4 issued 3/10/2020 (Michigan)
> Executive Order 2020-5 issued 3/12/2020 (Michigan)
> Presidential Proclamation declaring National Emergency issued 3/13/2020
> Executive Order 2020-6, 2020-7 issued 3/13/2020 (Michigan)
> Bankruptcy Court for the District of Delaware First General Order issued 3/13/2020
> Executive Order 2020-9 issued 3/16/2020 (Michigan)
> Gov. Tom Wolf, Executive Order, dated March 19, 2020
> (https://www.governor.pa.gov/wpcontent/ uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf)

4. **Documents which show decision(s) that precipitated Debtor's pursuit of GOB sales.**

Please see responses to request numbers 1, 2, 3 and 8.

5. **Documents which show the Debtor's options up to March 19 to avoid conducting permanent terminations on or around that date.**

Due to COVID-19, the Debtors had no options up to March 19 to avoid conducting permanent terminations on or around that date.

6. **Documents which show the infeasibility of Debtor's options that would have avoided permanent terminations on or around March 19.**

The Trustee objects to the term "infeasibility". Notwithstanding the objection and without waiving it, please see answer to request number 5.

7. **Documents which show the number of employees Debtor engaged after March to carry out GOB sales or other business, at the eight WARN locations.**

The Trustee did not conduct any GOB sales, nor were any GOB sales after March prior to the Trustee's appointment; however, the below documents describe generally the employees who were (or would be) retained after March in connection with the wind-down. If you need additional information, we can ask the Trustee for payment records to the employees that he retained, but you will need to narrow your time frame, please.

<mark>Art Van Wind Down Planning Update dated March 23, 2020.</mark>

Trustee's Motion for Authority to Operate Business [Docket 350] and Order [713].

8. **Board minutes from January 1, 2020 and thereafter.**

Please see attached. We are currently looking for additional board minutes but have been unable to locate any to date.

February 4, 2020 Board Meeting: <mark>First Quarter 2020 Board Fiscal Update</mark>

April 2, 2020 Board Meeting: <mark>Board Minutes</mark>

**Erin Elizabeth Gray**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Mobile: 843.693.8141
egray@pszjlaw.com



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

# EXHIBIT E

*to Declaration of René S. Roupinian*

A001519

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| | Adv. Proc. No. 20-50548 (CSS) |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

### CHAPTER 7 TRUSTEE'S FIRST AMENDED ANSWER TO COMPLAINT FOR VIOLATION OF WARN ACT AND AFFIRMATIVE DEFENSES

For his amended answer to the *Class Action Adversary Proceeding Complaint for Violation of the WARN Act, 29 U.S.C. §2101, et seq* (the "Complaint") filed by Plaintiffs Todd Stewart and Jennifer Sawle (purportedly on behalf of themselves and all others similarly situated), Alfred T. Giuliano (the "Trustee"), on behalf of the chapter 7 bankruptcy estates of Art Van Furniture, LLC, AVF Holding Company, Inc., AVCE, LLC, AVF Holdings I, LLC, AVF Holdings II, LLC, AVF Parent, LLC, Levin Parent, LLC, Art Van Furniture of Canada, LLC, AV Pure Sleep Franchising, LLC, AVF Franchising, LLC, LF Trucking, Inc., Sam Levin, Inc.,

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

and Comfort Mattress LLC (collectively, the "Debtors" or the "Defendants"), states as follows[2]:

<u>**Nature Of the Action**</u>

1.      The Trustee admits that Plaintiffs purport to bring a claim under the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"). The Trustee is informed and believes that Plaintiffs were employed by debtor Art Van Furniture, LLC ("AVF"). The Trustee is without sufficient knowledge or information as to whether "mass layoffs or plant closings" began on March 4, 2020, and therefore these allegations are denied. The remaining allegations are conclusions of law to which no response is required. To the extent that a response is deemed required, the allegations are denied. The Trustee denies that the Defendants violated the WARN Act or any other law and denies that Plaintiffs are entitled to any relief.

2.      The Trustee admits that the Plaintiffs were terminated, along with 700 other employees of AVF and Sam Levin, Inc. ("Levin"). The remaining allegations are conclusions of law to which no response is required. To the extent that a response is deemed required, the allegations are denied. The Trustee denies that the Defendants violated the WARN Act or any other law and denies that Plaintiffs are entitled to any relief.

<u>**Jurisdiction and Venue**</u>

3.      The allegations in this paragraph are conclusions of law to which no responsive pleading is required.

---

[2] Pursuant to the Pretrial Scheduling Order [Docket No. 31], "Unless otherwise agreed to by the parties or ordered by the Court, all amended pleadings shall be filed within fourteen (14) days of the filing of the Mediator's Report." The Mediator's Report was filed on October 15, 2021 [Docket No. 39].

2

A001521

4.     The allegations in this paragraph are conclusions of law to which no responsive pleading is required.

5.     The allegations in this paragraph are conclusions of law to which no responsive pleading is required.

### The Parties

6.     The Trustee admits that Plaintiff Todd Stewart ("STEWART") was employed by AVF as the store manager at the AVF facility at 14055 Hall Rd. Shelby Township Michigan (the "Shelby Store").  The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required.  If a response is deemed required, the allegations are denied.

7.     The Trustee admits that Plaintiff Jennifer Sawle ("SAWLE") was employed by AVF as a salesperson at the AVF store located at 8748 West Saginaw Highway, Lansing, Michigan (the "Lansing Store"). The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required.  If a response is deemed required, the allegations are denied.

8.     The Trustee is informed and believes that on or about March 5, 2020, AVF notified Plaintiff STEWART and Plaintiff SAWLE in writing as follows:

> Art Van Furniture, LLC (the "Company") has made the difficult decision to wind-down its operations, which will include the closure of its facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI,49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, and will be permanently terminating the employment of all employees at these locations. The Company submits this notice to you to satisfy any obligation that may exist under the federal

3

A001522

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). If no obligations exist, this notice is being provided to you voluntarily. All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). While an exact date has not yet been established for these closures, it is anticipated that your employment with the Company will terminate on May 5, 2020 or a date within 14 days thereafter which may be provided to you by the Company (your "Termination Date"). Nothing in this letter alters your at-will employment status with the Company. You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(the "Warn Act Notice"). The remaining allegations are denied.

        9.     The Trustee admits that Plaintiffs were not terminated on May 5, 2020.

The Trustee is informed and believes that on March 19, 2020, AVF notified Plaintiffs in writing

as follows:

On March 5, 2020, Art Van Furniture, LLC (the "Company") informed employees that it had made the difficult decision to wind-down its operations, to include the closure of its retail facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, which would in the permanent termination the employment of all employees at these locations. Since initial notice, the Company has been impacted by the novel COVID-19 virus and the resulting, and sudden, negative economic impact. Due to these unforeseen events, the Company can no longer support the wind-down of its retail operations through the originally projected termination date. The Company, therefore, submits this revised notice to you to satisfy any obligation that may exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). The employment of Art Van's sales associates and other commissioned employees, visuals, housekeepers, drivers, helpers, and other hub warehouse staff, Selling Managers and Outlet Managers as well as any Sales or Store Manager who is not

4

A001523

scheduled to perform services on March 21, 2020 or March 22, 2020, will be terminated on March 20, 2020. All CPU's and office staff, along with the Store Manager and/or Sales Manager scheduled to work on March 21, 2020 or March 22, 2020 will be terminated at the end of the business day on March 22, 2020. Nothing in this letter alters your at-will employment status with the Company. You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(the "Revised Warn Act Notice"). The remaining allegations are denied.

10. On information and belief, the Trustee admits that Plaintiff SAWLE's last day of employment was March 20, 2020.

11. The Trustee is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and on that basis, the allegations are denied.

12. The Trustee is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and on that basis, the allegations are denied.

13. On information and belief, the Trustee admits that in connection with the cessation of the Debtors' operations, AVF terminated approximately 3,006 employees between March 20, 2020 and April 3, 2020, and LEVIN terminated approximately 1,355 employees between March 20, 2020 and May 29, 2020 (collectively, the "Terminated Employees"). The Trustee denies that the Terminated Employees were terminated without advance written notice. The Trustee is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph as to unnamed class members, and as such they are denied.

5

A001524

14.     The Trustee admits the allegations in this paragraph.

15.     The Trustee admits that AVF maintained and operated its corporate headquarters at 6340, 6440 and 6500 E. 14 Mile Road, Warren, Michigan (the "Headquarters Facility") and that it operated additional facilities. The Trustee denies that AVF or any other Defendant owned the Headquarters Facility. The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required.

16.     On information and belief, the Trustee admits the allegations in this paragraph as of the Petition Date.

17.     The Trustee lacks sufficient knowledge to admit or deny the allegations in this paragraph, which are therefore denied.

18.     The Trustee denies that the Petition Date was March 9, 2020. On information and belief, the Trustee admits that prior to March 8, 2020 (the "Petition Date"), the Debtors operated stores in Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia, with approximately 4,500 employees.

19.     The Trustee admits that between March 20, 2020 and May 29, 2020, AVF and LEVIN terminated the Terminated Employees. On information and belief, the Trustee admits that AVF, although not required, in an abundance of caution provided the Warn Act Notice on or about March 5, 2020 and the Revised Warn Act Notice on or about March 19, 2020 to employees who worked at the following locations: (a) 27775 Novi Road, Novi MI 48377 (AVF Store 19); (b) 4375 28th Street SE Grand Rapids, MI 49512 (AVF Store 25); (c) 4095 East Court Street Burton, MI 48509 (AVF Store 34); (d) 14055 Hall Road Shelby Township, MI 48315 (AVF Store 44); (e) 8748 West Saginaw Highway Lansing MI 48917 (AVF Store 71); (f)

6

A001525

4273 Alpine Avenue NW Comstock Park MI 49321 (AVF Store 83); (g) 6340, 6440 and 6500 E

Fourteen Mile Road in Warren, MI 48092 (Tech Plaza/AVF Warehouse/Corporate); (h) 1150

115th Street Bolingbrook, IL 60490 (AVF Bolingbrook Warehouse and AVF Store 180); (i)

1021 Butterfield Road Downers Grove IL 60515 (AVF Store 197) (the "AVF Target

Locations").  On information and belief, the Trustee admits that between March 20, 2020 and

April 3, 2020, in connection with the cessation of the Debtors' operations, AVF terminated

approximately 1551 employees who worked at the AFV Target Locations and 1455 employees

who worked at its other locations (the "AVF Non-Target Locations").  On information and

belief, the Trustee admits that LEVIN, although not required, in an abundance of caution,

provided the Warn Act Notice on or about March 5, 2020 and the Revised Warn Act Notice on

or about March 19, 2020 to employees who worked at 301 Fitz Henry Road Smithton PA 15479

(the "LEVIN Target Location").  On information and belief, the Trustee admits that between

March 20, 2020 and May 29, 2020, in connection with the cessation of the Debtors' operations,

LEVIN terminated approximately 305 employees who worked at the LEVIN Target Location

and 1050 employees who worked at its other locations (the "LEVIN Non-Target Locations").

The remaining allegations are conclusions of law to which no response is required. To the extent

that a response is deemed required, the allegations are denied.

      20.    The Trustee is without knowledge or information sufficient to form a belief

as the truth or falsity of the allegations in this paragraph.

      21.    The Trustee is without knowledge or information sufficient to form a belief

as the truth or falsity of the allegations in this paragraph.

DOCS_DE:236738.7 05233/003

A001526

22.     The Trustee is without knowledge or information sufficient to form a belief as the truth or falsity of the allegations in this paragraph.

23.     The Trustee is without knowledge or information sufficient to form a belief as the truth or falsity of the allegations in this paragraph.

24.     The Trustee is without knowledge or information sufficient to form a belief as the truth or falsity of the allegations in this paragraph.

25.     The Trustee admits that the Debtors conducted a liquidation and is without knowledge or information sufficient to form a belief as the truth or falsity of the remaining allegations in this paragraph.

26.     On information and belief, the Trustee admits the allegations in this paragraph.

27.     The Warn Act Notice is a writing that speaks for itself.  Therefore, the Trustee denies the allegations in this paragraph.

28.     The Warn Act Notice is a writing that speaks for itself.  Therefore, the Trustee denies the allegations in this paragraph.

29.     On information and belief, the Trustee admits the allegations in this paragraph.

30.     The Trustee denies the allegation in this first sentence of this paragraph. The Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code to liquidate all of their assets. The Trustee admits that the cases are being jointly administered.

A001527

## Federal WARN Act Class Allegations

31.     The Trustee admits only that Plaintiffs have filed a putative class action on behalf of themselves and a class of all similarly situated employees pursuant to Federal Rule of Civil Procedure 23(a)(b)(1) and (3), Federal Rule of Bankruptcy Procedure 7023, the WARN Act, 29 U.S.C. 2101.  The Trustee denies that the class is appropriate and denies that the Debtors violated any law.  The Trustee denies all the other allegations in the paragraph.

32.     The Trustee denies all the other allegations in the paragraph, and denies that there was any violation of any law.

33.     The Trustee admits the allegations in this paragraph.

34.     The Trustee denies that class certification is appropriate and that there are any "WARN Class Members". The Trustee admits that the Debtors' books and records contain addresses for the Terminated Employees. The Trustee denies all the other allegations in the paragraph.

35.     The Trustee denies that class certification is appropriate and that there are any "WARN Class Members". The Trustee admits that the Debtors' books and records contain the rate of pay and benefits for the Terminated Employees. The Trustee denies all the other allegations in the paragraph.

36.     The allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

a.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The remaining

9

A001528

allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied; and

        b.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

        c.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

        37.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The Trustee admits only that the Plaintiffs and the Terminated Employees worked for AVF or Levin and were terminated between March 20, 2020 and May 29, 2020.  The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

        38.     The Trustee is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiffs "have retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation," and as such they are denied.  The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required.  If a response is deemed required, the allegations are denied.

10

A001529

39.     The Trustee admits only that the Plaintiffs and the Terminated Employees were terminated between March 20, 2020 and May 29, 2020. The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

40.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

41.     The Trustee denies that the Defendants violated the Warn Act, that class certification is appropriate and that there are any "WARN Class Members". The remaining allegations in this paragraph are conclusions of law to which no responsive pleading is required. If a response is deemed required, the allegations are denied.

42.     The Trustee is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and as such they are denied.

**Claim For Relief Violation Of the Federal WARN Act**

43.     The Trustee incorporates by reference his responses above to paragraphs 1 through 42 as if set forth in full herein.

44.     On information and belief, the Trustee admits that AVF and LEVIN each employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States. The Trustee denies the allegations with respect to each of the other Defendants.

11

A001530

45.     The allegations in this paragraph are a conclusion of law to which no responsive pleading is required. To the extent a response is deemed to be required, the Trustee admits that AVF and LEVIN each employed more than 100 employees (excluding part time employees) on or about March 19, 2020. The Trustee denies that any of the Defendants were "employers" as defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a).

