# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

START MAN FURNITURE, LLC, et al.[1]

Chapter 7
Case No. 20-10553 (CTG)
Jointly Administered

| | |
|---|---|
| TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated,<br><br>          Appellants,<br><br>v.<br><br>ALFRED T. GIULIANO, chapter 7 trustee for Debtors Start Man Furniture, LLC, et al.,<br><br>          Appellee. | Civil Action No. 22-cv-00450 (CFC)<br><br>Bankruptcy Case No. 20-10553 (CTG)<br>Bankruptcy Adv. Pro. No. 20-50548 (CTG)<br>Bankruptcy BAP No. 22-00030 |
| ALFRED T. GIULIANO, chapter 7 trustee for Debtors Start Man Furniture, LLC, et al.,<br><br>          Appellant,<br><br>v.<br><br>TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated,<br><br>          Appellees. | Civil Action No. 22-cv-489 (CFC)<br><br>Bankruptcy Case No. 20-10553 (CTG)<br>Bankruptcy Adv. Pro. No. 20-50548 (CTG)<br>Bankruptcy BAP No. 22-00032 |

## <u>CROSS-APPELLEES' RESPONSE BRIEF</u>

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, including Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:  (302)-388-1944
Email:  mjoyce@mjlawoffices.com

René S. Roupinian
Jack A. Raisner
Gail C. Lin
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile:  (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com
Email: gcl@raisnerroupinian.com

*Attorneys for Appellants and Cross Appellees*
*Todd Stewart and Jennifer Sawle, on behalf of themselves and all others*

Dated: July 25, 2022

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE CASE ................................................................................................. 1

   A. Art Van's Operations before the Layoffs .......................................................................... 1

   B. The WARN Action.......................................................................................................... 2

   C. The Bankruptcy Court's Denial of Summary Judgment on the "Liquidating Fiduciary"
     Exception ......................................................................................................................... 3

SUMMARY OF ARGUMENT ............................................................................................... 4

ARGUMENT........................................................................................................................... 5

  I. THE WARN ACT IMPOSES NOTICE OBLIGATIONS ON OPERATING
     BUSINESSES WHEN BEGINNING TO WIND DOWN AND CLOSE .......................... 5

     A. The Statute Applies to "Any" Business Enterprise.................................................... 5

     B. The DOL Regulation and Commentary Ask if the Business is Operating ............. 5

     C. *United Healthcare* Tests Whether Business Operations are "Ongoing" ................ 6

  II. THE BANKRUPTCY COURT PROPERLY DENIED SUMMARY JUDGMENT ON
     THE "LIQUIDATING FIDUCIARY" EXCEPTION ...................................................... 10

     A. The Bankruptcy Court Properly Applied the DOL's Regulation and Commentary
       and *United Healthcare* Decision ............................................................................. 10

     B. Art Van's Commercial Activities Made it a WARN Employer Regardless of the
       Intentions, Preparations, Purposes or Abstractions to Which They Were
       Proximate.................................................................................................................. 12

        1.   DOL Does Not Make an Entity a WARN-Exempt Liquidating Fiduciary
           Simply Because it Engages in its Business Activities to Benefit
           Creditors ........................................................................................................ 13

        2.   Entities are Not Relieved of their WARN Employer Status when they are
           Preparing for a Sale of Goodwill or Because their Operations are "Limited"... 14

     C. No Court Has Expanded the "Liquidating Fiduciary" Exception as Art Van
       Would Because it Would Effectively Undo the WARN Act ................................. 18

CONCLUSION ..................................................................................................................... 21

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bernitsky v. United States*,
   620 F.2d 948 (3d Cir.) ............................................................................................ 17

*Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Loc. 572, Intern. Broth. of
Teamsters, AFL-CIO v. Weslock Corp.*,
   66 F.3d 241 (9th Cir. 1995) ................................................................................... 20

*In re Century City Drs. Hosp.*, LLC,
   No. ADV.LA 09-01101-SB, 2010 WL 6452903 (B.A.P. 9th Cir. Oct. 29, 2010) ................... 19

*In re Izzi*,
   295 B.R. 754 (E.D. Pa. 2003) ............................................................................... 17

*In re Jamesway Corp.*, No.
   95 B 44821 (JLG),1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ................................ 18

*In re MF Glob. Holdings Ltd.*,
   481 B.R. 268 (Bankr. S.D.N.Y. 2012) ................................................................... 18

*In re World Mktg. Chicago, LLC*,
   564 B.R. 587 (Bankr. N.D. Ill. 2017 ) ..................................................... 18, 19, 21

*Law v. Am. Cap. Strategies, Ltd.*,
   No. CIV. 3:05-0836, 2007 WL 221671 (M.D. Tenn. Jan. 26, 2007) ...................................... 21

*Local Union 7107 v. Clinchfield Coal Co.*,
   124 F.3d 639 (4th Cir. 1997) ................................................................................ 21

*Narin v. Lower Merion Sch. Dist.*,
   206 F.3d 323 (3d Cir.2000) ................................................................................... 17

*Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare
Sys., Inc.* (*In re United Healthcare Sys., Inc.*),
   200 F.3d 170 (3d Cir. 1999) ........................................................................ passim

*Walsh v. Century City Doctors Hosp., LLC (In re Century City Doctors Hosp., LLC)*,
   417 B.R. 801 (Bankr. C.D. Cal. 2009) *aff'd* 2010 Bankr. LEXIS 5048 (B.A.P. 9th Cir. Oct.
   29, 2010) .......................................................................................... 16, 19, 20

**Statutes**

11 U.S.C. § 704(a)(1) ................................................................................................ 19
29 U.S.C. § 2101(a)(1) ........................................................................................... 5, 7
29 U.S.C. § 2102(a)(l) .............................................................................................. 5

**Regulations**

20 C.F.R. § 639.3(a)(1)(ii) ..................................................................................... 5, 8
20 C.F.R. § 639.6 .................................................................................................... 20
*Worker Adjustment and Retraining Notification*,
54 Fed. Reg. 16042-01 (Apr. 20, 1989) ........................................................... passim

## STATEMENT OF THE CASE

### A.  Art Van's Operations before the Layoffs

Until their March 20 terminations, the debtors' ("Art Van") employees sold furniture in Art Van's furniture stores.  (*See* Appendix A000875).