46.     The allegations in this paragraph are a conclusion of law to which no responsive pleading is required. To the extent a response is deemed to be required, the Trustee admits only that the two named Plaintiffs were employed by AVF. The Trustee denies that any of the Defendants were "employers" as defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a).

47.     The allegations in this paragraph are a conclusion of law to which no responsive pleading is required. The Trustee denies that the Defendants violated the WARN Act.

48.     The allegations in this paragraph are a conclusion of law to which no responsive pleading is required. The Trustee denies that the Defendants violated the WARN Act.

49.     The allegations in this paragraph are conclusions of law to which no responsive pleading is required. To the extent that a response is deemed required, the Trustee admits that the two named Plaintiffs were terminated by AVF without cause on their part. The Trustee is without knowledge information sufficient to form a belief as to the truth or falsity of the allegations as to unnamed class members, and as such they are denied.

50.     The allegations in this paragraph are a conclusion of law to which no responsive pleading is required.  To the extent that a response is deemed required, the Trustee admits that the two named Plaintiffs were terminated by AVF without cause on their part. The

12

A001531

Trustee is without knowledge information sufficient to form a belief as to the truth or falsity of the allegations as to unnamed class members, and as such they are denied. Furthermore, the Trustee denies that any of the Defendants were "employers" as defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a).

51.     The allegations in this paragraph state a conclusion of law to which no responsive pleading is required. To the extent a response is deemed required, the Trustee denies the allegations.

52.     The allegations in this paragraph state a conclusion of law to which no responsive pleading is required. To the extent a response is deemed required, the Trustee denies the allegations.

53.     The allegations in this paragraph state a conclusion of law to which no responsive pleading is required. To the extent a response is deemed required, the Trustee denies the allegations.

54.     The Trustee is without knowledge information sufficient to form a belief as to the truth or falsity of the allegations, and as such they are denied.

55.     The allegations in this paragraph state a conclusion of law to which no responsive pleading is required. To the extent a response is deemed required, the Trustee denies the allegation.

## **Affirmative Defenses**

56.     The Trustee asserts the following affirmative defenses, without accepting the burden of proof on any claim or defense where such burden would otherwise be on Plaintiffs.

A001532

**First Affirmative Defense**

Defendants Are Not "Employers" Under the WARN Act.
(29 U.S.C. § 2101(a)(1))

57.     None of the Defendants was an "employer" under the WARN Act at the

time of the Revised Warn Act Notice and the March 20, 2020 layoff.  Under the WARN Act, an

"employer" is "any business enterprise that employs—(A) 100 or more employees (A) 100 or

more employees, excluding part-time employees; or (B) 100 or more employees who in the

aggregate work at least 4,000 hours per week (exclusive of hours of overtime)."  29 U.S.C. §

2101(a)(1)).

58.     At the time of the Revised Warn Act Notice and the March 20, 2020

layoff, AVF and LEVIN were chapter 11 debtors that had ceased operating as going concerns

and were merely conducting a liquidation. As such, AVF and LEVIN were acting as liquidating

fiduciaries for the benefit of creditors and were not operating a "business enterprise" for the

purpose of the WARN Act.

59.     Accordingly, neither AVF nor LEVIN (or any other Defendant) was an

"employer" subject to the WARN Act's notice requirements.  29 U.S.C. § 2101(a)(1).

**Second Affirmative Defense**

Unforeseeable Business Circumstances Exception
(29 U.S.C. § 2102(b)(2)(A))

60.     To the extent that any of the Defendants is determined to be an

"employer" under the WARN Act, the claims of Plaintiffs and all persons alleged to be similarly

situated are barred pursuant to 29 U.S.C. § 2102(b)(2)(A) because (a) an employer may order a

plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass

layoff is caused by business circumstances that were not reasonably foreseeable as of the time

DOCS_DE:236738.7 05233/003

A001533

that notice would have been required; and (b) AVF and LEVIN gave as much notice as was

practicable along with a brief statement of the basis for reducing the notification period pursuant

to 29 U.S.C. § 2102(b)(3).

61.     The COVID-19 pandemic (which prevented the Defendants from

conducting going-out-of business sales as originally planned post-petition) and the resulting

government ordered business closures (or threatened closures) and the restriction of citizens to

their homes: (i) caused the March 20, 2020 layoff; (ii) was a business circumstances that was not

reasonably foreseeable on January 18, 2020 when AVF and LEVIN would have had to give

notice of the March 20, 2020 layoff (if they were "employers" under the WARN Act); and (iii)

AVF and Levin gave as much notice as was practicable along with a brief statement of the basis

for reducing the notification period pursuant to the Revised Warn Act Notice.

62.     Accordingly, the Defendants are not liable to Plaintiffs for any violation of

the WARN Act.

### Third Affirmative Defense
Natural Disaster Exception
(29 U.S.C. § 2102(b)(2)(B))

63.     To the extent that any of the Defendants is determined to be an

"employer" under the WARN Act, the claims of Plaintiffs and all persons alleged to be similarly

situated are barred pursuant to 29 U.S.C. § 2102(b)(2)(B) pursuant to which no notice is required

if the plant closing or mass layoff is due to any form of natural disaster.

64.     The March 20, 2020 layoff was (i) due to the COVID-19 pandemic (which

prevented the Defendants from conducting going-out-of business sales as originally planned

post-petition) and the resulting government ordered business closures (or threatened closures)

and the restriction of citizens to their homes, and (ii) COVID-19 is a "natural disaster" under the

Warn Act.

65.     While under 29 U.S.C. § 2102(b)(2)(B), "no notice" is required, AVF and

Levin gave as much notice as was practicable along with a brief statement of the basis for

reducing the notification period pursuant to the Revised Warn Act Notice.  Accordingly, the

Defendants are not liable to Plaintiffs for any violation of the WARN Act.

### Fourth Affirmative Defense
Contractual Mandatory Arbitration

66.     Plaintiff STEWART and Plaintiff SAWLE are required to arbitrate the

claims alleged in the Complaint pursuant to the terms of those certain Arbitration Agreements

(the "Arbitration Agreements") they each entered into in connection with their employment in

which they agreed to submit to final and binding arbitration of, *inter alia*, any dispute, matter or

controversy arising out of their employment or the termination of their employment (the

"Mandatory Arbitration Provision").

67.     All of Plaintiffs' claims set forth In the Complaint are subject to the

Mandatory Arbitration Provision. Accordingly, the Court should dismiss the Complaint.

### Fifth Affirmative Defense
Class Action Prohibition

68.     Pursuant to the terms of the Arbitration Agreements, Plaintiff STEWART

and Plaintiff SAWLE are required to arbitrate the claims alleged in the Complaint "in an

individual capacity and not as plaintiff or class member in any purported class, collective action

or representative proceeding (the "Class Action Prohibition Provision")."

A001535

69.     All of Plaintiffs' claims set forth in the Complaint are subject to the Class Action Prohibition Provision. Accordingly, the Court should (a) dismiss the Complaint and/or (b) deny certification of a class.

### Sixth Affirmative Defense
Failure to Mitigate

70.     The claims of Plaintiffs and all persons alleged to be similarly situated may be barred in whole or in part by his or her failure to mitigate damages.

### Seventh Affirmative Defense
Good Faith

71.     The claims of Plaintiffs and all other persons alleged to be similarly situated are barred and or may be reduced pursuant to 29 U.S.C. § 2104(a)(4) because any act or omission by the Defendants was in good faith and without intent to deny Plaintiffs or class members rights and the Defendants had reasonable grounds for believing it was not in violation of the WARN Act.

### Eighth Affirmative Defense
Unclean Hands, Estoppel & Waiver

72.     The claims of Plaintiffs and all persons alleged to be similarly situated may be barred in whole or in part by the doctrine of unclean hands, estoppel or waiver.

### Ninth Affirmative Defense
Failure to State A Claim

73.     The Complaint fails to state a claim against all Defendants.

A001536

### Tenth Affirmative Defense
No Priority
(11 U.S.C. §§ 503, 507,726)

74. Any damages awarded to Plaintiffs and all other persons alleged to be similarly situated are not entitled to priority under any provision of the Bankruptcy Code including but not limited to 11 U.S.C. § 503, 11 U.S.C. § 507 and 11 U.S.C. § 726.

### Eleventh Affirmative Defense
No Damages

75. Plaintiffs and all other persons alleged to be similarly situated suffered no damages or losses due to any alleged violation of the WARN Act.

### Reservation of Rights

76. The Trustee reserves the right to amend or add additional defenses which may become later known during the course of discovery or pretrial procedures.

DOCS_DE:236738.7 05233/003

A001537

WHEREFORE, the Trustee requests that the Court deny all of the relief requested

by the Plaintiffs, and grant such other relief to the Trustee as may be just and proper, including,

without limitations, reimbursement of legal fees and expenses and all other cost and expenses

incurred by the estates in defending against the causes of action set forth in the Complaint.

Respectfully Submitted,

Dated:  October 29, 2021                PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
Beth E. Levine (NY Bar No. 2572246) (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:       bsandler@pszjlaw.com
                   blevine@pszjlaw.com
                   crobinson@pszjlaw.com
                   pkeane@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee*

19

A001538

# EXHIBIT F

*to Declaration of René S. Roupinian*

A001539

| From: | Rene Roupinian |
|---|---|
| To: | Bradford J. Sandler (bsandler@pszjlaw.com); Beth Levine |
| Cc: | Jack Raisner; Gail Lin |
| Subject: | Art Van WARN |
| Date: | Tuesday, November 16, 2021 6:05:43 PM |

Beth and Brad,

The Trustee's responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents are overdue.  Please let us know when we may expect them.

Thank you,

Rene'

René S. Roupinian | Partner
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
T & F 212-221-1747
rsr@raisnerroupinian.com
www.raisnerroupinian.com
www.warnlawyers.com

| From: | Beth Levine |
| --- | --- |
| To: | Rene Roupinian; Bradford J. Sandler |
| Cc: | Jack Raisner; Gail Lin; Erin Gray; Colin R. Robinson |
| Subject: | RE: Art Van WARN |
| Date: | Wednesday, November 17, 2021 3:31:43 PM |

Dear Rene:

I write in response to your email of yesterday in which you stated that the Trustee's responses to the Interrogatories and RFPs that you served on April 28, 2021 (the "Discovery Requests") were overdue.

Respectfully, we disagree. The agreed pretrial order signed by the Court on June 10, 2021 ("PTO") states, "All formal discovery and litigation shall be stayed during the mediation process, including without limitation, the Trustee's obligation to respond to the Plaintiffs Discovery Requests." PTO at ¶ 14. It then lists a series of dates, all of which key off the date on which Judge Gross issued his Mediation Report (October 15, 2021) that are applicable to pre-trial proceedings, but it does not address the issue of the timing of the Trustee's responses to the Discovery Requests. It certainly does not state, as you do in your declaration in support of the Plaintiffs Motion for Class Certification and Related Relief (the "Certification Motion"), that the parties would resume written discovery upon the conclusion of the mediation on July 27, 2021.

We intend to respond to the Discovery Requests, and are currently attempting to reconcile the significant amounts of informal discovery we have already provided to you both before and after the mediation to your formal requests. We have, to date, provided among other information, the following:

1. 6/29/2020: Excel spreadsheets for both Art Van and Levin with all of the information you have requested with respect to employees at the WARN locations who were terminated within 30 days of March 4, 2020 and thereafter, including
   (a) the date of his/her hire;
   (b) the date of his/her termination;
   (c) the site he or she worked or, if remote, reported to;
   (d) the reason for his/her separation, i.e., laid off, terminated for cause, voluntarily quit, retired;
   (e) whether he/she was hourly or salary;
   (f) his/her final rate of pay;
   (g) the amount of his/her gross weekly, biweekly or monthly compensation; and
   (h) the cost of his/her weekly, biweekly or monthly fringe benefits ("Employee Termination Data");
2. 9/17/2020: Updated excel spread sheets that included Employee Termination Data for employees terminated employees at non-Warn Act locations and average weekly employee pay for the 60 days prior to the March 20, 2020 layoff;
3. 10/5/2020: Store number and location spreadsheet;
4. 11/20/2020: Employee Termination Data for Levin sales force;
5. 7/12/2021: Documents responsive to your pre-mediation informal discovery requests, including board minutes and the AVF wind down plan;

A001541

6. 7/20/2021: Responses via email to follow up questions regarding Employee Termination Information;
7. 7/28/2021: Arbitration Agreements signed by each of the plaintiffs; and,
8. 8/10/2021: Employee Handbooks

This list is not exhaustive.

Notwithstanding that we believe you have substantially all information necessary for your 2 clients, we intend to serve formal responses to the Discovery Requests on or before December 1, 2021.

We also acknowledge the discovery you served today, and will respond to that in accordance with the applicable rules.

Regards,

Beth

**Beth Levine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7720
Tel: 212.561.7700 | Fax: 212.561.7777
blevine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

---

**From:** Rene Roupinian [mailto:rsr@raisnerroupinian.com]
**Sent:** Tuesday, November 16, 2021 9:06 PM
**To:** Bradford J. Sandler <bsandler@pszjlaw.com>; Beth Levine <blevine@pszjlaw.com>
**Cc:** Jack Raisner <jar@raisnerroupinian.com>; Gail Lin <gcl@raisnerroupinian.com>
**Subject:** Art Van WARN

Beth and Brad,

The Trustee's responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents are overdue. Please let us know when we may expect them.

A001542

Thank you,

Rene'

René S. Roupinian | Partner
Raisner Roupinian LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
T & F 212-221-1747
rsr@raisnerroupinian.com
www.raisnerroupinian.com
www.warnlawyers.com

# EXHIBIT G

*to Declaration of René S. Roupinian*

A001544

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiffs, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

## PLAINTIFFS' SECOND REQUEST
## FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Plaintiffs Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated (the "Plaintiffs"), by and through their undersigned counsel, request that Debtor Art Van Furniture, LLC, et al. (together "Debtors" or "Defendants") respond to the following requests for production within 30 days of the date of service:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

## **DEFINITIONS**

Unless indicated otherwise, the following words and phrases are defined and used herein as follows:

1.      "Plaintiffs" shall mean Todd Stewart and Jennifer Sawle, the persons named as Plaintiffs in the caption of this action.

2.      "Defendants" or "Debtors" shall mean the entities named in the caption of this action, including each of the names under which it conducts business, its respective employees, officers, directors, agents, advisors, consultants, attorneys and representatives and all other persons under its control.

3.      "Putative Class Members" shall mean the putative class defined as: Plaintiffs and all persons (i) who worked at, reported to, or received assignments from Defendants' Facilities, (ii) who were terminated without cause beginning on or about March 19, 2020, and within 90 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about March 19, 2020, and (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

4.       "Facilities" shall mean the sites where Defendants conducted business operations during the period January 1, 2020 through September 30, 2020 and which fall under the WARN Act's definition of "Facility or Operating Unit" or "Single Site of Employment" (29 C.F.R. § 639.3), including, but not limited to, the facilities located at 6500 E. 14 Mile Road, Warren, Michigan, 14055 Hall Rd. Shelby Township, Michigan and 8748 West Saginaw Highway, Lansing, Michigan.