Art Van filed bankruptcy on March 8, 2020, and in the weeks leading up to the layoffs, decided to (a) sell 44 of its stores and two distribution centers to Robert Levin (the "Levin Stores"); and (b) conduct "Going Out of Business" ("GOB") sales in its other 125 or so stores (the "GOB Stores").  (Declaration of David Ladd ("Ladd Declaration") at ¶5 (Appendix A0000002)).  Under the Bankruptcy Court's Cash Collateral Order, Art Van was required to operate in the "ordinary course of business."  (Cash Collateral Order at ¶2 (Appendix A000592)).

The purpose of the Levin sale was to "provide for the continued operations of [the Levin Stores]."  (Ladd Declaration at ¶19 (Appendix A000452).  Art Van intended to sell the Levin Stores as "going concerns," that is, to "preserve the going concern on the balance" and "those thousand jobs" up until the sale, to maximize the benefit of the sale to Art Van's creditors. (Ladd Declaration at ¶19 (Appendix A000010- A000011); Transcript of Hearing, March 10, 2020, at 11:11-13 (Appendix A000486)).[2]

In addition to being prohibited from operating "outside the ordinary course of business" in the bankruptcy generally, (Cash Collateral Order at ¶2 (Appendix A000592),  Art Van's agreement with Levin provided that Art Van could not "[s]ubstantially change the nature of business in which it is currently engaged" or purchase any assets "other than in the ordinary course of business" or as necessary for the business "as presently conducted."  (DIP Credit

---

[2] Selling the Levin Stores as going concerns would provide Art Van "important additional benefits that [could] not be realized in a liquidation[.]"  (Transcript of Hearing, March 10, 2020, at 57:21-58:2 (Appendix A000532- A000533)).

Facility at ¶8(f) (Appendix A000702)).  Art Van could only purchase inventory "in the ordinary course of business."  (DIP Motion at 5, 8 (Appendix A000653, A000656)).

In the GOB Stores, where a "soft launch" of the GOB sales had commenced March 5, Art Van was also "operat[ing] as much as possible in the ordinary course[.]"  (Transcript of Hearing, March 19, 2020, 10:9-11 (Appendix A001263); Ladd Declaration at ¶19 (Appendix A000452). Art Van went to great lengths to preserve the appearance of normal operations: although Art Van's consultant was permitted to sell store equipment, during business hours purchasers of that equipment could only remove it through the back of the store or "alternative shipping areas" unless it could be carried out in a shopping bag.  (Store Closing Procedures attached to Motion to Approve Store Closing Sales at ¶12 (Appendix A000169)).  Deposits from sale of inventory exceeded $23 million between March 5 and March 8, and $8 million during the week ending March 15.  (Conversion Motion at ¶22 (Appendix A000313)).

On March 20, 2020, Art Van terminated most of its employees, including the Plaintiffs/Cross-Appellees.  (Conversion Motion, ¶25 (Appendix A000314-A000315).

**B.  The WARN Action**

Plaintiffs/Cross Appellees filed their Adversary Complaint on March 23, 2020, alleging violation of the WARN Act.  (Complaint (Appendix A000335- A000345)).  Art Van filed an Answer on December 10, 2020.  (Answer (Appendix A000346-A000362)).  In its Answer, Art Van conceded that Debtors Art Van Furniture, LLC ("AVF") and Sam Levin Inc. ("Levin")—the direct employers of the furniture store employees—were WARN employers.  (Answer at ¶¶ 1-2, 45 (Appendix A000347, A000356) (admitting Plaintiffs were employed by AVF and were terminated along with other "employees of AVF and [Levin]", both of which employed more than 100 employees, and denying only "employer" status of other Debtor entities)).  For these

entities, Art Van claimed only the common WARN employer defenses of unforeseeable business circumstances ("UBC") and natural disaster.  (Answer at First and Second Affirmative Defenses (Appendix A000358- A000359)).

Art Van changed course in its First Amended Answer filed ten months later, on October 29, 2021, claiming for the first time that it was not, in fact, a WARN employer, but rather a WARN-exempt liquidating fiduciary.  (First Amended Answer at First Affirmative Defense (Appendix A000382)).  Because the UBC and natural disaster defenses only apply to "employers," it pled those in the alternative.  (*Id.* at ¶¶ 60-65 (Appendix A000382- A000385)). On November 12, 2021, Art Van moved for summary judgment on its defenses, including its two-week-old claim to have been a WARN-exempt liquidating fiduciary at the time of the layoffs.  (Trustee's Mem. in Supp. of Mot. for Summ. J. at ¶¶ 45-49 (Appendix A000410- A000413)).