A001546

5.      "Affirmative Defense" shall mean a ground for dismissal that Defendants have or intend to assert including in their First Amended Answer to the Complaint, dated October 29, 2021 (ECF 40).

6.      The "WARN Act" shall mean the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*

7.      "Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise such as in e-mail form.

8.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or computerized data compilations such as e-mails. A draft or non-identical copy is a separate document within the meaning of this term.

9.       "Identify" with respect to documents:  When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it.

10.      "Identify" with respect to persons:  When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address, and the last known business address of the person.

11.      The terms "Plaintiff" or "Defendants," as well as a party's full or abbreviated name or a pronoun referring to a party shall mean the party and, where applicable, its officers, directors, employee, partners, corporate parent, subsidiaries, or affiliates.

12.      "Person" is defined as any natural person or any business, legal or governmental entity or association.

3

13.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.     The terms "all" and "each" shall be construed as all and each.

15.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     The use of the singular form of any word includes the plural and vice-versa.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.     With respect to each document produced, Plaintiffs request that Defendants specify the Request(s) to which the document is responsive.

2.     Pursuant to Fed. R. Civ. P. 34, each document shall be produced as it is kept in the usual course of business and shall be organized and labeled with the categories in these requests.

3.     At or before the filing of the complaint in this case, Defendants were under a duty to preserve documents and ESI related to this matter.  Accordingly, Plaintiffs expect that Defendants and its counsel will prevent the destruction or alteration of any documents requested herein by the operation of any electronic information system (routine or otherwise) and hereby put Defendants on notice that any destruction or alteration of such documents, or any action that makes such documents more difficult or expensive to access and use, without completing a meet and confer process with Plaintiffs' counsel regarding such action, will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f).  If Defendants does not believe that it can reasonably comply with this instruction, Plaintiff requests that Defendants contact Plaintiffs'

4

counsel in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

4.      Unless otherwise indicated, Plaintiffs request that Defendants produce responsive documents pursuant to the agreements reached by the parties after their meet and confer discussions about the preferred format for such production.  Plaintiffs request that Defendants not unilaterally select an electronic format for production.

5.      Alternatively, if Defendants do not wish to meet and confer about the format for production of documents, Plaintiffs request such documents as follows:

        a.      Documents should be provided on DVD, CD or external hard drive. The volume of the ESI will determine whether documents are provided on CD, DVD or hard drives.

        b.      Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

        c.      Defendants may compress and/or encrypt the production archive for delivery purposes but should provide passwords for any compressed archives under separate cover, along with a description of any software needed to decrypt the archive.

        d.      A cover letter or fact sheet should be included describing in as much detail as practicable the contents of the collection.

        e.      Documents created or stored electronically should not be produced in hard copy.  All ESI should be produced with the metadata requested below.

        f.      All documents should be produced as they are ordinarily maintained, for example, organized by custodian or source.

        g.      All productions should be free of computer viruses.

A001549

h. All deliverables should include a metadata load file that is a .DAT or .TXT format with standard Concordance delimiters, and contain all fields outlined below. Image load files should be provided in .OPT format.

i. Documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example, with a placeholder.

j. All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

k. Paper documents should be scanned and processed to TIFF files. If a document is available to Defendants both in paper and electronic form, Plaintiffs request that Defendants produce the requested document in electronic form, as described herein.

6

l.      For email collections, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

m.      Documents originating in spreadsheet or presentation programs such as Excel or Powerpoint should be produced in native form.  For deliverables containing native files such as Excel and PowerPoint files, a native file path/link should be included in the metadata load file. Additionally, a Bates-stamped TIFF placeholder should be included in the production and reflected in the image load file. The number of native files per folder should be limited to 1,000 files.

n.      In the event that responses to these requests contain ESI from proprietary or non-proprietary databases, the parties will meet and confer to discuss the fields contained in the database and the best means of producing responsive information from them, such as running reports or queries.  In the event that ESI will be produced directly from a database, the ESI should be produced in a comma delimited file or in Excel format, with all formulae and records of irregular or manual manipulation of data reflected.  If proprietary software is required to access or use documents in their native format, please supply such software.  A written list of all database fields and a reasonable description for each field, or a "database dictionary" should be included.

o.      All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

p.      For deliverables containing multi-media files, the following production format should be used:

7

    i.  Audio Data Files: Audio data files should be produced in audio Windows Media Audio ("WMA") format or "MP3" format.

    ii.  Video Files: Video files should be produced in Audio/Video Interleaved ("AVI") format.

    iii.  Image Files: If providing color images, files should be produced in "JPEG/JPG" format with a resolution of 150 to 300 DPI.

    q.  Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| BEGDOC | Starting bates | Hardcopy, edoc, email and attachment |
| ENDDOC | Ending bates | Hardcopy, edoc, email and attachment |
| PARENTID | First bates number of parent email. (Populate in child(ren) record(s) only) | Emails and attachments (populated through processing) |
| FAMLYRNG OR ATTACHRNG | Family (Range of bates related documents (i.e. email & attachment) - this field will be populated for all records in the family.) | Hard copy, edoc, emails and attachments (populated through processing) |
| BEGATTACHID | First BATES of attachment(s) | Hard copy, edoc, emails and attachments (populated through processing) |
| ENDATTACHID | Last BATES of family (populate on families only) | Hard copy, edoc, emails and attachments (populated through processing) |
| CUSTODIAN | Person from whom file was obtained | Hardcopy (if coded), edoc, email and attachment (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record Type – will be either "email", "attachment", "edoc" or "hardcopy" | |

8

A001552

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |
| CC | CC field - In the event of emails | Emails (populated through processing) |
| BCC | Bcc field - in the event of emails | Emails (populated through processing) |
| SUBJECT | Subject | Emails (populated through processing) |
| DOCTITLE | Document Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc or attachment (populated through processing) |
| DOCDATE | Document Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email and Attachments |
| DATESENT | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| TIMESENT | Date sent 00:00:00 AM/PM | Emails (populated through processing) |
| DATECREATED | Date first created, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| DATESVD | Date last saved/modified, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| TIMESVD | Time saved 00:00:00 AM/PM | (populated through processing) |
| DATERCVD | Date received/accessed, format MM/DD/YYYY | Emails (populated through processing) |
| TIMERCVD | Time received 00:00:00 AM/PM | (populated through processing) |
| PAGECOUNT | Document page count | Edoc or attachment (populated through processing) |
| ATTILE | File name/Attachment Name | Electronic files and/or attachments (populated through processing) |
| APPLICAT | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files and/or emails, attachments (populated through processing) |
| FOLDERID OR ORIGFOLDERPATH OR FILEPATH | File path/folder structure of original native file as it existed at the time of collection. | Electronic files and/or emails, attachments (populated through processing) |

9

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| | i.e. Path of email in mailbox (populate for email attachments also); Filepath of edocs or scanned docs (if requested) | |
| DOCLINK or NATIVEFILE | Active link reflecting current filepath back to the native file | Electronic files and/or emails, attachments (populated through processing **and only provided if receiving native files**.) |
| FILEEXTEN | In the event of attachments or emails, this will enable us to search by document type. Sample contents: *PST, MSG, PDF, DOC, PPT, HTM,* etc. etc. | Electronic files and/or emails, attachments (populated through processing) |
| AUTHOR | In the event of attachments, this field contains the 'author' of the document | For Hard Copy docs (if coded) or electronic files and or attachments (populated through processing) |
| HASH | Hash value for de-dupe | Electronic files and/or attachments (populated through processing) |
| HEADER | Contains all the routing information from the header section of an email message | Emails (populated through processing) |
| TEXT | Text of email in the event of emails; text of attachment in the event of attachments; We recognize that some attachments will not have text that can be properly rendered into text (JPGs, GIFs, Flash Files, etc.), but for those flat files such as PDFs which do not have extractable text, we would like them OCR'd, and the contents placed in the TEXT field. | For Hardcopy, electronic files, emails and attachments. |

6.      With respect to each request, Defendants are requested to provide all documents in

its possession, custody, or control that are known to Defendants or that Defendants can locate or

discover through reasonably diligent efforts.

10

A001554

7.      If Defendants cannot respond or produce documents in response to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons for Defendants' inability to respond or produce documents in response to the remainder of the Requests.

8.      If, to Defendants' knowledge, documents responsive to one or more requests were never in Defendants' possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

9.      If any responsive document was formerly in Defendants' possession, custody, or control but has been eliminated from Defendants' possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

a.  The basis for withholding such document;

b.  A generic description of the document being withheld;

c.  The date the information contained in the document was learned or the document created;

d.  The identity of the individual(s) who learned the information or authored the document;

e.  The date the document was transmitted or otherwise made available to anyone; and

f.  The specific Request(s) to which the withheld document relates.

10.     If requested documents are maintained in a file, folder, or other container, please produce the file, folder, or other container, or a complete copy of same, with the documents.  For ESI that originates in a digital folder structure, please produce the folder names and relationships as metadata.

A001555

11.     The scope of your search for ESI shall include all forms of ESI collection, preservation, transmission, communication, and storage, including:

a.  All ESI generated and maintained in the ordinary course of business, including ESI stored on mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored;

b.  Distributed data or removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including email hosted by Internet service providers, handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, and flash memory drives;

c.  Forensic copy or backup ESI, including archive and backup data tapes and discs;

d.  Network ESI, including voice mail systems, email servers, ISP servers, network servers, cloud servers and fax servers;

e.  Legacy ESI, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f.  Metadata, i.e., information regarding a particular data set which describes how, when and by whom it was collected, created, accessed and modified and how it is formatted.

12.     Unless otherwise indicated in writing, the failure to produce any documents in response to any request herein means that such documents do not exist, or are not in Defendants' possession, custody, or control, or the possession, custody, or control of Defendants' agents or anybody acting on Defendants' behalf.

13.     To the extent documents responsive to these requests have already been produced by Defendants, state the unique identifier (e.g., MD 5 Hash value) or Bates number for each responsive document that was previously produced.

## DOCUMENT REQUESTS

1.     Produce all documents and/or communications that support Defendants' statement in the Chapter 7 Trustee's First Amended Answer to Complaint dated October 29, 2021 (ECF 40), paragraph 58 that "[a]t the time of the Revised Warn Act Notice and the March 20, 2020 layoff, AVF and LEVIN were chapter 11 debtors that had ceased operating as going concerns

12

A001556

and were merely conducting a liquidation. As such, AVF and LEVIN were acting as liquidating fiduciaries for the benefit of creditors and were not operating a "business enterprise" for the purpose of the WARN Act."

2.      Produce all documents and/or communications that refer to the Chapter 7 Trustee's First Amended Answer to Complaint dated October 29, 2021 (ECF 40), Fifth Affirmative Defense, that "[p]ursuant to the terms of the Arbitration Agreements, Plaintiff STEWART and Plaintiff SAWLE are required to arbitrate the claims alleged in the Complaint "in an individual capacity and not as plaintiff or class member in any purported class, collective action or representative proceeding (the "Class Action Prohibition Provision")."

3.      Produce all documents and/or communications that refer to the Chapter 7 Trustee's First Amended Answer to Complaint dated October 29, 2021 (ECF 40), Seventh Affirmative Defense, that "[t]he claims of Plaintiffs and all other persons alleged to be similarly situated are barred and or may be reduced pursuant to 29 U.S.C. § 2104(a)(4) because any act or omission by the Defendants was in good faith and without intent to deny Plaintiffs or class members rights and the Defendants had reasonable grounds for believing it was not in violation of the WARN Act."

4.      Produce all documents and/or communications that refer to the Chapter 7 Trustee's First Amended Answer to Complaint dated October 29, 2021 (ECF 40), Tenth Affirmative Defense, that "[a]ny damages awarded to Plaintiffs and all other persons alleged to be similarly situated are not entitled to priority under any provision of the Bankruptcy Code including but not limited to 11 U.S.C. § 503, 11 U.S.C. § 507 and 11 U.S.C. § 726."

5.      Produce all documents and/or communications sent or received by the following individuals (identified in Defendants' Initial Disclosures dated October 29, 2021, Section A) that

13

refer or relate to efforts to seek financing for Defendants during the period January 1, 2019 through September 30, 2020: Gary Fazio, James Ferguson, Gus Glyptis, David Ladd, Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elslander, David Alexander, Douglas Haber, Cathrine Wenger, Lauren Murphy,  Danielle Baldinelli, Robert Levin, and Dennis Stogsdill.

6.      Produce all documents and/or communications sent or received by the following individuals (identified in Defendants' Initial Disclosures dated October 29, 2021, Section A) that refer or relate to the allegations in Plaintiff's Complaint: Gary Fazio, James Ferguson, Gus Glyptis, David Ladd, Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elslander, David Alexander, Douglas Haber, Cathrine Wenger, Lauren Murphy,  Danielle Baldinelli, Robert Levin, and Dennis Stogsdill.

7.      Produce all documents identified in Defendants' Initial Disclosures (dated October 29, 2021), Section B.

8.      Produce all documents that reflect the corporate hierarchy of each of the Defendants, including but not limited to certificates of incorporation, operating agreements, and bylaws.

9.      Produce all documents reflecting or referring to negotiations between Wells Fargo Capital Finance and all employees, executive, officers, directors, advisors and agents of Debtors regarding amendments, forbearances or other modifications to the Debtors' credit facilities with Wells Fargo Capital Finance, during the period January 1, 2019 through September 30, 2020.

10.      Produce all documents and/or communications that refer or relate to all liquidation analyses of Debtors during the period January 1, 2019 through September 30, 2020.

14

11.     Produce all documents and/or communications that refer or relate to efforts to liquidate the inventory of Defendants during the period January 1, 2019 through September 30, 2020.

12.     Produce all documents and/or communications that refer or relate to efforts to sell assets or stock of Defendants during the period January 1, 2019 through September 30, 2020.

13.     Produce documents reflecting communications between Thomas H. Lee Partners, L.P. ("THL") and Wells Fargo Capital Finance regarding offers by Thomas H. Lee Partners to provide financing for the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

14.     Produce all documents and/or communications that refer or relate to efforts to increase business for Defendants during the period January 1, 2019 through September 30, 2020.

15.     Produce all minutes, records and resolutions of each of the Defendant's Board of Directors meetings during the period January 1, 2019 through September 30, 2020, including submissions to the Board of Directors and committees of the Board of Directors at, or in anticipation of, such meetings.

16.     Produce all employee handbooks that were in effect during the period January 1, 2020 through September 30, 2020 for individuals who were employed by each of the Defendants.