### C.  The Bankruptcy Court's Denial of Summary Judgment on the "Liquidating Fiduciary" Exception

The Bankruptcy Court denied summary judgment on Art Van's claim that it was a WARN-exempt liquidating fiduciary.  (Opinion at 13-19 (Appendix A001705- A001711)).  The Court rooted its analysis in the U.S. Department of Labor ("DOL") Commentary which originated the exception for certain liquidating fiduciaries, and the decision of the Third Circuit Court of Appeals in *Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc.* (*In re United Healthcare Sys., Inc.*), 200 F.3d 170 (3d Cir. 1999) ("*United Healthcare*"), which adopted and applied it.  The Bankruptcy Court recognized that in the Third Circuit, a fiduciary is a WARN "employer" when the operations of the company it is liquidating are on-going.  (Opinion at 17 (Appendix A001709)).  Because Art Van's liquidation plan entailed "continu[ing its] operations in the Chapter 11 bankruptcy case for the benefit of

creditors," the Court found that Art Van was a WARN employer.  (Opinion at 19 (Appendix A001711).

## SUMMARY OF ARGUMENT

Under the WARN Act, when a company liquidating in bankruptcy keeps its operations going, it retains its "employer" status.  When terminating its employees, it must provide a WARN notice.  Notice is waived only when it has shut down, stopped operating and tasked employees with clean up and the disposal of assets in other than the normal course.  Before terminating its employees, Art Van's stores and warehouses were operating at full throttle, selling its wares to its customers in its stores.  It had told its employees to keep doing so for two more months.  Under the governing precedent of the Third Circuit Court of Appeals, the Bankruptcy Court properly found Art Van was still a WARN employer when it terminated them two weeks later. Because they were actively engaged in their normal retail sales, which even Art Van averred in court papers had to be run in the ordinary course, the court held Art Van was subject to the WARN Act when it failed to provide them 60 days' advance notice of their termination.

Art Van argues that the law should be otherwise.  It contends that when it began planning its closure it stopped being a WARN employer, notwithstanding that its retail sales operations continued for weeks.  That is an argument for Congress.  No court has recognized such an expansive exception that would exempt a WARN employer from notice before it shuts down its normal commercial operations.  It would, as one court declared, "eviscerate" the WARN Act, whose mandate is to require notice precisely before such closings.  The Bankruptcy Court below correctly denied Art Van summary judgment.

## ARGUMENT

I.   **THE WARN ACT IMPOSES NOTICE OBLIGATIONS ON OPERATING BUSINESSES WHEN BEGINNING TO WIND DOWN AND CLOSE**

### A.  The Statute Applies to "Any" Business Enterprise

The WARN Act requires employers who intend to close their plants or facilities to first give advance notice to the employees who will be terminated.  29 U.S.C. § 2102(a)(l).  The statute defines "employer" as "any business enterprise" that meets its 100-employee headcount threshold.  *Id.* § 2101(a)(l)

### B.  The DOL Regulation and Commentary Ask if the Business is Operating

The U.S. Department of Labor's (DOL's) interpretive WARN regulations are authoritative in the Third Circuit.  *In re United Healthcare Sys., Inc.*, 200 F.3d 170, 177 (3d Cir. 1999) ("*United Healthcare*").  As the DOL explained, Congress did not limit WARN's "employer" definition ("any business enterprise") to simply profit-making entities.  Rather, any entity that is "*engaged in business*[,]"—even public and quasi-public entities—are WARN employers if they meet the employee threshold.  *Id.* (emphasis in opinion), *quoting* 20 C.F.R. § 639.3(a)(1)(ii), 54 Fed.Reg. 16042, 16065 (1989).  For WARN purposes, engaging in business includes "supply[ing] a service or good on a mercantile basis." 20 C.F.R. § 639.3(a)(1)(ii).[3]  Art Van was a merchant that sold furniture and mattresses to retail

---

[3] The dictionary defines "mercantile" as "relating to trade or commerce," or simply as "commercial" or "having to do with the business of buying and selling" or related to "merchants."  *West's Encyclopedia of American Law*, 2d. ed. (2008), https://legal-dictionary.thefreedictionary.com/Mercantile, last accessed on July 7, 2022.

customers in its stores.

The kind of "business" that Congress meant was further clarified by the DOL in its preamble to its final WARN rules. *Worker Adjustment and Retraining Notification*, 54 Fed. Reg. 16042-01 (Apr. 20, 1989) (the "Commentary").  Responding to a commenter who suggested that bankruptcy fiduciaries be categorically excluded from the definition of "employer," the DOL observed that such an exception could only apply to fiduciaries who have ceased their engagement in business entirely.  This has become known as the "liquidating fiduciary" exception:

> [T]he Department does not think it appropriate to [exclude all bankrupt companies from the definition of "employer"]. DOL agrees that a fiduciary whose *sole function* in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligation of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, *where the fiduciary may continue to operate the business for the benefit of creditors*, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed. Reg. at 16045 (emphasis added).

The DOL's dictum makes clear that a fiduciary that is liquidating a company remains an "employer" if the methods it uses to benefit creditors includes the continuation of operations in the normal commercial sense, as borne out by the Third Circuit in *United Healthcare*.

### C.  *United Healthcare* Tests Whether Business Operations are "Ongoing"

The Third Circuit concretized the "liquidating fiduciary" exception in *United Healthcare*.  It understood the continuation of operations test was objective and focused upon

6

the company's activities in the period immediately prior to the layoffs.  The question framed by the Third Circuit was whether the liquidating fiduciary "was operating as an ongoing business enterprise, or whether it was merely engaged in the liquidation of assets." 200 F.3d 170, 177 (3d Cir. 1999).