17.     Produce documents reflecting communications between Thomas H. Lee Partners, L.P. ("THL") and any members of the Van Eslander family regarding the formation of a "Consortium" to make capital investments into the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

15

A001559

18.     Produce documents reflecting communications between Thomas H. Lee Partners, L.P. ("THL") and any members of the Van Eslander family regarding or relating to any efforts to make capital investments into the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

19.     Produce documents reflecting communications between THL and members of the Van Eslander family regarding any effort provide financing for the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

20.     Produce documents reflecting communications between THL and any members of the Van Eslander family regarding the possibility of proving a guarantee for loans to finance the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

21.     Produce documents reflecting communications between THL and Wells Fargo Capital Finance regarding offers by THL to provide financing for the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

22.     Produce documents reflecting communications between THL and Wells Fargo Capital Finance regarding offers all offers by third parties to provide financing for the business operations of Defendants during the period January 1, 2020 through September 30, 2020.

23.     Produce documents reflecting communications between Debtors and legal counsel relating or referring to the "natural disaster" exception to the WARN Act.


Dated: November 17, 2021

                              */s/ René S. Roupinian*
                              René S. Roupinian (*admitted pro hac vice*)
                              Jack A. Raisner (*admitted pro hac vice*)

                                      16

**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**THE LAW OFFICES OF JOYCE, LLC**
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

*Attorneys for Plaintiffs and the putative class*

17

A001561

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiffs, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Jenny Hoxha, under penalty of perjury, certify the following as true and correct:  I am not a party to this action, employed by Raisner Roupinian LLP, and I am over 18 years of age. I hereby certify that I caused true and correct copies of *Plaintiffs' Second Request for Production of Documents to Defendants* and the corresponding *Certificate of Service* to be served upon the parties listed below via email as listed below:

**Service List:**

Bradford J. Sandler

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001562

Colin R. Robinson
Peter J. Keane
Beth Levine
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
crobinson@pszjlaw.com
pkeane@pszjlaw.com
blevine@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee for Debtors*


Dated: November 17, 2021

                              /s/      *Jenny Hoxha*
                                    Jenny Hoxha

2

A001563

# EXHIBIT H

*to Declaration of René S. Roupinian*

A001564

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
|  | Adv. Proc. No. 20-50548 (CSS) |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, |  |
| Plaintiffs, |  |
| v. |  |
| ART VAN FURNITURE, LLC, et al., |  |
| Defendants. |  |

**CHAPTER 7 TRUSTEE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Alfred T. Giuliano, the chapter 7 trustee (the "Trustee") of the bankruptcy estates

of Art Van Furniture, LLC, AVF Holding Company, Inc., AVCE, LLC, AVF Holdings I, LLC,

AVF Holdings II, LLC, AVF Parent, LLC, Levin Parent, LLC, Art Van Furniture of Canada,

LLC, AV Pure Sleep Franchising, LLC, AVF Franchising, LLC, LF Trucking, Inc., Sam Levin,

Inc., and Comfort Mattress LLC (collectively, the "Debtors" or the "Defendants") in the above-

captioned adversary proceeding (the "Adversary Proceeding"), hereby objects and responds to

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001565

Plaintiffs Todd Stewart and Jennifer Sawle (the "<u>Plaintiffs</u>") *First Request for Production of Documents to Defendants* (the "<u>RFP</u>").

## **GENERAL OBJECTIONS**

Each of the following statements and general objections ("<u>General Objections</u>") apply to the RFP, and the Trustee makes its response to the RFP subject to these General Objections:

1.     The Trustee has made a good faith effort to investigate and identify information and documents responsive to the RFP.  The Trustee's discovery, investigation and trial preparation in the Adversary Proceeding, however, are continuing.  The Trustee is a chapter 7 trustee appointed post-conversion of the above-captioned, jointly administered bankruptcy cases from chapter 11 to chapter 7 that has no direct knowledge or involvement in, the affairs of the Debtors that are at issue in the Adversary Proceeding.   In addition, as chapter 7 estates, the Debtors terminated all of their former officers and employees who did have such involvement and/or knowledge.  These responses are based on information presently available to the Trustee and his attorneys.  Accordingly, the Trustee reserves the right (a) to amend, supplement or modify the response to the RFP based on any responses to any discovery requests or subpoenas, including any documents produced in response to such discovery requests or subpoenas, (b) to amend, supplement or modify its response to the RFP based on any further discovery, investigation and trial preparation in the Adversary Proceeding, (c) to amend, supplement or modify its response to the RFP to incorporate or reflect later discovered documents and information to the extent required by law, and (d) to introduce – at deposition, at hearing, at trial or otherwise – any evidence from any source hereafter obtained.

2.     The response to the RFP is provided without waiver of, and with express reservation of, the following: (a) all objections as to competency, relevance, materiality and/or

A001566

admissibility of the response, or the subject matter thereof, as evidence for any purpose in the Adversary Proceeding or any other proceeding; (b) all privileges and other protections, including the attorney-client privilege, work product doctrine and common interest doctrine; (c) all objections as to the confidentiality of any documents; (d) all other objections to the use of the response, or the subject matter thereof, on any ground in the Adversary Proceeding or any other proceeding; and (e) the right to object on any ground at any time to a demand or request for any further response(s) to the RFP, or to any other discovery requests in the Adversary Proceeding.

3.  The Trustee objects to the RFP to the extent it calls for the disclosure of confidential, proprietary and/or private information or documents, or the disclosure of information or documents protected from discovery by the attorney-client privilege, the work product doctrine, the common interest doctrine and/or any other applicable privilege or protection.  The production of any confidential, proprietary, private, privileged or otherwise protected information or documents in response to the RFP is inadvertent, and is not intended as and shall not be deemed to be a waiver or impairment of any claim of confidentiality, privilege or other applicable protection.

4.  The Trustee objects to the RFP to the extent it conflicts with, seeks to expand upon, purports to require responses inconsistent with, or purports to impose obligations beyond the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

5.  The Trustee objects to the RFP to the extent it seeks information or documents not relevant to any party's claim or defense in the Adversary Proceeding, and/or not proportional to the needs of the Adversary Proceeding.

6.  The Trustee objects to the RFP as unduly burdensome and oppressive to the extent it purports to require unreasonably costly and/or time-consuming measures to locate, review and produce or identify responsive documents or information.

A001567

7.     The Trustee objects to the RFP to the extent it seeks the production of documents that are not reasonably or readily available to the Debtor, and/or that are not within its possession, custody or control.

8.     The Trustee objects to the RFP to the extent it seeks documents that already have been provided or made available to the Plaintiffs, are otherwise in the possession of the Plaintiffs, are equally or more readily available to the Plaintiffs from other sources, and/or are a matter of public record.

9.     The Trustee objects to the time periods of the Requests as not reasonably calculated to lead to the discovery of admissible evidence or not relevant to the nature of this action. The Trustee performed and will continue to perform searches of the Debtors' electronic and email systems that he has access to for the period from January 18, 2020 through and including March 20, 2020 and objects to and will not re-run any searches prior to this date as to do so is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence or not relevant to the nature of this action.

10.     The Trustee objects to Instruction No. 1 in that it purports to require the Trustee to identify to which request each document is responsive.  For the documents previously produced by the Trustee and for those it will produce in response to the RFP, it would be unduly burdensome for the Trustee to identify the request to which each document is responsive, especially given that such information is evident on its face for the vast majority of the requests.

11.     The Trustee objects to Instruction No. 5 and reserves all rights with respect to the format(s) for production by the Trustee.  The Trustee, as applicable, will meet and confer with the Plaintiffs regarding the format(s) for production.

A001568

## DOCUMENT REQUESTS

1.        Produce all documents that relate to or reflect Defendants' responses to Plaintiffs' First Set of Interrogatories to Defendants.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

2.        Produce all documents and/or communications reflecting communications that relate to this action.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the non-privileged documents of the Debtors that were previously produced to the

A001569

Plaintiffs.  The Trustee will produce, on a rolling basis after service of this response, additional

non-privileged documents of the Debtors, if any, in the possession, custody and control of the

Trustee.

        3.      Produce all documents and/or communication sent and received by every

director, board member and officer of Defendants concerning the decision to terminate the

employment of Plaintiffs and Putative Class Members.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The

Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and unduly

burdensome.  The Trustee further objects to the extent that this Request calls for information that

is protected by the attorney-client privilege or the work product doctrine.  By way of further

response, and without waiving the foregoing objections, the Trustee will produce, on a rolling

basis after service of this response, those non-privileged documents of the Debtors, if any, in the

possession, custody and control of the Trustee.

        4.      Produce documents that reflect the number of employees who worked at

each of the Facilities during the period between October 1, 2019 through June 30, 2020, including

their beginning-and-end dates of employment.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. By way

of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff

to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs.

A001570

5.      Produce documents that reflect the number of employees (including part-time and full-time) who worked at each of Defendants' Facilities during the period between October 1, 2019 through June 30, 2020, including their beginning-and-end dates of employment.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs.

6.      Produce documents that reflect the address of each of Defendants' Facilities where employees received a termination notice dated March 19, 2020, and the names of employees at each store who received the notice.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

7.      Produce documents that reflect the address of each of Defendants' Facilities where employees received the document dated March 5, 2020, titled "Important Company Announcement", addressed to All Team Members from the Executive Team (attached hereto as Exhibit A), and the names of employees at each store who received the notice.

A001571

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

8. Produce documents that reflect the address of each of Defendants' Facilities where employees received a WARN notice dated March 19, 2020, and the names of employees at each store who received the notice.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

**ANSWER:**

9. Produce documents that reflect the address of each of Defendants' Facilities where employees received a copy of the document dated March 5, 2020, titled "WARN Act Notice," from Cathrine Wenger, Senior Counsel, that was distributed to employees (attached hereto as Exhibit B), and the names of employees at each store who received the notice.

A001572

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

10.    Produce all documents and/or communications reflecting the drafting of the documents dated March 5, 2020, titled "WARN Act Notice," from Cathrine Wenger, Senior Counsel that was distributed to employees in Michigan and Illinois (attached hereto as Exhibit B).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

11.    Produce documents that reflect Plaintiffs and the Putative Class Members' employment benefits, including health insurance (medical, dental and vision), supplemental insurance, life insurance, long and short-term disability benefits, time-off benefits, retirement savings, health and welfare benefits, including 401k plans, company vehicle, fuel, and education reimbursement.

A001573

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

12.    Produce all documents and/or communications concerning every in-person meeting held on or before March 5, 2020 at which Defendant's managers, executives, directors, board members or supervisors met with Defendant's employees regarding their terminations, including all lists of attendees, sign-in sheets, scripts, memos, handouts and talking points for such meeting(s).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad, and unduly burdensome. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

13.    Produce all documents and/or communications reflecting the drafting of the document "Termination of Benefits" dated March 19, 2020 (attached hereto as Exhibit C).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The

A001574

Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

14. Produce all documents and/or communications reflecting the drafting of the document titled "Memorandum" to "Employees Affected By Closing of Art Van Furniture Stores located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321" dated March 19, 2020 (attached hereto as Exhibit D).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

15. Produce all documents and/or communications reflecting the drafting of the document "Frequently Asked Questions-Store Associates (Art Van, Levin and Wolf Closing)" (attached hereto as Exhibit E)

A001575

**ANSWER:**

> The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

16.     Produce all documents and/or communications reflecting the drafting of the document titled "Meeting Instructions," dated March 5, 2020, addressed to "Art Van and Wolf Leaders" from Michelle Dolski & Irene Fostyk (attached hereto as Exhibit F).

**ANSWER:**

> The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

17.     Produce all documents and/or communications reflecting the drafting of the document titled "Frequently Asked Questions #1/ Benefits Contacts" (attached hereto as Exhibit G).

A001576

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

18. Produce all documents reflecting every employee who signed the WARN Act Notice Receipt Acknowledgment, including lists of attendees, sign-in sheets, scripts, memos, summaries, and compilations of such lists (attached hereto as Exhibit H).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee will produce, on a rolling basis after service of this response, those non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

19. Produce all minutes, records, and resolutions of Defendants' Board of Directors meetings during the period March 1, 2019 through June 30, 2020, including submissions to the Boards of Directors and committees of the Boards of Directors at, or in anticipation of, such meetings.

DOCS_DE:237156.2 05233/003

A001577

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiff to the non-privileged documents of the Debtors that were previously produced to the Plaintiffs. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

20.     Produce all documents and/or communications reflecting efforts to seek additional business which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

A001578

21.     Produce all documents and/or communications concerning Defendants'
financing during the period March 1, 2019 through June 30, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The
Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and
unduly burdensome.  The Trustee further objects to the extent that this Request calls for
information that is protected by the attorney-client privilege or the work product doctrine.  By way
of further response, and without waiving the foregoing objections, the Trustee directs the
Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned
bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response,
additional non-privileged documents of the Debtors, if any, in the possession, custody and control
of the Trustee.

22.     Produce all documents and/or communications during the period March 1,
2019 through June 30, 2020 reflecting proposals for financing, loans, capital investments, loan
guarantees and capital infusions from any source, including but not limited to Thomas H. Lee
Partners, L.P., to the Debtors to fund Debtors' operations.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The
Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad, and
unduly burdensome.  The Trustee further objects to the extent that this Request calls for
information that is protected by the attorney-client privilege or the work product doctrine.  By way
of further response, and without waiving the foregoing objections, the Trustee directs the

Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned

bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

additional non-privileged documents of the Debtors, if any, in the possession, custody and control

of the Trustee.

        23.    Produce all documents and/or communications during the period March 1,

2019 through June 30, 2020 reflecting Debtors' default of its revolving credit facility with Wells

Fargo, including all communications regarding Wells Fargo's agreement to a forbearance until

March 28, 2020.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The

Trustee objects to this Request to the extent that it is overly broad and unduly burdensome.

The Trustee further objects to the period March 1, 2019 through June 30, 2020 in this

Request. The Trustee further objects to the extent that this Request calls for information that is

protected by the attorney-client privilege or the work product doctrine. By way of further

response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the

documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.

The Trustee will produce, on a rolling basis after service of this response, additional non-

privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

        24.    Produce all documents and communications during the period March 1,

2019 through March 28, 2020 reflecting Wells Fargo assuming control of Defendants' available

cash.

A001580

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through March 28, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

25.    Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting all agreements between Defendants and Wells Fargo that Defendants would immediately begin preparing for a "going-out-of-business" liquidation if was unable to raise capital by February 28, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through March 28, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

A001581

additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

26.     Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting the terms of all outstanding loans, credit lines, and other indebtedness between Defendants and its lenders that were in existence as of February 28, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through March 28, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

27.     Produce all documents and/or communications between Defendants and its lenders during the period March 1, 2019 through September 30, 2020 referencing the maturity date of all outstanding loans, credit lines, and other indebtedness by Defendant that were in existence as of March 19, 2020.

A001582

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through September 30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

   28.  Produce all documents and/or communications between Defendants and its lenders during the period March 1, 2019 through March 19, 2020 that refer or relate to all forbearance agreements between Defendants and its lenders that were in effect during that period.

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

A001583

29.     Produce all documents and/or communications reflecting efforts to seek capital or financing which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

30.     Produce all documents and/or communications reflecting efforts to renegotiate leases or reduce expenses which would have enabled Defendants to avoid the terminations of Plaintiffs and Putative Class Members.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the

A001584

Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned

bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

additional non-privileged documents of the Debtors, if any, in the possession, custody and control

of the Trustee.