United Healthcare was a "not-for-profit corporation that provided hospital and healthcare services." 200 F.3d at 172.  After years of financial distress, its secured lender terminated all financing, rendering the hospital unable to meet daily expenses.  *Id*. at 172-173. The board voted to accept a third-party's offer to purchase United Healthcare's assets and close the hospital.  *Id*. at 173.  Three days later, the hospital surrendered its state-issued certificates of need, filed a voluntary Chapter 11 bankruptcy petition, and gave its employees notice that they would be terminated in 60 days.  *Id*.  Over the next 48 hours, the hospital transferred away or sent home all its patients.  As a result, the employees thereafter "were unable to perform their regular duties but instead cleaned, took inventory and prepared the company's assets for sale." *Id*.  Sixteen days into the 60-day notice period, the hospital terminated the employees.  *Id*.  The court had to determine whether the hospital was a WARN "employer"  - that is, a "business enterprise" - at the time of the layoffs.  *Id.* at 176, *citing* 29 U.S.C. § 2101(a)(1).  On the one hand, the panel noted, when the hospital surrendered its certificates of need and stopped treating patients, it had ceased "performing the everyday business functions of a hospital and health care service." 200 F.3d at 176.  On the other hand, it "remained a corporation" with employees.  *Id*.  Finding no clear statutory guidance, the

court considered the DOL regulation and Commentary and found that the question was

whether United Healthcare was "engaged in business" during the time before the layoff. *Id*.,

citing 20 C.F.R. § 639.3(a)(1)(ii). The inquiry, according to the Third Circuit, focuses on the

entity's activities:

> [W]hether a bankrupt entity is an "employer" under the WARN Act depends on
> the nature and extent of the entity's business and commercial activities while in
> bankruptcy, and not merely on whether the entity's employees continue to work
> "on a daily basis." The more closely the entity's activities resemble those of a
> business operating as a going concern, the more likely it is that the entity is an
> "employer;" the more closely the activities resemble those of a business winding
> up its affairs, the more likely it is the entity is not subject to the WARN Act.

200 F.3d at 178.

Applying this standard, the court recounted the hospital's actions; its surrender of its

certificates of need, its bankruptcy petition and the discharge and transfer of its patients.

The panel then observed: "Significantly, after [the bankruptcy and certificate filings], but in

any event no later than [after the patients left], its employees were no longer engaged in

their regular duties but instead were performing tasks solely designed to prepare United

Healthcare for liquidation." *Id*. United Healthcare's actions were not those of a WARN

employer. *Id*. The activities revealed that the fiduciary had not continued operating the

business as an ongoing concern. Therefore, it did not succeed to the employer's WARN

obligations. *Id*.

The Third Circuit's analysis is consistent with the DOL's "engaged in business"

standard. Both look objectively for the signs of normal operations within an entity's

liquidation – not its thoughts, plans or intentions.  The question turns on whether it "was *operating* as an *ongoing* business enterprise in the liquidation, or whether it was merely engaged in the liquidation of assets." *Id*. at 177 (emphasis added).

*United Healthcare* was not a hybrid case involving ongoing operations within a liquidation.  It was a textbook case of a clean break between operational and liquidation-only activities.   When it was open, the hospital was "performing the everyday business functions of a hospital and health care service," *Id*. at 173.  When it lost its financing and had to close, its employees were then reduced to quintessential liquidation-only activities "cleaning, taking inventory and preparing assets for sale."  *Id*. at 173.

Art Van's case is the opposite bookend, the clear-cut case of a liquidator that did *not* shut its doors and turn its retail-selling employers into cleaners and shippers of equipment, machines and other assets.  Rather, Art Van kept conducting retail sales which had been, and remained, precisely the commercial business Art Van had always engaged in – and for the same purpose – to generate cash revenue.  Art Van's lender funded it to continue normal retail operations to avoid a forced liquidation-type sale, like the one in *United Healthcare*.  To be sure, Art Van took a large liquidation step when it agreed to sell 44 of its Levin stores.  The sale was conditioned, however, on those stores maintaining their normal operations while they remained in Art Van's hands.  Art Van's other, "closing stores," operated no differently than its Levin "going forward" stores before Art Van pulled the plug on them all.  Art Van kept all their retail sales going to capture the superior retail margins for its goods.  It banked on the goodwill and loyalty of its customer base by operating all its stores as a retail enterprise.  That Art Van planned to sell some

stores to a buyer who wished to keep operating – thus, imparting a potential "going concern" valuation to them – while planning to shut down its "closing stores" and dispose of their non-operating assets itself, is immaterial.  At the time of the *layoff* the business at all the stores was unquestionably ongoing.  The Bankruptcy Court rightly applied the "liquidating fiduciary" principle framed by the DOL and Third Circuit to find Art Van was a WARN employer with respect to the stores, because it kept them operating and doing business in what it found was "a perfect example" of the hybrid process of "continuing operations … while liquidating at the same time."  "Where a fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation."  (Opinion at 13-14 (Appendix A001705-A001706), *citing United Healthcare*, 200 F.3d at 177 (citing 54 Fed. Reg at 16045)).