        31.     Produce all documents and/or communications concerning Defendants'

seeking of capital during the period March 1, 2019 through June 30, 2020.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The

Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and

unduly burdensome. The Trustee further objects to the period March 1, 2019 through June

30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for

information that is protected by the attorney-client privilege or the work product doctrine. By way

of further response, and without waiving the foregoing objections, the Trustee directs the

Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned

bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

additional non-privileged documents of the Debtors, if any, in the possession, custody and control

of the Trustee.

        32.     Produce all documents and/or communications during the period March 1,

2019 through June 30, 2020 reflecting proposals for financing, loans, capital investments, loan

guarantees and capital infusions from any source, including but not limited to Thomas H. Lee

Partners, L.P., to the Debtors to fund Debtors' operations.

A001585

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through June 30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

        33.    Produce all documents and/or communications reflecting efforts to seek capital or financing which would have enabled Defendant to avoid the terminations of Plaintiffs and Putative Class Members.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

A001586

additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

34.    Produce all documents and/or communications concerning a sale of all or parts of Defendants' company or operational assets during the period March 1, 2019 through June 30, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through June 30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors and the Trustee in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

35.    Produce all documents and/or communications that reflect any agreement by Robert Levin to purchase Levin Furniture and select Wolf stores pending court approval.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by

A001587

the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors and the Trustee in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

36.     Produce all documents and/or communications from the period March 1, 2019 through June 30, 2020 concerning any proposed sale of Defendants' assets to any third-party entity.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through June 30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors and the Trustee in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

37.     Produce all documents and/or communications concerning Defendants' efforts to renegotiate leases or reduce expenses during the period March 1, 2019 through March 31, 2020.

DOCS_DE:237156.2 05233/003

A001588

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through June 30, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

38.    Produce all documents and/or communications concerning Defendants' decision to file for bankruptcy during the period March 1, 2019 through March 8, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through March 8, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response,

A001589

additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

39.     Produce all documents and/or communications concerning Defendants' liquidation, including its winddown and cessation of operations during the period December 1, 2019 through September 30, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors and Trustee in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

**ANSWER:**

40.     Produce all documents and/or communications during the period March 1, 2019 through March 28, 2020 reflecting all agreements between Defendants and Wells Fargo that Defendants would immediately begin preparing for a "going-out-of-business" liquidation if was unable to raise capital by February 28, 2020.

A001590

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the period March 1, 2019 through March 28, 2020 in this Request. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

   41. Produce all documents and/or communications concerning any change in the terms or conditions of the employment of Defendants' employees during the period January 1, 2020 through September 30, 2020.

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period January 1, 2020 through September 30, 2020. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response,

A001591

additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

42.     Produce all documents and/or communications concerning the consideration of COVID-19 as it related to Defendants during the period January 1, 2020 through September 30, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. The Trustee further objects to the period January 1, 2020 through September 30, 2020. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.  By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case.  The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents of the Debtors, if any, in the possession, custody and control of the Trustee.

43.     Produce all documents and/or communications that refer to Defendants' First Affirmative Defense in its Answer that the terminations were caused by "business circumstances that were not reasonably foreseeable as of the time that notice would have been required" and that "AVF and LEVIN gave as much notice as was practicable along with a brief statement of the basis for reducing the notification period pursuant to 29 U.S.C. § 2102(b)(3)." (ECF 25)

A001592

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents, if any, in the possession, custody and control of the Trustee.

44.    Produce all documents and/or communications that refer to Defendants' Second Affirmative Defense in its Answer that the mass layoffs or plant closings were caused by a natural disaster and that "AVF and LEVIN gave as much notice as was practicable along with a brief statement of the basis for reducing the notification period pursuant to 29 U.S.C. § 2102(b)(3)." (ECF 25)

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine. By way of further response, and without waiving the foregoing objections, the Trustee directs the Plaintiffs to the documents and pleadings publicly filed by the Debtors in the above-captioned bankruptcy case. The Trustee will produce, on a rolling basis after service of this response, additional non-privileged documents, if any, in the possession, custody and control of the Trustee.

A001593

45.    Produce all written opinions by Defendants' legal counsel to Defendants' owner(s), officers and/or directors concerning Defendants' legal obligations to its employees pursuant to the WARN Act.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request to the extent that it is overly broad and unduly burdensome. The Trustee further objects to the extent that this Request calls for information that is protected by the attorney-client privilege or the work product doctrine.

46.    Produce all documents and/or communications that Defendants will rely upon to defend this action.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee objects to this Request as vague, ambiguous, overly broad and unduly burdensome.

Dated:  December 1, 2021                    PACHULSKI STANG ZIEHL & JONES LLP


                                            */s/ Colin R. Robinson*
                                            Bradford J. Sandler (Bar No. 4142)
                                            Colin R. Robinson (Bar No. 5524)
                                            Peter J. Keane (Bar No. 5503)
                                            919 North Market Street, 17th Floor
                                            Wilmington, DE 19801
                                            Telephone:  (302) 652-4100
                                            Facsimile:   (302) 652-4400
                                            Email:  bsandler@pszjlaw.com
                                                     crobinson@pszjlaw.com
                                                     pkeane@pszjlaw.com

                                            *Counsel to Alfred T. Giuliano, Chapter 7 Trustee*

A001595

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
|  | Adv. Proc. No. 20-50548 (CSS) |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, |  |
| Plaintiffs, |  |
| v. |  |
| ART VAN FURNITURE, LLC, et al., |  |
| Defendants. |  |

## CHAPTER 7 TRUSTEE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

Alfred T. Giuliano, the chapter 7 trustee (the "Trustee") of the bankruptcy estates

of Art Van Furniture, LLC, AVF Holding Company, Inc., AVCE, LLC, AVF Holdings I, LLC,

AVF Holdings II, LLC, AVF Parent, LLC, Levin Parent, LLC, Art Van Furniture of Canada,

LLC, AV Pure Sleep Franchising, LLC, AVF Franchising, LLC, LF Trucking, Inc., Sam Levin,

Inc., and Comfort Mattress LLC (collectively, the "Debtors" or the "Defendants") in the above-

captioned adversary proceeding (the "Adversary Proceeding"), hereby objects and responds to

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

A001596

Plaintiffs Todd Stewart and Jennifer Sawle (the "Plaintiffs") *First Set of Interrogatories to Defendants* (the "Interrogatories").

**GENERAL OBJECTIONS**

Each of the following statements and general objections ("General Objections") apply to the Interrogatories, and the Trustee makes its response to the Interrogatories subject to these General Objections:

1.        The Trustee has made a good faith effort to investigate and identify information and documents responsive to the Interrogatories.  The Trustee's discovery, investigation and trial preparation in the Adversary Proceeding, however, are continuing.  The Trustee is a chapter 7 trustee appointed post-conversion of the above-captioned, jointly administered bankruptcy cases from chapter 11 to chapter 7 that has no direct knowledge or involvement in, the affairs of the Debtors that are at issue in the Adversary Proceeding.  In addition, as chapter 7 estates, the Debtors terminated all of their former officers and employees who did have such involvement and/or knowledge.  These responses are based on information presently available to the Trustee and his attorneys.  Accordingly, the Trustee reserves the right (a) to amend, supplement or modify the response to the Interrogatories based on any responses to any discovery requests or subpoenas, including any documents produced in response to such discovery requests or subpoenas, (b) to amend, supplement or modify its response to the Interrogatories based on any further discovery, investigation and trial preparation in the Adversary Proceeding, (c) to amend, supplement or modify its response to the Interrogatories to incorporate or reflect later discovered documents and information to the extent required by law, and (d) to introduce – at deposition, at hearing, at trial or otherwise – any evidence from any source hereafter obtained.

2.        The response to the Interrogatories is provided without waiver of, and with express reservation of, the following: (a) all objections as to competency, relevance, materiality

A001597

and/or admissibility of the response, or the subject matter thereof, as evidence for any purpose in the Adversary Proceeding or any other proceeding; (b) all privileges and other protections, including the attorney-client privilege, work product doctrine and common interest doctrine; (c) all objections as to the confidentiality of any documents; (d) all other objections to the use of the response, or the subject matter thereof, on any ground in the Adversary Proceeding or any other proceeding; and (e) the right to object on any ground at any time to a demand or request for any further response(s) to the Interrogatories, or to any other discovery requests in the Adversary Proceeding.

3.      The Trustee objects to the Interrogatories to the extent they seek the disclosure of confidential, proprietary and/or private information or documents, or the disclosure of information or documents protected from discovery by the attorney-client privilege, the work product doctrine, the common interest doctrine and/or any other applicable privilege or protection. The production of any confidential, proprietary, private, privileged or otherwise protected information or documents in response to the Interrogatories is inadvertent, and is not intended as and shall not be deemed to be a waiver or impairment of any claim of confidentiality, privilege or other applicable protection.

4.      The Trustee objects to the Interrogatories to the extent they conflict with, seek to expand upon, purport to require responses inconsistent with, or purport to impose obligations beyond the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

5.      The Trustee objects to the Interrogatories to the extent they seek information or documents not relevant to any party's claim or defense in the Adversary Proceeding, and/or not proportional to the needs of the Adversary Proceeding.

6.      The Trustee objects to the Interrogatories as unduly burdensome and oppressive to the extent they purport to require unreasonably costly and/or time-consuming measures to locate, review and produce or identify responsive documents or information.

A001598

7.     The Trustee objects to the Interrogatories to the extent they seek the production of documents that are not reasonably or readily available to the Trustee, and/or that are not within his possession, custody or control.

8.     The Trustee objects to the Interrogatories to the extent they seek documents that already have been provided or made available to the Plaintiffs, are otherwise in the possession of the Plaintiffs, are equally or more readily available to the Plaintiffs from other sources, and/or are a matter of public record

9.     The Trustee objects to the time periods of the Interrogatories as not reasonably calculated to lead to the discovery of admissible evidence or not relevant to the nature of this action. The Trustee performed and will continue to perform searches of the Debtors' electronic and email systems that he has access to for the period from January 18, 2020 through and including March 20, 2020 and objects to and will not re-run any searches prior to this date as to do so is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence or not relevant to the nature of this action

## **INTERROGATORIES**

1.     Identify every person who participated in any discussions on behalf of Defendant regarding the decision to wind-down operations beginning on March 5, 2020 and terminate the Plaintiffs and the Putative Class Members.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The Trustee further objects to this Interrogatory on the basis that (a) the term "participated" is vague and ambiguous and (b) the scope of this Interrogatory is overbroad.  Subject to and without waiving the foregoing objections, Gary Fazio, James Ferguson, Gus Glyptis, David Ladd,

Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elsander, David Alexander, Douglas Haber, Catherine Wenger, Robert Levin and Dennis Stogsdill.  The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

   2. Identify every individual who received the "WARN Act Notice" dated March 5, 2020 from Cathrine Wenger, Senior Counsel, that was distributed to employees (attached as Exhibit B to Plaintiffs' First Request for Production of Documents to Defendants), including a) the date received, b) his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**ANSWER**:

   The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

   3. Identify every individual who received the document titled "Termination of Benefits" dated March 19, 2020 (attached as Exhibit C to Plaintiffs' First Request for Production

A001600

of Documents to Defendants), including a) the date received, b) his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**ANSWER:**

       The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

       4.     Identify the total number of employees at each of Debtors' facilities where the March 19, 2020 "Termination of Benefits" (attached as Exhibit C to Plaintiffs' First Request for Production of Documents to Defendants) was distributed.

**ANSWER:**

       The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

       5.     Identify every individual who received the document titled "Memorandum" to "Employees Affected By Closing of Art Van Furniture Stores located at 6500 E 14 Mile Rd,

A001601

Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321" dated March 19, 2020 (attached as Exhibit D to Plaintiffs' First Request for Production of Documents to Defendants), including a) the date received, b) his or her work address or facility to which he or she was assigned, c) the manner of distribution, and d) his or her last day of work.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

6.     Identify the date that drafting of the following documents began and all persons who participated in the drafting of each document:

(a)     Frequently Asked Questions-Store Associates (Art Van, Levin and Wolf Closing), (attached as Exhibit E to Plaintiffs' First Request for Production of Documents to Defendants);

(b)     Meeting Instructions to Art Van and Wolf Leaders (WARN Announcement/Talking Points) dated March 5, 2020 (attached as Exhibit F to Plaintiffs' First Request for Production of Documents to Defendants);

A001602

      (c)     "Frequently Asked Questions #1/ Benefits Contacts" (attached as Exhibit G to Plaintiffs' First Request for Production of Documents to Defendants); and

      (d)     "Important Company Announcement, Memorandum to All Team Members" dated March 5, 2020 (attached as Exhibit A to Plaintiffs' First Request for Production of Documents to Defendants).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory on the basis that (a) the term "participated" is vague and ambiguous and (b) the scope of this Interrogatory is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Gary Fazio, James Ferguson, Gus Glyptis, David Ladd, Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elsander, David Alexander, Douglas Haber, Catherine Wenger, Robert Levin and Dennis Stogsdill. The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

7.     For every meeting held (including in person, telephonically or remotely) with the Plaintiffs and Putative Class Members regarding their terminations, state the date of each meeting, identify every attendee at the meeting, and describe all written communications distributed to employees at the meeting.

A001603

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The Trustee further objects to this Interrogatory on the basis that the scope of this Interrogatory is unduly burdensome and overbroad.  Subject to and without waiving the foregoing objections, the Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

8.      Identify every employee who signed the WARN Act Notice Receipt Acknowledgment (attached as Exhibit H to Plaintiffs' First Request for Production of Documents to Defendants) and produce all lists of attendees, sign-in sheets, scripts, memos, summaries, and compilations of such lists.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The Trustee further objects to this Interrogatory on the basis that the scope of this Interrogatory is unduly burdensome and overbroad.  Subject to and without waiving the foregoing objections, the Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

9.      State whether Defendants consulted with legal counsel regarding the drafting of Exhibits A-H to Plaintiffs' First Request for Production of Documents to Defendants

A001604

and, if the answer is in the affirmative, identify the name of such legal counsel, state the date on which each communication occurred and the participants.

**ANSWER:**

       The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, Kirkland & Ellis LLP.  The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

       10.    Identify every address and location where Defendants conducted business operations where the employees did not receive a WARN Notice and state the reason employees there did not receive a WARN Notice.