## II.  THE BANKRUPTCY COURT PROPERLY DENIED SUMMARY JUDGMENT ON THE "LIQUIDATING FIDUCIARY" EXCEPTION

### A.  The Bankruptcy Court Properly Applied the DOL's Regulation and Commentary and the *United Healthcare* Decision

When the Bankruptcy Court grounded its analysis in the DOL regulation and Commentary and the *United Healthcare* precedent, it framed the issue as *United Healthcare* did: "whether the entity's activities resemble a business enterprise operating as a going concern or a business enterprise engaged in the winding-up of its affairs."  (Opinion at 17 (Appendix A001709)).  The Bankruptcy Court explained that "[i]t is not uncommon for a debtor-in-possession to commence a liquidating chapter 11 case intending to preserve value by operating the business as a going concern pending a sale of substantially all of the assets of the debtor." (*Id*.)  In such scenarios, the Court recognized, WARN elevates business activities over intentions.

The Court first highlighted the DOL's regulatory focus on "*engag[ing] in business*" and the Commentary's distinction between a liquidating fiduciary whose "*sole function*" is to liquidate versus one who "*may continue to operate the business for the benefit of creditors*." (Opinion at 18 (Appendix A001710) (emphasis in Opinion) (citing 20 C.F.R. § 639(a)(1)(ii) and 54 Fed. Reg. at 16045)).  The Court then invoked *United Healthcare*'s proviso that when "economic activities" reveal a fiduciary "continu[ing]…to operat[e] the business[,]" WARN obligations will lie.  (Opinion at 18-19 (Appendix A001710- A001711), *citing United Healthcare*, 200 F.3d at 179).

The Court had earlier noted that its Cash Collateral Order had limited Art Van to disposing of its assets only in the ordinary course of business and that Art Van's agreement with Levin allowed it only to purchase inventory in the ordinary course, and prohibited Art Van from changing the nature of its business during the bankruptcy.   (Opinion at 16-17 (Appendix A001708- A001709).

With Art Van's economic activities in focus, the Court had no trouble distinguishing *United Healthcare*.  There, an "immediate shutdown" left a "fiduciary[ with the] sole function [of] liquidation." (Opinion at 19 n.86 (Appendix A001711)).  Here, by contrast:

> [A]s the Plaintiffs point out, the Levin LOI called for the continued operation of approximately 44 retail store locations and two related distributed centers pending the proposed sale. In this case, the Debtors intended to continue their operations in the Chapter 11 bankruptcy case for the benefit of creditors and, based on these facts, the Court concludes that the Debtors were subject to an employer's WARN obligations.

(Opinion at 19 (Appendix A001711)).

The Bankruptcy Court's decision was a straightforward application of the DOL and Third Circuit precedent.  Applying *United Healthcare*'s bottom line holding, the Bankruptcy Court took into account the fact that Art Van was a fiduciary that was liquidating a business.  But its

post-petition activities were the same as its pre-petition ones in that it was continuing to carry on the same business as an ongoing concern.  *See United Healthcare*, 200 F.3d at 177.

### B.  Art Van's Commercial Activities Made it a WARN Employer Regardless of the Intentions, Preparations, Purposes or Abstractions to Which They Were Proximate

It is uncontested that Art Van engaged pre-petition and post-petition as a merchant, selling its furniture and mattresses to its retail customers.  That WARN employer status attaches to these activities is beyond cavil, for nothing in the law supports dislodging that status.

Pre-petition, Art Van was manifestly a WARN employer which, as the Bankruptcy Court noted, "rightly" provided the March 5 notice to its employees. (*See* Opinion at 19 n.85 (Appendix A001711) (notice "demonstrate[d] its intention that [sic] to continue operations for 60 days")).  Art Van had agreed to sell the Levin Stores as a going concern and tout the sales in the other stores as GOB sales, after which, it told its employees, they would be terminated.  Given Art Van was still a WARN employer two weeks later and post-petition, in the midst of running its sales it told the employees that it had decided not to continue them.  It provided the employees another WARN notice seeking to avail itself of a statutory defense based on its business conditions as a WARN employer.  Art Van maintained that position—as a WARN employer asserting business circumstance defenses—for nearly a year into the litigation.  (*See supra*  Statement of the Case Sec. B.)

Art Van now claims that before it even filed its Chapter 11 petition, it took itself out from WARN when it "hired the Liquidator, gave the GOB Sale WARN Notice and commenced GOB Sales, and issued a public statement telling the world that [it was] liquidating [its] assets."  (Cross-Appellee's Opening Brief, ECF 12 ("Op. Br.") at 22).   It claims that by doing these things, it was *immediately* transformed into a WARN-exempt

liquidating fiduciary.  (*Id*. at 23 (arguing that Art Van was "at all relevant times – both pre-Petition Date and post-Petition Date – liquidating")).  In other words, by merely shifting its business goals from generating retail sales revenue for shareholder profits to benefitting creditors in a wind-down, Art Van exempted itself from the WARN Act.

Art Van's theory simply cannot be squared with the relevant precedent on which the Bankruptcy Court properly grounded its decision.  Both DOL and the Third Circuit impose WARN employer status when *business operations are conducted*, by either a going concern *or* a bankruptcy fiduciary that does so as part of its wind down.  The only categorical case in which employer status is lifted is when the fiduciary does not engage in any activities that resemble the normal commercial business activities associated with going concerns.  *See* 54 Fed. Reg. at 16045 (fiduciary whose "sole function" is to liquidate).  It is merely "preserving" the assets, not expending money, time and effort in the entrepreneurial pursuit of merchandising operations, betting to see if the return on that investment will enhance their market value, as Art Van did. (See, Point C, below)

### 1. DOL Does Not Make an Entity a WARN-Exempt Liquidating Fiduciary Simply Because it Engages in its Business Activities to Benefit Creditors