**ANSWER:**

       The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

       11.    State whether Plaintiffs and the Putative Class Members were paid all earned bonuses including productivity bonuses and variable compensation following their terminations. If the answer is in the negative, please state or produce documents sufficient to

A001605

determine, the amount of each Putative Class Member's accrued but unpaid bonuses and variable compensation.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory on the basis that the scope of this Interrogatory is unduly burdensome and overbroad. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

12. Identify every partner, employee, manager, principal, or executive of Defendants who participated in any discussions leading to the decision to terminate the employment of Plaintiffs and the Putative Class Members.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory on the basis that (a) the term "participated" is vague and ambiguous and (b) the scope of this Interrogatory is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Gary Fazio, James Ferguson, Gus Glyptis, David Ladd, Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elsander, David Alexander, Douglas Haber, Catherine Wenger, Robert Levin and Dennis Stogsdill. The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged

A001606

documents that the Trustee previously produced to the Plaintiffs and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

13.  State in detail why 60 days' notice was not provided to Plaintiffs and the Putative Class Members, and identify at least one officer, director, or manager of Defendants with personal knowledge thereof.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. Subject to and without waiving the foregoing objections, David Ladd. The Trustee further responds to this Interrogatory by reference to the Trustee's *Memorandum in Support of Chapter 7 Trustee's Motion for Summary Judgment* [D.I. 44] that sets forth in detail a response to this Interrogatory.

14.  Identify each and every person who participated in drafting Exhibits A through H to Plaintiffs' First RTP to Defendants, including the dates of his or her participation.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory on the basis that (a) the term "participated" is vague and ambiguous and (b) the scope of this Interrogatory is overbroad. Subject to and without waiving the foregoing objections, Gary Fazio, James Ferguson, Gus Glyptis, David Ladd, Michelle Dolski, Matthew Damiani, Marcelo Podesta, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elsander, David Alexander, Douglas Haber, Catherine Wenger, Robert Levin and

A001607

Dennis Stogsdill.  The Trustee further responds to this Interrogatory, pursuant to Federal Rule of

Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the

Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to*

*Defendants*.

          15.     State in detail the "business circumstances that were not reasonably

foreseeable at the time notice would have been required" as set forth in Defendants' First

Affirmative Defense and identify at least one individual with personal knowledge of these

circumstances.

**ANSWER:**

          The Trustee incorporates the General Objections as though set forth herein.

Subject to and without waiving the foregoing objections, David Ladd.  The Trustee further

responds to this Interrogatory by reference to the Trustee's *Memorandum in Support of Chapter 7*

*Trustee's Motion for Summary Judgment* [D.I. 44] that sets forth in detail a response to this

Interrogatory.

          16.     State every date Defendants conducted a meeting of its boards of directors

during the period March 1, 2019 through June 30, 2020 and, for each date, identify the

participants in the meeting.

**ANSWER:**

          The Trustee incorporates the General Objections as though set forth herein.  The

Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this

Interrogatory and on the basis that this Interrogatory is overbroad and unduly burdensome.

A001608

Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents that the Trustee previously produced to the Plaintiffs and by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

      17.    State the name of each member of Defendants' boards of directors during the period March 1, 2019 through June 30, 2020 and, for each person state the term and professional affiliation.

**ANSWER:**

      The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this Interrogatory. Subject to and without waiving the foregoing objections, Jeff Swenson, Cliff Longley, Alex Smith, Gary A. Van Elsander, David Alexander, and Douglas Haber. The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

      18.    Identify each officer, director, managing director, principal, executive, agent, employee, partner, and managing partner of any party, including, but not limited to, Thomas H. Lee Partners, L.P., who participated in the negotiation and/or decision-making of obtaining financing and/or working capital for Defendants during the period March 1, 2019 through March 19, 2020.

A001609

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory on the basis that the term "participated" is vague and ambiguous. The Trustee further objects to the time period March 1, 2019 through March 19, 2019 set forth in this Interrogatory. The Trustee further responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

        19.     Identify each and every partner, employee, manager, principal or executive of any party, including, but not limited to, Thomas H. Lee Partners, L.P. who negotiated on behalf of Defendants to enter into contracts with lenders to provide operating capital to the Facilities during the March 1, 2019 through March 19, 2020.

**ANSWER:**

        The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the time period March 1, 2019 through March 19, 2020 set forth in this Interrogatory. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

        20.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and sources of capital

A001610

including investors or prospective investors, and lenders and prospective lenders that occurred regarding efforts to obtain financing for Defendants during the period March 1, 2019 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this Interrogatory and that this Interrogatory is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

21.     Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants and any party regarding any transaction to sell all or parts of Defendants' business or assets during the period March 1, 2019 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this Interrogatory and that this Interrogatory is overbroad and unduly burdensome. Subject to and

A001611

without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to

Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents,

if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of*

*Documents to Defendants*.

       22.    Identify each and every meeting and/or teleconference between all

employees, executive, officers, directors, advisors and agents of Defendants and any party that

occurred regarding efforts to obtain new business for Defendants during the period March 1, 2019

through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants

and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

       The Trustee incorporates the General Objections as though set forth herein.  The

Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this

Interrogatory and that this Interrogatory is overbroad and unduly burdensome.  Subject to and

without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to

Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents,

if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of*

*Documents to Defendants*.

       23.    Identify each and every meeting and/or teleconference between all

employees, executive, officers, directors, advisors and agents of Defendants and any party that

occurred regarding efforts to liquidate Defendants during the period January 1, 2020 through June

A001612

30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

   24. Identify each and every meeting and/or teleconference between all employees, executive, officers, directors, advisors and agents of Defendants at which the impact of COVID-19 was discussed January 1, 2020 through June 30, 2020 and, for each such meeting and/or teleconference, identify the participants and date that such meeting(s) and/or teleconference(s) occurred.

**ANSWER:**

   The Trustee incorporates the General Objections as though set forth herein. The Trustee further objects to this Interrogatory as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

A001613

25.     Identify (or produce documents sufficient to identify) all capital investments, loans and guarantees made to Defendants from March 1, 2019 through June 30, 2020.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The Trustee further objects to the time period March 1, 2019 through June 30, 2020 set forth in this Interrogatory and that this Interrogatory is overbroad and unduly burdensome.  Subject to and without waiving the foregoing objections, the Trustee responds to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), by reference to the documents and pleadings publicly available in the above-captioned chapter 11 bankruptcy case and the responsive, non-privileged documents, if any, that the Trustee will produce in response to the Plaintiffs' *First Request for Production of Documents to Defendants*.

26.     State in detail the facts and legal grounds and identify the witnesses and identify (or produce) the documents on which Defendants intend to rely to support each of their affirmative defenses to Plaintiffs' Complaint, as set forth in the Answer dated December 10, 2020 (ECF 25).

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The Trustee objects to this Interrogatory on the grounds that it is premature because discovery in this action has not been completed and the Trustee has not made any determination as to what facts, legal grounds, witnesses and documents he will rely on at trial.

A001614

27.      Identify all documents that Defendants intend to utilize at trial in this

matter.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The

Trustee objects to this Interrogatory on the grounds that it is premature because discovery in this

action has not been completed and the Trustee has not made any determination as to what

documents he will rely on at trial.

28.      Identify all witnesses that Defendants intend to call at trial in this matter.

**ANSWER:**

The Trustee incorporates the General Objections as though set forth herein.  The

Trustee objects to this Interrogatory on the grounds that it is premature because discovery in this

action has not been completed and that the Court has not yet set a date for the submission of

witness lists.  The Trustee will timely provide a witness list.

Dated:  December 1, 2021                         PACHULSKI STANG ZIEHL & JONES LLP

                                                 */s/ Colin R. Robinson*
                                                 Bradford J. Sandler (Bar No. 4142)
                                                 Colin R. Robinson (Bar No. 5524)
                                                 Peter J. Keane (Bar No. 5503)
                                                 919 North Market Street, 17th Floor
                                                 Wilmington, DE 19801
                                                 Telephone:  (302) 652-4100
                                                 Facsimile:  (302) 652-4400
                                                 Email:  bsandler@pszjlaw.com
                                                        pkeane@pszjlaw.com

                                                 *Counsel to Alfred T. Giuliano, Chapter 7 Trustee*

## <u>VERIFICATION</u>

I, the undersigned, declare as follows:

I am the chapter 7 trustee (the "<u>Trustee</u>") of the Debtors. I have read the foregoing responses to the Interrogatories and understand the contents thereof. Based on my role as the Trustee, I am informed and believe that such responses are true and correct as of the date hereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 1, 2021.

*/s/ Alfred T. Giuliano*
Alfred T. Giuliano, solely in his capacity
as chapter 7 trustee of the Debtors

# EXHIBIT 2

A001617

AVF Holding Company, Inc.

Board of Directors Update Call

April 2, 2020

A Meeting of the Board of Directors of AVF Holding Company, Inc. convened telephonically at 4:00 P.M. EST on April 2, 2020.

| Person | April 2, 2020 |
|---|---|
| **DIRECTORS** | |
| Jeff Swenson, THL | Present |
| Cliff Longley, THL | Present |
| Doug Haber, THL | Not Present |
| **MANAGEMENT** | |
| David Ladd, AVF CFO | Present |
| Jim Ferguson, AVF COO | Present |
| Mike Zambricki, AVF GC | Present |
| **GUESTS** | |
| Dennis Stogsdill, A&M | Present |
| Nicole Greenblatt, K&E | Present |
| Greg Werkheiser, Benesch | Present |
| Mike Barrie, Benesch | Present |
| Janie McDonough, THL | Present |

## ORDER OF BUSINESS

I.  **Call to Order**

Two Board members being present constituted a quorum and declaring the meeting to be duly constituted for the transaction of business, Mr. Cliff Longley called the meeting to order at 4:00 P.M. on April 2, 2020.

II.  **Executive Summary**

Given the ongoing, time-sensitive developments regarding the state of the business and the hearings, the Board convened for an update from legal counsel (Benesch) and discussed key updates █████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████

**III.**     <u>**Funding of Payroll**</u>

████████████████████████████████████████████████████

████████████████████████████████████████████

**IV.**     <u>**Healthcare Coverage**</u>

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

**V.**     <u>**Credit Card Processors**</u>

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

**VI.**

██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████

**VII.**     <u>**Motion to Adjourn**</u>

Mr. Longley called for a motion to adjourn the meeting. Upon motion duly made and seconded, the motion was unanimously approved and the called meeting of the Board of Directors adjourned.

The undersigned being the duly appointed Secretary, certifies the minutes above are a true and correct copy duly recorded and adopted at a duly called meeting of the Board of Directors thereof convened and held in accordance with applicable law and governance documents of the Company and that such resolutions are now in full force and effect.

Respectfully submitted this 2nd day of April, 2020

Cliff Longley, Acting Secretary

A001619

# EXHIBIT 3

A001620

No. 21-11911

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELVA BENSON,

Plaintiff-Appellee,

v.

ENTERPRISE LEASING COMPANY OF ORLANDO, LLC;
& ENTERPRISE HOLDINGS, INC.,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE AND AFFIRMANCE**

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

MICHAEL S. RAAB
GERARD SINZDAK
  *(202) 514-0718*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7242*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, the undersigned counsel of record certifies that the Certificate of Interested Persons contained in Appellee's Response Brief is complete, other than the following additions:

Academy of Florida Management Attorneys

Boynton, Brian M., U.S. Department of Justice, Civil Division

Fiore, Kristen M., Akerman LLP

Kline, Arlene K., Akerman, LLP

Miscimarra, Philip M., Morgan Lewis & Bockius LLP

National Retail Federation

Raab, Michael S., U.S. Department of Justice, Civil Division

Restaurant Law Center

Sinzdak, Gerard J., U.S. Department of Justice, Civil Division

U.S. Chamber of Commerce

As far as the undersigned is aware, no publicly traded corporation has an interest in the outcome of this appeal.

*/s/ Gerard Sinzdak*
Gerard Sinzdak
Attorney for the United States

Dated:  September 17, 2021

A001622

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF INTEREST OF AMICUS CURIAE............................1

STATEMENT OF THE ISSUE.........................................................................1

STATEMENT OF THE CASE..........................................................................2

    A. Statutory and Regulatory Background.................................................2

    B. District Court Proceedings.................................................................4

SUMMARY OF ARGUMENT.........................................................................5

ARGUMENT................................................................................................7

THE DEPARTMENT OF LABOR'S REASONABLE INTERPRETATION OF
THE NATURAL DISASTER EXCEPTION'S CAUSATION REQUIREMENT
IS ENTITLED TO DEFERENCE.......................................................................8

    A.    The statutory phrase "due to" is ambiguous ..................................9

    B.    The Department of Labor's interpretation is at least reasonable.............17

CONCLUSION ...........................................................................................21

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE
PROCEDURE 32(A)

CERTIFICATE OF SERVICE

A001623

# TABLE OF AUTHORITIES

**Cases:**                                                                                         **Page(s)**

*Adams v. Director, OWCP,*
    886 F.2d 818 (6th Cir. 1989) ................................................................. 9, 10

*Alliance of Nonprofit Mailers v. Postal Regulatory Comm'n,*
    790 F.3d 186 (D.C. Cir. 2015) ............................................................. 9, 17

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ........................................................................ 12, 15

*Burrage v. United States,*
    571 U.S. 204 (2014) ................................................................................... 15

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.,*
    295 F.3d 59 (1st Cir. 2002) ....................................................................... 12

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.,*
    15 F.3d 1275 (5th Cir. 1994) .................................................................. 6, 11

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ..................................................................................... 7

*Crose v. Humana Ins. Co.,*
    823 F.3d 344 (5th Cir. 2016) ...................................................................... 10

*General Refractories Co. v. First State Ins. Co,*
    855 F.3d 152 (3d Cir. 2017) ....................................................................... 12

*Horton v. Reliance Standard Life Ins. Co.,*
    141 F.3d 1038 (11th Cir. 1998) .................................................................. 13

*Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.,*
    173 F.3d 175 (3d Cir. 1999) .............................................................10, 11, 12

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995) ..................................................................................... 14

A001624

*Kimber v. Thiokol Corp.*,
196 F.3d 1092 (10th Cir.1999) ......................................................... 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ......................................................................... 13

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
505 F.2d 989 (2d Cir. 1974) ............................................................ 10

*Paroline v. United States*,
572 U.S. 434 (2014) .................................................................... 13, 14

*Robers v. United States*,
572 U.S. 639 (2014) ......................................................................... 15

*Samantar v. Yousuf*,
560 U.S. 305 (2010) ......................................................................... 13

*San Antonio Sav. Ass'n v. Comm'r*,
887 F.2d 577 (5th Cir. 1989) ........................................................... 11

*Sides v. Macon Cty Greyhound Park, Inc.*,
725 F.3d 1276 (11th Cir. 2013) ........................................... 7, 8, 11, 17

*Smith v. BellSouth Telecomms., Inc.*,
273 F.3d 1303 (11th Cir. 2001) .......................................................... 8

*United States v. George*,
949 F.3d 1181 (9th Cir. 2020) .......................................................... 12

*United States v. Monzel*,
641 F.3d 528 (D.C. Cir. 2011) .......................................................... 15

*University of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ......................................................................... 15

*U.S. Postal Serv. v. Postal Regulatory Comm'n*,
640 F.3d 1263 (D.C. Cir. 2011) .......................................................... 9

A001625

**Statutes:**

Worker Adjustment and Retraining Notification Act (WARN Act):