Art Van claims that its ongoing sales and business operations should lose their commercial, mercantile character because they were in service of Art Van's creditors, rather than its own profit.  (Op. Br. at 6 (purpose of wind-down was to "maximize the liquidation value of the estates' assets and the recoveries for the Debtors' creditors").  In so arguing, Art Van simply ignores the bright line drawn by the DOL Commentary: "Where a fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation."  54 Fed. Reg at 16045.  It is unsurprising that, despite being relied upon by both the

13

Bankruptcy Court and the Third Circuit, (*see* Opinion at 13-14 (Appendix A001705-A001706), *citing United Healthcare*, 200 F.3d at 177 (citing 54 Fed. Reg at 16045), this portion of the DOL Commentary is absent from Art Van's brief. [4]

Maximizing the benefits to a company's stakeholders, including creditors, is the goal of every business.  It is also the duty of a Chapter 11 debtor.  A liquidating fiduciary in Chapter 11 should engage in ongoing business when it is appropriate and prudent to do so.  The bright line guidance, however, is that everyone who runs a business must give a WARN notice, just as Art Van did.  Art Van seeks to create a lopsided playing field in which sound companies must give WARN notice, but their competitors who are liquidators, need not.  Art Van provides no explanation why the law should be re-written to advantage itself and those liquidators.

### 2. Entities are Not Relieved of their WARN Employer Status when they are Preparing for a Sale of Goodwill or Because their Operations are "Limited"

Having no meaningful response to the fact its retail sales operations were a business enterprise, Art Van claims to find support for its position in Third Circuit law by coming up with a holding that nowhere appears in *United Healthcare* or elsewhere.  It purports that the "*United Healthcare* court recognized that a debtor's actions in connection with and/or in preparation of a goodwill/going concern sale (including limited postpetition business operations) can be consistent with and part of the liquidating fiduciary function and an exception to WARN liability." (Op. Br. at 3).   For this baffling, unfounded pronouncement, Art Van cites to nothing.  Art Van nevertheless repeats it by inserting it in a compound sentence that suggests the Third Circuit may have said it, or meant it, although it did not.  Art Van writes:

> Yet, as discussed above, the *United Healthcare* court acknowledged there would be gradations on the liquidating fiduciary scale and that a debtor's actions in connection with and/or in preparation of a goodwill/ going concern

---

[4] Art Van's passing reference to the DOL's Commentary is a quotation which stops immediately before this sentence.  (Op. Br. at 17 n.37).

> sale (including limited postpetition business operations) can be consistent with and part of the liquidating fiduciary function and exception to WARN liability."

(Op. Br. at 21.)

While the Third Circuit did speak of "gradations[,]" and naturally understood the liquidating fiduciary function as including the sale of assets, the court specifically reserved the WARN exemption to cases in which an inspection reveals no normal, ongoing commercial business activities – only non-resembling activities.

Nevertheless, Art Van chides the Bankruptcy Court for failing to read *United Healthcare* as it does, calling the Court's reading of *United Healthcare* "overly narrow and erroneous." (Op. Br. at 22).

Art Van is wrong that the Third Circuit waived WARN liability for a fiduciary who operates the business either "in connection with and/or in preparation of" either a "goodwill" sale or a "going concern sale[.]" (Op. Br. at 22). Nor did the Third Circuit make an exception when a fiduciary engages in a "limited postpetition business operations[.] (*Id.*) All of these activities certainly can be "consistent with and part of the liquidating fiduciary function." (*Id.*) But none of these are factors that can support an exception to WARN liability." No court has even intimated it.

"Goodwill" and "going concern" are terms used for valuation purposes when selling a business. They represent the intangible assets such as loyalty that go with the sale of the tangible assets. Buyers may pay extra for these intangibles when they plan to keep the business going. What the terms do *not* convey is whether, at the point of sale, the business operations happen to be ongoing or not – which is the dispositive factor for the application of the exemption. The terms are therefore irrelevant to the issue. Grasping for straws, Art Van argues that in *United Healthcare* the asset-selling debtor was still wrapping up the transfer of the "goodwill" asset, when it terminated

its employees.  (Op. Br. 19-21).  Art Van conflates the ongoing sale of abstract goodwill with its

ongoing brick and mortar *operations*.  Art Van argues it should be exempt from WARN just as the

hospital in *United Healthcare* was exempt, based on this false equivalence.  The Third Circuit and

the Bankruptcy Court, in turn, recognized that whether the business was operating was dispositive,

not whether accounting valuation terms applied, such as "going concern" and "goodwill."

Nor did the Third Circuit hold that a trustee can qualify as exempt from WARN while it

carries on its ongoing business in some "limited" fashion that could possibly apply to Art Van.

(Op. BR. at 22).  Art Van cites *Walsh v. Century City Doctors Hosp., LLC (In re Century City

Doctors Hosp., LLC),* 417 B.R. 801, 804-05 (Bankr. C.D. Cal. 2009), *aff'd* 2010 Bankr.

LEXIS 5048 (B.A.P. 9th Cir. Oct. 29, 2010).  There, the Chapter 7 trustee operated the

hospital, as Art Van admits, not for a commercial purpose.  (Op. Br. at 19, fn 38).  Rather, it

was legally required to deal with patients and toxic waste for the period of a few days before

closing.  Art Van, by contract, was selling its furniture to its customers, as always, to

generate funds it needed to pay off its creditors – a purely commercial purpose.

There have been many failed, liquidating Chapter 11 debtors since WARN was

enacted in 1988.  Art Van has not found any case in which the debtor conducted ongoing

business and was deemed WARN exempt.  Many retailers have filed bankruptcies in the

past seven years alone.[5]  Art Van has not pointed to a single instance in which a court found

a fiduciary tasked with liquidating retail stores was WARN-exempt.