29 U.S.C. § 2101 *et seq.* ................................................................................1

29 U.S.C. § 2102(a) ............................................................................. 2, 7, 11

29 U.S.C. § 2102(b) ........................................................................................2

29 U.S.C. § 2102(b)(1) ....................................................................................2

29 U.S.C. § 2102(b)(2)(A) .................................................................. 2, 18, 19

29 U.S.C. § 2102(b)(2)(B) ................................................... 1, 3, 5, 7, 9, 17

29 U.S.C. § 2102(b)(3) .............................................................................. 3, 18

29 U.S.C. § 2104(a)(1)-(2) ..............................................................................2

29 U.S.C. § 2104(a)(3) ....................................................................................2

29 U.S.C. § 2107(a) .................................................................................... 1, 3

**Regulations:**

20 C.F.R. § 639.1 ..........................................................................................17

20 C.F.R. § 639.1(a) ......................................................................................11

20 C.F.R. § 639.9 ....................................................................................... 1, 3

20 C.F.R. § 639.9(b)(1) ..................................................................................18

20 C.F.R. § 639.9(c) ....................................................................... 4, 7, 8, 17

20 C.F.R. § 639.9(c)(4) ..................................................................................18

**Rule:**

Fed. R. App. P. 29(a)(2) ..................................................................................1

**Legislative Materials:**

134 Cong. Rec 16,122 (1988) .......................................................................16

134 Cong. Rec. S8689 (daily ed. June 28, 1988) ................................... 16, 20

H.R. Rep. No. 100-285 (1987) ..................................................................17-18

A001626

**Other Authorities:**

*Due to*:

    Merriam Webster Online Dictionary (Aug. 2021) ...........................................................14

    Oxford English Dictionary Online (June 2021)...........................................................14

    The Oxford English Dictionary 1105 (2d ed. 1989) ....................................................14

A001627

## CONCISE STATEMENT OF INTEREST OF AMICUS CURIAE

The Secretary of Labor administers the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.* Congress vested the Secretary with broad authority to "prescribe such regulations as may be necessary to carry out" the WARN Act. *Id.* § 2107(a). Pursuant to that authority, the Secretary promulgated 20 C.F.R. § 639.9, which, among other things, identifies the circumstances under which the WARN Act's "natural disaster" exception, 29 U.S.C. § 2102(b)(2)(B), excuses an employer from providing employees with the full 60 days' notice of an impending mass layoff. The district court adopted an interpretation of the exception that is consistent with the Secretary's regulation. Defendants-appellants urge this Court to adopt an interpretation that is at odds with the Secretary's regulation. The Secretary has a strong interest in defending its regulations and in the correct interpretation and application of the WARN Act. The United States therefore files this amicus brief to aid the Court in its deliberations. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF THE ISSUE

Whether, in accordance with the Secretary's regulation, the WARN Act's natural disaster exception applies where a mass layoff was the "direct result" of a natural disaster, or, as defendants urge, the exception applies where a natural disaster was merely a "but for" cause of a mass layoff.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

The WARN Act requires businesses that employ 100 or more employees to provide employees and state and local government authorities with 60 days' notice of a forthcoming "plant closing" or "mass layoff." *See* 29 U.S.C. § 2102(a). An employer who fails to give the required notice may be liable to each employee for back pay and benefits for each day that the required notice was not supplied, up to 60 days. *See id.* § 2104(a)(1)-(2). An employer is also subject to civil penalties for failing to provide local government officials with the required notice. *See id.* § 2104(a)(3).

The Act specifies three circumstances under which an employer may provide less than the required 60 days' notice *See* 29 U.S.C. § 2102(b). The first, known as the "faltering business" exception, *id.* § 2102(b)(1), is not relevant here. The second, known as the "unforeseeable business circumstances" exception, provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

*Id.* § 2102(b)(2)(A).

The third, known as the "natural disaster" exception, provides:

> No notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States.

2

*Id.* § 2102(b)(2)(B).  The Act further provides that "[a]n employer relying on this subsection [(setting out the three exceptions that allow reduction of the notice period)] shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."  *Id.* § 2102(b)(3).

Congress tasked the Secretary of Labor with administering the WARN Act.  Specifically, Congress authorized the Secretary of Labor to "prescribe such regulations as may be necessary to carry out" the Act.  29 U.S.C. § 2107(a).  Pursuant to that authority, the Secretary promulgated a regulation interpreting the Act's three exceptions to its notice requirement.  *See* 20 C.F.R. § 639.9.  With respect to the Act's natural disaster exception, the Department of Labor's regulation provides:

> The "natural disaster" exception in section 3(b)(2)(B) of WARN applies to plant closings and mass layoffs due to any form of a natural disaster.
>
> (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
>
> (2) To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.
>
> (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in § 639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.
>
> (4) Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.

A001630

*Id.* § 639.9(c).

## B. District Court Proceedings

Plaintiff is a former employee of the rental-car company Enterprise Leasing Company of Orlando, LLC, a subsidiary of Enterprise Holdings, Inc. (collectively, Enterprise). Doc. 77, p. 2. In April 2020, Enterprise initiated a mass layoff at its Orlando and Tampa airport locations. *Id.* According to plaintiff, she and other affected employees were given little or no advance notice of the layoff. *Id.* Plaintiff filed a class action complaint alleging WARN Act violations. Enterprise moved to dismiss the complaint. *Id.* As relevant here, Enterprise argued that it was not required to provide notice of the layoff under the WARN Act's natural disaster exception, citing the COVID-19 pandemic as the relevant disaster. *Id.* at 10.

The district court denied Enterprise's motion. Doc. 77, pp. 10-12. The court assumed that the pandemic was a natural disaster. *Id.* at 10. Citing the Department of Labor's regulation, the court held that the natural disaster exception was nonetheless inapplicable because the complaint did not allege that the layoff was the "*direct result*" of the pandemic, as the exception required. *Id.* Instead, the complaint alleged a "more tenuous," indirect connection between the pandemic and the layoff: the pandemic led to a dramatic reduction in travel, which led to a reduction in demand for rental cars, which led to the layoff. *Id.* The court emphasized that this "isn't a situation where, for example, a factory was destroyed overnight by a massive flood." *Id.* at 11.

4

A001631

Although the court found the natural disaster exception inapplicable, it noted that the "unforeseeable business circumstances" exception might apply. Doc. 77, pp. 11, 12. Because a factual dispute over the application of that exception existed, the court denied Enterprise's motion to dismiss on that alternative ground. *Id.* at 12.

Upon Enterprise's request, the district court certified for interlocutory review its order denying Enterprise's motion to dismiss. Doc. 77, pp. 12-17. The court found that a controlling question of law existed as to "causal standard" that "is required to establish that a plant closing or mass layoff is 'due to any form of natural disaster' under the WARN Act's natural disaster exception." *Id.* at 15.

This Court subsequently granted Enterprise's petition for interlocutory review.

## SUMMARY OF ARGUMENT

With the goal of providing workers and state and local government with time to prepare for a mass layoff, the WARN Act requires employers to provide at least 60 days' notice of an impending layoff. The Act provides three circumscribed exceptions to the 60-day notice requirement. One such exception is when a mass layoff is "due to" a natural disaster. 29 U.S.C. § 2102(b)(2)(B). The Secretary of Labor promulgated a regulation interpreting this natural disaster exception as applying where a layoff is the "direct result" of a natural disaster. Because the Secretary's interpretation is, at a minimum, reasonable, it is entitled to deference.

In requiring that a mass layoff be the "direct result" of a natural disaster, the Department of Labor's regulation comports with the text and purpose of the WARN

5

A001632

Act.  The Act's exceptions to its foundational 60-days' notice requirements are to be

"narrowly construed."  *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't*

*Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir. 1994).  The Secretary's "direct result"

requirement appropriately cabins the reach of the natural disaster exception.  It

ensures that an employer cannot evade the Act's advance notice requirements simply

because a layoff has an attenuated connection to a natural disaster, while at the same

time providing relief to employers who are forced to close a plant or layoff a large

number of employees as a direct result of a natural disaster.

The Secretary's interpretation also follows the Act's text and structure.  In

specifying that "no notice" shall be required where a layoff is due to a natural disaster,

Congress understood the exception as applying where advance notice is infeasible as a

general matter.  The Secretary's interpretation accords with that intent.  Where a

natural disaster directly causes a layoff—such as where a flood destroys an employer's

place of business—advance notice of the layoff is not likely to be practicable.  Where

a natural disaster indirectly leads to a layoff—such as where a disaster causes a

reduction in demand for an employer's product—some amount of advance notice is

likely to be practicable.

The Secretary's interpretation also harmonizes the natural disaster exception

and the Act's unforeseeable business circumstances exception.  As the Department of

Labor's regulation expressly recognizes, the unforeseeable business circumstances

exception may apply where a natural disaster leads indirectly to a layoff.  By

A001633

interpreting the natural disaster exception to apply where a layoff is the direct result of a natural disaster, the Secretary ensured that the natural disaster exception works in concert with the unforeseeable business circumstances exception and does not nullify it in cases where an unforeseeable business circumstance, not a natural disaster, is the direct cause of a mass layoff.

## ARGUMENT

The WARN Act requires most employers to provide 60 days' notice of a forthcoming mass layoff or plant closure. *See* 29 U.S.C. § 2102(a). The Act provides an exception to that requirement where the "plant closing or mass layoff is due to any form of natural disaster." *Id.* § 2102(b)(2)(B). Pursuant to its congressionally delegated authority, the Department of Labor issued a regulation interpreting the ambiguous phrase "due to any form of a natural disaster" to require that the mass layoff or plant closure be the "direct result" of a natural disaster. 20 C.F.R. § 639.9(c). The Department of Labor's interpretation is consistent with the natural disaster exception's text, context, and purpose. The Secretary's interpretation is the most natural reading of the statute and is, at a minimum, a reasonable one. The regulation is therefore entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *See Sides v. Macon Cty Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) ("Where there is statutory ambiguity we defer to the interpretation of the WARN Act by the agency charged with its implementation, the Department of Labor (DOL).").

7

## THE DEPARTMENT OF LABOR'S REASONABLE INTERPRETATION OF THE NATURAL DISASTER EXCEPTION'S CAUSATION REQUIREMENT IS ENTITLED TO DEFERENCE

To determine whether an agency's interpretation of a statute it is tasked with administering is entitled to deference, courts follow the familiar two-step framework set forth in *Chevron*. *See Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1307 (11th Cir. 2001). At step one, this Court asks "whether Congress has directly spoken to the precise question at issue." *Id.* If "the will of Congress is clear from the statute itself, [the Court's] inquiry ends." *Id.* If the statute is silent or ambiguous with respect to the specific issue, this Court "next ask[s] whether the agency's construction of the statute is reasonable." *Id.* If the agency's construction of an ambiguous statute is reasonable, a court must defer to it. *Sides*, 725 F.3d at 1284. A "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Smith*, 273 F.3d at 1307.

The Secretary's regulation interpreting the natural disaster exception's causation requirement satisfies both criteria. The statutory phrase requiring that a mass layoff be "due to" a natural disaster is ambiguous, and the Secretary reasonably concluded that the natural disaster exception applies where a mass layoff is the "direct result" of a natural disaster, such as where a flood destroys an employer's plant. *See* 20 C.F.R. § 639.9(c). Accordingly, the regulation is entitled to deference. *See Sides*, 725 F.3d at 1284.

A001635

**A.      The statutory phrase "due to" is ambiguous.**

In requiring that a mass layoff be "due to" a natural disaster in order for the natural disaster exception to apply, 29 U.S.C. § 2102(b)(2)(B), Congress did not unambiguously define the required causal connection between the layoff and the natural disaster.  To the contrary, as numerous courts have recognized,

> [t]he phrase "due to" is ambiguous. The words do not speak clearly and unambiguously for themselves.  The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other.

*U.S. Postal Serv. v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1268 (D.C. Cir. 2011) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir.1999)); *see also Adams v. Director, OWCP*, 886 F.2d 818, 821 (6th Cir.1989).  Because the scope of the natural disaster exception's "due to" causation standard is ambiguous, "Congress left it to the [Secretary] to determin[e] how closely" the connection between the natural disaster and the layoff must be to trigger the exception.  *Alliance of Nonprofit Mailers v. Postal Regulatory Comm'n*, 790 F.3d 186, 193 (D.C. Cir. 2015).  For the reasons explained *infra* Part B, the Secretary reasonably concluded that the layoff must be the "direct result" of the natural disaster.

Enterprise contends that the phrase "due to" unambiguously refers only to "but for" causation and does not incorporate a proximate cause requirement, such as the Secretary's "direct result" standard.  Enterprise Br. 11-26.  Enterprise cites no case in which a court of appeals has concluded that the phrase "due to" is

9

A001636

unambiguous and refers solely to "but for" causation.  Enterprise, in particular, fails to identify any such cases (let alone a uniform collection of cases) interpreting "due to" in the limited manner it proposes in the years predating the enactment of the WARN Act, such that Congress might be presumed to have adopted that construction.  Moreover, as noted above, numerous courts have recognized that the phrase "due to" is ambiguous.  *See supra* p. 9.  One court did so in a decision roughly contemporaneous with the enactment of the WARN Act, underscoring that phrase lacked a settled meaning during the relevant time period.  *See Adams*, 886 F.2d at 821.

In fact, in certain contexts, courts have "concluded that 'due to' should be read as *requiring* a proximate cause analysis."  *Crose v. Humana Ins. Co.*, 823 F.3d 344, 350 (5th Cir. 2016) (emphasis added); *see also Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1006 (2d Cir. 1974) (stating that the phrase "due to or resulting from" "clearly refers to . . . proximate cause").  Enterprise's contention that Congress understood the phrase "due to" as unambiguously requiring only "but for" causation cannot be squared with precedent.

Enterprise's interpretation of the natural disaster exception's causation requirement is also at odds with the exception's statutory context.  Enacted in "response to the extensive worker dislocation that occurred in the 1970s and 1980s," *Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999), the WARN Act requires employers to provide workers, that state dislocated worker office, and the chief elected official of the relevant local

10

A001637

government with notice of an impending mass layoff or plant closing, 29 U.S.C.

§ 2102(a).  The Act is thus designed to ensure that workers have sufficient time "to

adjust to the prospective loss of employment, to seek and obtain alternative jobs and

. . . to enter skill training or retraining that will allow these workers to successfully

compete in the job market."  *Sides*, 725 F.3d at 1281 (quoting 20 C.F.R. § 639.1(a));

*Hotel Employees*, 173 F.3d at 182 ("The thrust of WARN is to give fair warning in

advance of prospective plant closings.").  The Act is likewise designed to provide state

and local government agencies with advance notice of layoff or plant closure so those

entities may timely prepare and initiate worker outreach and other support programs.

*See* 20 C.F.R. § 639.1(a).[1]  Because the WARN Act's exceptions to its notice

requirements run counter to the Act's fundamental design, they are "narrowly

construed."  *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*,

15 F.3d 1275, 1282 (5th Cir. 1994); *see also San Antonio Sav. Ass'n v. Comm'r*, 887 F.2d

577, 586 (5th Cir. 1989) (noting the "general principle of narrow construction of

exceptions").