Art Van claims that everything it did was a "necessary" part of a liquidation plan, (Op. Br.

at 23), without mentioning its operations, which, as it surely realizes, are the proverbial third rail to

---

[5] 136 notable retailers have filed for bankruptcy since 2015.  *See* "Here's a list of 136 bankruptcies in the retail
apocalypse – and why they failed", *CB Insights,* Feb. 16, 2022, accessible at
https://www.cbinsights.com/research/retail-apocalypse-timeline-infographic/.

its argument.  Art Van never confronts the dispositive fact that when it carried them out, those activities *resembled Art Van's normal business operations*.[6]  Art Van has not pointed to a single normal business activity that it jettisoned, nor one solely designed for liquidation that it actually carried out during the relevant period.  *Id.*   Indeed, as Plaintiffs showed, and the Bankruptcy Court recognized, Art Van could not have deviated from those normal activities even if it had wanted to.  Art Van had locked itself into doing business in the ordinary course and went to great lengths to prevent any appearance of "liquidation-only" type activities on the showroom floors. If any equipment were to be removed from the stores, it needed to be hidden from customers, either by taking them through the back of the store or in a shopping bag.  (*Supra* Statement of the Case Sec. A).  Such were the pains Art Van took to eliminate the possibility of confusion between its normal, business-as-usual retail appearance and any resemblance to liquidation.  Art Van strove to ensure its "activities more closely resemble[d] those of a business operating as a going concern, than those of a business winding up its affairs ."  *United Healthcare Sys.,* 200 F3d at 178.[7]

Art Van did exactly what the hospital in *United Healthcare* did not do, and the Bankruptcy Court correctly arrived at the necessarily opposite conclusion.  The United Healthcare employees did not tend to a single patient in the two weeks before they were

---

[6] Art Van can just barely countenance this reality—namely, that it and United Healthcare were at the opposite ends of the spectrum of business operations at the time of their respective layoffs—in a footnote.  Art Van attempts to sweep the facts under the rug with the cryptic assertion that the healthcare and retail industries differ "with respect to what constitutes liquidating and wind-down activities and regulatory requirements and aspects related thereto."  (Op. Br. at 22 n.40).  It is sufficient to note that hospitals shut down when they no longer have patients, and retailers shut down when they no longer have retail customers coming into their stores.

[7] Although Art Van's efforts to preserve all semblances of normal operations were not specifically argued to the Bankruptcy Court, "[t]he Court can affirm the correct decision of a lower court on grounds different than those relied upon by that court…or on any basis for which it finds support on the record."  *In re Izzi*, 295 B.R. 754, 757– 58 (E.D. Pa. 2003), *citing Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n. 8 (3d Cir.2000) *and Bernitsky v. United States*, 620 F.2d 948, 950 (3d Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

terminated.  Art Van's employees, in the two weeks between the March 5 "soft launch" of GOB sales and their March 19 terminations, sold furniture and mattresses that resulted in cash deposits of over $30 million.  Art Van has not explained how this could have happened other than through the acts of a merchant "engaged in business," which is the regulatory touchstone of a WARN employer.  Art Van's statements and actions were "not in line with a business that was solely liquidating." *In re World Mktg. Chicago, LLC*, 564 B.R. 587, 603 (Bankr. N.D. Ill. 2017 ).

### C. No Court Has Expanded the "Liquidating Fiduciary" Exception as Art Van Would Because it Would Effectively Undo the WARN Act

Art Van's refrain that running sales operations were necessary for *its* liquidation *plan* misinterprets the legal standard.  The question here is not whether a fiduciary has a plan to do this or that.  The question is whether the unadorned act of conventional liquidation necessitates the running of operations.  Most do not.  As a result, most fiduciaries will not be WARN employers. But should a fiduciary come up with "plan" to run its operations it comes within the WARN Act.  All courts have understood this.

In the cases cited by Art Van, courts have only found a debtor entitled to the "liquidating fiduciary" exception where it wholly ended any business operations.  *See In re MF Glob. Holdings Ltd.*, 481 B.R. 268, 273, 283 (Bankr. S.D.N.Y. 2012) (finding trustee appointed under the Securities Investor Protection Act was WARN-exempt because the trustee was "statutorily prohibited" from "operating the business as a going concern" and instead was "effectuating various bulk transfers of…property to other…merchants" and setting up a claims process for former customers, and denying dismissal of the complaint as to the other operating units without discovery into their operations); *In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *13 (Bankr. S.D.N.Y. June 12, 1997) ("[T]he extent to which Jamesway operated its business prior to the time that its employees were discharged

18

is a material issue of fact precluding summary judgment[.]"); *In re World Mktg. Chicago, LLC*, 564 B.R. 587, 602-603 (Bankr. N.D. Ill. 2017) (noting that the debtor moved the bankruptcy court to use cash collateral "in the ordinary course of business" and refusing to apply the "liquidating fiduciary" exception because "[e]ven if the Debtors were conducting their business solely for the purposes of a sale, they were engaged in some form of business").