     Enterprise's interpretation, by contrast, would improperly create an exception

to the Act's notice requirement that is potentially expansive in scope.  The "but-for"

---

[1] Notice to the state dislocated worker unit and the local government allows those bodies to prepare services for the soon-to-be laid off workers.  Those services, which are funded in part by the Department of Labor, include rapid response programs, job training, job search support, and career counseling.  *See* https://www.dol.gov/agencies/eta/workforce-investment/dislocated-workers

A001638

causation standard "can be a sweeping standard." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020); *see also United States v. George*, 949 F.3d 1181, 1187 (9th Cir. 2020) ("But-for causation is a relatively undemanding standard."). "'[B]ut for' events can be very remote," *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F.3d 59, 65 (1st Cir. 2002), and may contribute only modestly to the end result, *General Refractories Co. v. First State Ins.* Co, 855 F.3d 152, 161 (3d Cir. 2017) ("'But for' causation 'is a *de minimis* standard of causation, under which even the most remote and insignificant force may be considered the cause of an occurrence.'"). Thus, if "but for" causation is all the WARN Act's natural disaster exception requires, an employer may be excused from providing 60 days' advance notice of a layoff even in circumstances where the relevant natural disaster occurred months earlier, its effects on the employer's business are modest and were known to the employer for a significant period of time, and the employer could readily have provided notice of the forthcoming layoff. Such a potentially sweeping loophole is inconsistent with the statute's text and purpose, and could not have been what Congress intended. *See, e.g.*, *Hotel Employees*, 173 F.3d at 182 (concluding that government-ordered plant closings do not exempt employers from the WARN Act's notice requirements because, among other things, Congress intended the WARN Act to apply whenever an employer knows of an impending layoff, regardless of its cause).

Enterprise's interpretation of the exception's causation requirement is also at odds with other principles of statutory interpretation. Congress is "understood to

A001639

legislate against a background of common-law . . . principles." *Samantar v. Yousuf*, 560 U.S. 305, 320-21 & n.13 (2010). "Thus, where a common-law principle is well established[,] . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.").

The "requirement of proximate causation" is a "venerable" and "well established" common-law principle that Congress is presumed to incorporate into causation requirements. *Lexmark*, 572 U.S. at 132; *see also id.* (citing cases in which the Court has presumed that Congress intended to incorporate a proximate-cause requirement); *Paroline v. United States,* 572 U.S. 434, 446 (2014) ("Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one.") (citing cases). Congress's use of the general phrase "due to" in describing the natural disaster exception's causal component does not in any way indicate Congress's intent to negate the traditional common-law proximate-cause requirement. Far from running contrary to Congress's statutory purpose in enacting the WARN Act, a proximate-cause requirement furthers Congress's intent by appropriately cabining the circumstances in which an employer may evade the Act's 60-day notice requirement.

13

Enterprise gets the law backwards when it suggests that Congress could have incorporated a proximate causation requirement by including phrases like "directly" or "primarily" in the statutory text. Enterprise Br. 18-19. Under settled principles of statutory construction, Congress is presumed to adopt proximate causation unless it states otherwise. It is not presumed to exclude proximate causation unless it expressly adopts it. As the Supreme Court has emphasized, it regularly finds a "proximate-cause requirement built into . . . statute[s] that did not expressly impose one." *Paroline*, 572 U.S. at 446.

In asserting that the statutory phrase "due to" incorporates only "but for" causation, Enterprise notes that "due to" is synonymous with "because of" and "resulting from" and then cites cases interpreting "because of" and "resulting from" to incorporate "but for" causation. Enterprise Br. 12-15. Enterprise's argument is unavailing. Dictionary definitions of "due to" do not clarify its ambiguity. For example, "due to" is synonymous not only with "because of" and "results from," but also with phrases such as "caused by" and "as a result of." *See, e.g.*, *Due to*, The Oxford English Dictionary 1105 (2d ed. 1989) ("due to" means "caused by"); *Due to*, Oxford English Dictionary Online (June 2021) ("caused by"; "as a result of"); *Due to*, Merriam Webster Online Dictionary (Aug. 2021) ("as a result of"). Courts have regularly interpreted such phrases as incorporating proximate causation. *See, e.g.*, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) ("The Act uses the phrase 'caused by,' which more than one Court of Appeals has read as

14

A001641

requiring what tort law has traditionally called 'proximate causation.'"); *Robers v. United States*, 572 U.S. 639, 645 (2014) ("as a result of" denotes proximate cause); *United States v. Monzel*, 641 F.3d 528, 536 (D.C. Cir. 2011) ("By defining 'victim' as a person harmed 'as a result of' the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused."); *see also* Enterprise Br. 25 (conceding that "caused by" "refers to proximate, not but-for, causation"). Enterprise's emphasis on the fact that "due to" is synonymous with "as a result of" thus, if anything, undermines its argument that "due to" does not incorporate proximate causation. *See* Enterprise Br. 15-16.

Enterprise also over-reads the cases that have concluded that the phrases "because of" and "results from" incorporate "but for" causation. While those cases stand for the proposition that "because of" or "results from" incorporate the traditional "but for" causation requirement, they did not hold that "because of" necessarily excludes proximate causation, "but for" causation's traditional companion. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) ("The law has long considered causation a hybrid concept, consisting of two constituent parts: actual [or 'but-for'] cause and legal [or 'proximate'] cause."). In *Burrage*, for example, the Supreme Court expressly declined to reach the question whether the relevant statute imposed a proximate cause requirement in addition to a "but for" requirement. 571 U.S. at 210. In *Bostock*, 140 S. Ct. at 1739, and *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court similarly addressed only the question whether

15

the relevant statute incorporated a "but for" causation requirement.  Neither decision mentions proximate causation, let alone addresses the question whether Congress intentionally overrode the traditional proximate cause requirement.

Finally, Enterprise argues that it is significant that Congress considered a proposed version of the natural disaster exception that would have described the exception as applying when a layoff is "due, *directly or indirectly*, to any form of natural disaster," but ultimately enacted the exception without the "directly or indirectly" language.  Enterprise Br. 36-37 (quoting 134 Cong. Rec 16,122-23 (1988)).  The Act's legislative history suggests the language may have been dropped due to confusion over the meaning of the terms "directly" and "indirectly."  *See, e.g.*, 134 Cong. Rec. S8689 (daily ed. June 28, 1988) (remarks of Sen. Dole) (explaining that the language was removed because "there was some question what 'directly' means and what 'indirectly' means"); *id.* at S8687 (remarks of Sen. Metzenbaum) (objecting to the inclusion of "indirectly" because " 'indirectly' is such an amorphous kind of term you cannot tie it down"); *id.* at S8689 (remarks of Sen. Dole) (agreeing that the removal of "indirectly" was a "good" suggestion given its amorphous character).  The most logical inference to be drawn from the failed amendment is that Congress chose the ambiguous phrase "due to" on the understanding that the Secretary of Labor and courts would establish the contours of the exception's causation requirement.

16

**B.    The Department of Labor's interpretation is at least reasonable.**

The Secretary of Labor reasonably interpreted the WARN Act's natural disaster exception as applying where a mass layoff or plant closure is the "direct result" of a natural disaster. *See* 20 C.F.R. § 639.9(c). The Secretary's interpretation is consistent with the Act's "central focus," *Alliance of Nonprofit Mailers*, 790 F.3d at 193, on ensuring that workers and state and local governments receive adequate notice of a forthcoming mass layoff, so that they may prepare for that eventuality, *see Sides*, 725 F.3d at 1281; 20 C.F.R. § 639.1. By requiring a direct connection between the natural disaster and the mass layoff, the Secretary's interpretation ensures that the exception will not permit employers to rely on the lingering or remote effects of a natural disaster to evade the WARN Act's notice requirements where notice would have been practicable. At the same time, it provides relief to employers where a natural disaster has a direct and immediate adverse impact on an employer's business, such that an employer had to immediately shut its plant or layoff many of its employees.

The Department of Labor's regulation also accords with the statute's text. The WARN Act states that "[n]o notice . . . shall be required" where a mass layoff is due to a natural disaster. 29 U.S.C. § 2102(b)(2)(B). That Congress specified that "no notice" is required under the natural disaster exception indicates that Congress understood the exception as applying in circumstances where supplying advance notice of a mass layoff or plant closure is likely to be impracticable. *See* H.R. Rep. No.

A001644

100-285, at 34 (1987) (suggesting that a precursor to the natural disaster exception covered situations where notice was "impossible").

The regulation's "direct result" requirement is consistent with that congressional intent. Where a layoff results directly from a natural disaster, such as where a natural disaster destroys the employer's factory or place of business in a short period of time, advance notice of a layoff is likely to be impracticable. Conversely, where a natural disaster only indirectly results in a layoff—such as where a natural disaster reduces the demand for an employer's product, eventually leading to a layoff—some amount of notice is likely to be feasible.[2]

The Secretary's interpretation also harmonizes the natural disaster exception with the WARN Act's unforeseeable business circumstances exception. As the Department's regulation recognizes, the Act's unforeseeable business circumstances exception, 29 U.S.C. § 2102(b)(2)(A), covers situations where a natural disaster indirectly causes a layoff by, for example, causing "an unanticipated and dramatic major economic downturn" or a "sudden, dramatic, and unexpected" loss of business for the employer. 20 C.F.R. § 639.9(b)(1); *see also id.* § 639.9(c)(4) (emphasizing that "[w]here a plant closing or mass layoff occurs as an indirect result of a natural disaster, . . . the 'unforeseeable business circumstance' exception . . . may be applicable"). By

---

[2] In 29 U.S.C. § 2102(b)(3), Congress required employers "relying on" any of the Act's three exceptions, including the natural disaster exception, to "give as much notice as is practicable." Ambiguity therefore exists over whether an employer must provide notice of a layoff when relying on the natural disaster exception.

A001645

requiring that a mass layoff be the "direct result" of a natural disaster, the Secretary ensured that the natural disaster and unforeseeable business circumstances exceptions complement one another and that the unforeseeable business circumstances exception is the properly invoked exception when an unforeseeable business circumstance (such as an unexpected and sudden drop in demand for an employer's services) causes a mass layoff. In other words, the Secretary's interpretation assures that the natural disaster exception does not extend so far that the unforeseeable business circumstances exception is lost whenever a layoff can be traced in some way to a natural disaster.

Differences in the text of the two exceptions lend further support to the Secretary's reading of the interplay between the two. As Enterprise notes (Enterprise Br. 25), Congress used the phrase "caused by" in describing the unforeseeable business circumstances exception's causation standard. *See* 29 U.S.C. § 2102(b)(2)(A). Enterprise then asserts that the phrase "caused by" imposes a narrower, more strict causation standard than "due to." *See* Enterprise Br. 25. The opposite conclusion, however, is far more plausible in context. As explained above, Congress understood the natural disaster exception as applying in a narrow range of circumstances—*i.e.*, where advance notice is generally not practicable. *See supra* pp. 17-18. The Secretary thus sensibly read "due to" as requiring that a layoff be the "direct result" of a natural disaster, while recognizing that a layoff indirectly caused by a natural disaster might be covered by the broader unforeseeable business circumstances exception.

19

Although this Court need not resort to the natural disaster exception's limited legislative history, that history also lends support to the Secretary's interpretation of the exception's causation requirement. The natural disaster exception was added to the WARN Act during a Senate floor debate. *See* 134 Cong. Rec. at S8686–89. As described above, a proposed version of the exception provided that it applied where a layoff was "due, directly or indirectly, to" a natural disaster. *See id.* The WARN Act's primary sponsor, Senator Metzenbaum, objected to the word "indirectly," deeming it too "amorphous" and likely to sweep too broadly. *See id.* at S8687. Ultimately, the Senate agreed to include the amendment without the "directly or indirectly" modifier. Senator Metzenbaum made clear, however, that the exception as enacted was not intended to apply where "notice can be given." *Id.* at S8687. He further emphasized that the exception did not provide "carte blanche" to employers to evade the Act's notice requirements merely because a drought or other natural disaster had "some impact" on the employer's business. *See id.* For the reasons explained above, the Department's "direct result" standard comports with that understanding of the exception, as it limits the exception's reach to situations where a natural disaster has a direct impact on an employer's business and where advance notice of a layoff is likely infeasible.

\* \* \*

The district court correctly concluded, consistent with the Secretary's regulation, that the WARN Act's natural disaster exception applies where a mass

20

layoff is the "direct result" of a natural disaster. Doc. 77, pp. 10-11. The district court further concluded that plaintiff's complaint alleges that the layoff was the direct result of a sudden drop in demand for Enterprise's services and was only an indirect result of the pandemic. The district court's analysis accords with the Secretary's regulation. Its judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

/s/ Gerard Sinzdak
MICHAEL S. RAAB
GERARD SINZDAK
  *(202) 514-0718*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*

SEPTEMBER 2021

A001648

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief was prepared using Microsoft Word 2016 and complies with the type and volume limitations set forth in Rule 32 of the Federal Rules of Appellate Procedure. I further certify that the font used is 14 point Garamond, for text and footnotes, and that the computerized word count for the foregoing brief (excluding exempt material) is 5,227 words.

I further certify that 1) all required privacy redactions have been made; 2) the electronic submission will be an exact copy of the paper copy; and 3) the document is free from viruses and has been scanned by the current version of Symantec Endpoint Protection.

/s/ Gerard Sinzdak
GERARD SINZDAK

A001649

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I also certify that I will file paper copies with the Court, via Federal Express overnight delivery, when the court requests them.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Gerard Sinzdak
GERARD SINZDAK

A001650

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC., *et al.,*[1]<br><br>              Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br>v.<br><br>ART VAN FURNITURE, LLC, et al.,<br><br>              Defendants. | Adv. Pro. No. 20-50548 (CSS) |

## <u>CERTIFICATE OF SERVICE</u>

I, René S. Roupinian, under penalty of perjury, certify the following as true and correct: I am not a party to this action, employed by Raisner Roupinian LLP, and I am over 18 years of age. I hereby certify that I caused true and correct copies of *Plaintiffs' Brief in Opposition to Trustee's Motion for Summary Judgment and Cross-Motion to Defer Ruling, Exhibits 1-3 to Plaintiffs' Brief in Opposition to Trustee's Motion for Summary Judgment and Cross-Motion to Defer Ruling,* and *Plaintiffs Response to Trustee's Statement of Undisputed Facts* and the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

corresponding *Certificate of Service* to be served upon the parties listed below via email as listed

below:

**Service List:**

Bradford J. Sandler
Colin R. Robinson
Peter J. Keane
Beth Levine
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
crobinson@pszjlaw.com
pkeane@pszjlaw.com
blevine@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee for Debtors*

Dated:  December 3, 2021

/s/      *René S. Roupinian*
                        René S. Roupinian

2

A001652