The case of *In re Century City Drs. Hosp.*, LLC, 417 B.R. 801 (Bankr. C.D. Cal. 2009), aff'd, No. ADV.LA 09-01101-SB, 2010 WL 6452903 (B.A.P. 9th Cir. Oct. 29, 2010) applied *United Healthcare* in the Chapter 7 context and shows complete alignment between the Ninth Circuit and the Bankruptcy Court's decision below.  There, the defendant hospital filed for Chapter 7 liquidation and "[i]mmediately  … obtained authority to operate CCDH for a limited period of time for the purpose of attending to its remaining patients, shutting down its operations and complying with government regulations relating to the disposal of medical waste and hazardous materials." *Id*. at 802-3.   The trustee operated the hospital "with the remaining staff members for several days for the limited purpose of providing medical services for the remaining patients and ensuring that CCDH's business was wound up in a timely and efficient manner."[8]   All patients were gone within a week.  *Id*. at 803.  The court found that such activities were not "operati[ons of] the business in the normal commercial sense" and the Chapter 7 Trustee was a WARN-exempt liquidating fiduciary.  *Id.* at 805 (actions were dedicated solely to "shutting down the Debtor's operations," including the proper disposal of hazardous waste).[9]

---

[8] As the Ninth Circuit observed on appeal, "[t]he Trustee initially requested 120 days to wind up CCDH's operations. The court, however, only authorized the Trustee to operate the hospital for a period of four days." *In re Century City Drs. Hosp.*, LLC, No. ADV.LA 09-01101-SB, 2010 WL 6452903, at *1 (B.A.P. 9th Cir. Oct. 29, 2010).

[9] The overriding duty of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).

In *Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Loc. 572, Intern. Broth. of Teamsters, AFL-CIO v. Weslock Corp.*, 66 F.3d 241, 244 (9th Cir. 1995) (citing 20 C.F.R. § 639.6), the Ninth Circuit made clear that a fiduciary must stay clear of any normal aspects of managing operations to be exempt from WARN.  There, a secured creditor, Westinghouse, when foreclosing, took over the debtor's assets for six days. The court determined that Westinghouse would not be a WARN employer if it was merely preserving the business asset for sale or liquidation,  and "exercis[ed] no more than the degree of control necessary to protect the security interest." *Id.* at 244.  It found Westinghouse's executive "apparently did not participate in decisions concerning the plant's production output, the marketing of the plant's product, or the plant'\'s employment practices," and he was not involved in the "functional operations" of the business. *Id.* at 245.  Therefore, Westinghouse was not the WARN employer. *Id*.

Here, at the time of the layoffs, Art Van could have shut down its operations, which would have preserved the assets for sale or liquidation.  Instead, it kept them open for what it planned to be months of retail selling.  It was not simply completing the transactions for sales already made.  It was holding a sale—not unlike a President's Day or Christmas Sale— for the purpose of generating new revenue for its creditors. In doing so, it "decide[d] to operate [the] business enterprise in the 'normal commercial sense' for a period of time," such that the WARN Act applies. *Century City,* 417 B.R. 801 at 804.

Art Van's loose take on the "liquidating fiduciary" exception would undo the statute. Any business enterprise that is planning to close in 60 days would be *expected* to have already begun planning its closure and liquidation.  That should *trigger* notice obligations if the statute has any meaning.

20

The "liquidating fiduciary" exception is, at bottom, "an exception applied to liquidating fiduciaries, and as an exception, it should be applied sparingly." *World Mktg.* 564 B.R. at 603, *citing Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640–41 (4th Cir. 1997) ("Because the WARN Act is remedial legislation, its exceptions are to be construed narrowly.").  "[A]anything other than a narrow interpretation runs the risk of allowing circumstances well beyond those intended by the Department of Labor to vitiate the protections afforded employees by the WARN Act." *World Mktg.*, 564 B.R. at 603.

The risk of adopting Art Van's position was most clearly identified by the court in *Law v. Am. Cap. Strategies, Ltd.*, No. CIV. 3:05-0836, 2007 WL 221671, at *1 (M.D. Tenn. Jan. 26, 2007).  There, the trucking company employer "was operating as a trucking business" the morning it laid off its employees. *Id.* at *16.  The fact that its venture capital lender had a "plan for an exit strategy which included a stated intent to liquidate its assets" did not change the fact that the company "was still a business enterprise" at the moment the termination decision was made. *Id.* at *17.  Applying the "liquidating fiduciary" exception where a company "starts to take preliminary steps towards liquidation, while otherwise continuing to carry on its business[,]" the court found, would "allow the liquidating fiduciary exception to swallow the rule." *Id.*  It would "eviscerate the WARN Act and be an expansion of an exception which is to be construed narrowly." *Id.*

## **CONCLUSION**

Plaintiffs/Cross-Appellees request that the Bankruptcy Court's denial of summary judgment to Defendant/Cross-Appellant on the "liquidating fiduciary" exception be affirmed.

Dated: July 25, 2022                                     Respectfully Submitted,

                                                         */s/ Michael J. Joyce*
                                                         Michael J. Joyce (No. 4563)

**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian
Jack A. Raisner
Gail C. Lin
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email:jar@raisnerroupinian.com
Email: gcl@raisnerroupinian.com

*Attorneys for Appellants and Cross Appellees*
*Todd Stewart and Jennifer Sawle, on behalf of themselves and all others*

**Certificate of Compliance With Rule 8015(a)(7)(B) or 8016(d)(2)**

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2)

because:

    X   this brief contains <u>6,607</u> words, excluding the parts of the brief exempted by Rule

       8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

    ___  this brief uses a monospaced typeface having no more than 10½ characters per inch and

       contains [state the number of] lines of text, excluding the parts of the brief exempted by

       Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).


 _/s/ Michael Joyce_____    Date:  _7/25/22_____
 Signature


Print name of person signing certificate of compliance:

   __Michael Joyce_____