# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

START MAN FURNITURE, LLC, et al.[1]

Chapter 7
Case No. 20-10553 (CTG)
Jointly Administered

---

TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated,

                  Appellants,

v.

ALFRED T. GIULIANO, chapter 7 trustee for Debtors Start Man Furniture, LLC, et al.,

                  Appellee.

Civil Action No. 22-cv-00450 (CFC)

Bankruptcy Case No. 20-10553 (CTG)
Bankruptcy Adv. Pro. No. 20-50548 (CTG)
Bankruptcy BAP No. 22-00030

---

ALFRED T. GIULIANO, chapter 7 trustee for Debtors Start Man Furniture, LLC, et al.,

                  Appellant,

v.

TODD STEWART and JENNIFER SAWLE, on behalf of themselves and all others similarly situated,

                  Appellees.

Civil Action No. 22-cv-489 (CFC)

Bankruptcy Case No. 20-10553 (CTG)
Bankruptcy Adv. Pro. No. 20-50548 (CTG)
Bankruptcy BAP No. 22-00032

## APPELLANTS' REPLY BRIEF

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, including Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

René S. Roupinian
Jack A. Raisner
Gail C. Lin
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com
Email: gcl@raisnerroupinian.com

*Attorneys for Appellants and Cross Appellees*
*Todd Stewart and Jennifer Sawle, on behalf of themselves and all others*

Dated: August 8, 2022

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................................... 1

I.   SUMMARY JUDGMENT WAS PREMATURE GIVEN THE ABSENCE OF
     EVIDENCE IN THE RECORD AND THE DENIAL OF DISCOVERY ......................... 1

  A.   WARN Requires More than Unfounded Assertions to Sustain an Affirmative Defense  2

  B.   The Decision Rested on No Evidence .............................................................................. 4

  C.   Appellants' Evidence Raised a Strong Inference that COVID was Not the Cause of the
       Layoff, Which Outweighed the Non-Existent Evidence to the Contrary ....................... 7

  D.   Appellants Sought Evidence but Were Denied It............................................................ 9

II.  ART VAN'S "LOGICAL" AND "POLICY"-BASED READ OF WARN'S NATURAL
     DISASTER DEFENSE IS ATEXTUAL ........................................................................ 12

  A.   Art Van's Definition of "Natural Disaster" is Unfounded ........................................... 12

  B.   Art Van's "But-For" Standard Folds under DOL and Circuit Court Authority............. 15

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cty., Ga.*,
140 S. Ct. 1731 (2020) ............................................................................................. 15

*Carver v. Foresight Energy LP*,
No. 3:16-CV-3013, 2016 WL 3812376 (C.D. Ill. July 12, 2016) ........................... 12

*Costlow v. United States*,
552 F.2d 560 (3d Cir. 1977) ...................................................................................... 2

*Doe v. Abington Friends Sch.*,
480 F.3d 252 (3d Cir. 2007) .................................................................................. 9, 10

*Easom v. US Well Servs., Inc.*,
37 F.4th 238 (5th Cir. 2022) ............................................................................ passim

*Easom v. US Well Servs., Inc.*,
527 F. Supp. 3d 898 (S.D. Tex. 2021) ................................................................... 3, 4

*F.T.C. v. Chinery*,
No. CIV.05-3460 GEB, 2007 WL 1959270 (D.N.J. July 5, 2007) ......................... 11

*Gross v. Hale-Halsell Co.*,
554 F.3d 870 (10th Cir. 2009) ................................................................................... 3

*Hahn v. A. Richfield Co.*,
625 F.2d 1095 (3d Cir. 1980) .................................................................................... 5

*Harley v. Paulson*,
No. CIV 07-3559(JBS), 2008 WL 5189931 (D.N.J. Dec. 9, 2008) ......................... 10

*Hotel Emps. & Rest. Emps. Int'l Union Loc. 54 v. Elsinore Shore Assocs.*,
173 F.3d 175 (3d Cir. 1999) ...................................................................................... 16

*In re AE Liquidation, Inc.*,
522 B.R. 62 (Bankr. D. Del. 2014) ........................................................................... 2

*In re APA Transport Corp. Consol. Litig.*,
541 F.3d 233 (3d Cir. 2008), *as amended* ............................................................... 2

*In re Jevic Holding Corp.*,
496 B.R. 151 (Bankr. D. Del. 2013) ......................................................................... 3

*Johnson v. TeleSpectrum Worldwide, Inc.*,
    61 F. Supp. 2d 116 (D. Del. 1999) ........................................................ 14

*Jones v. Kayser-Roth Hosiery, Inc.*,
    748 F. Supp. 1276 (E.D. Tenn. 1990) ................................................... 3

*Paroline v. United States*,
    572 U.S. 434 (2014) .............................................................................. 15

*Roquet v. Arthur Andersen LLP*,
    398 F.3d 585 (7th Cir. 2005) ................................................................. 3

*Rosenberg v. JCA Assocs., Inc.*,
    No. CIV. 03-0274(JBS), 2007 WL 1038893 (D.N.J. Mar. 30, 2007) ....... 10

*Russell v. Natl. R.R. Passenger Corp.*,
    189 F.3d 590 (7th Cir. 1999) ................................................................. 5

*U.S. v. Salinas,*
    918 F.3d 463 (5th Cir. 2019) ................................................................. 15

*Yates v. United States*,
    574 U.S. 528 (2015) .............................................................................. 14

**Rules**

Federal Rule of Civil Procedure 56(d) ............................................. passim

**Regulations**

20 C.F.R. § 639.1(a) .............................................................................. 14
20 C.F.R. § 639.9 .................................................................................... 2
20 C.F.R. § 639.9(c)(2) .................................................................... 15, 17

**Other Authorities**

134 Cong. Rec. S8854-02, 1988 WL 173512 ........................................ 16

**ARGUMENT**

The Bankruptcy Court erred in two ways, as shown in Appellants' Opening Brief (ECF 14) ("Op. Br.").[2] First, it granted summary judgment in favor of Art Van's WARN Act "unforeseeable business circumstances" ("UBC") affirmative defense without requiring supporting evidence or discovery despite a material factual dispute. Second, unlike the rest of the judiciary, which has refused motions to dismiss or summary judgment on the "natural disaster" defense, the Bankruptcy Court simply relied on an interpretation of the statute by a court that has since been rejected on appeal.

In its Response Brief (ECF 21) ("Resp. Br."), Art Van's Trustee ("Art Van"[3]) does not meaningfully defend these missteps. As to the cause of the mass layoff, Art Van asks this Court to affirm a grant of summary judgment based on a company's COVID defense that relies only on its advocates' say-so and suspends the rules of procedure that require discovery and proof before a case is dismissed. As to the natural disaster defense, Art Van asks that the Court adopt Art Van's own custom-made rules of statutory interpretation to reach an unfounded conclusion.

## I. SUMMARY JUDGMENT WAS PREMATURE GIVEN THE ABSENCE OF EVIDENCE IN THE RECORD AND THE DENIAL OF DISCOVERY

Art Van urges this Court to affirm a summary judgment motion which raised a question too important for the Bankruptcy Court to have granted without discovery. The question was whether COVID caused Art Van to lay off its workforce. When terminating its employees, Art Van told them it had abandoned its wind-down bankruptcy plan. But that was not right – as Art Van was in court that same day and said nothing of the sort, then or subsequently. Indeed, Art

---

[2] Page citations to the Opening Brief and Response Brief refer to their internal pagination, i.e., the page numbers at the bottom of the pages of the briefs.

[3] For ease of reference, Appellants use "Art Van" to refer both to the collective debtor entities who employed Appellants and initiated the bankruptcy proceedings below, and to the Trustee representing those debtors' estates in this appeal.

Van never has averred, with evidence, what prompted its decision. Its attorneys have simply glossed over the issue in litigation briefs with similar explanations without attribution.

At the outset, Appellants served targeted discovery for that evidence but received no responses. Appellants sought a Rule 56(d) continuance to receive Art Van's long-awaited production, but it was opposed and denied for no justifiable reason. By "acting on the motion for summary judgment…without reference to what might be developed in discovery, which was being diligently pursued, the [Bankruptcy C]ourt" conferred upon Art Van an automatic win, and in doing so, "erred." *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977).

Nowhere in its responsive brief does Art Van contend that it produced evidence in this litigation showing its decision to terminate the employees was tied to COVID. As Appellants pointed out in their Opening Brief, it was not within the sound discretion of the Bankruptcy Court to simply grant summary judgment on Art Van's affirmative defense as "indisputable" in an evidentiary vacuum.

## A. WARN Requires More than Unfounded Assertions to Sustain an Affirmative Defense

In its defense, Art Van claimed "unforeseeable business circumstances" ("UBC") caused the layoff, one of the "three conditions under which the WARN notification period may be reduced to less than 60 days." 20 C.F.R. § 639.9. These exceptions are WARN's affirmative defenses. *In re AE Liquidation, Inc.*, 522 B.R. 62, 67 (Bankr. D. Del. 2014), *aff'd,* 556 B.R. 609 (D. Del. 2016), *aff'd,* 866 F.3d 515 (3d Cir. 2017); *In re APA Transport Corp. Consol. Litig.*, 541 F.3d 233, 246 (3d Cir. 2008), *as amended* (Oct. 27, 2008) (the "affirmative defense to liability … means the employer bears the burden of establishing its elements."); 20 C.F.R. § 639.9 ("The employer bears the burden of proof that conditions for the exceptions have been

met.").  It is hornbook law that a party bearing the burden of proof with respect to an issue has the obligation to come forward with some evidence to carry its burden.

Employers must prove with certainty that the business circumstance it claims was unforeseeable was the cause of the layoff.  Often, the evidentiary record presents various possible causes for a layoff, requiring the court to determine the claimed cause was *the* cause. As Appellants argued to the Bankruptcy Court, the UBC defense demands more than the fact that COVID had some "impact[.]"  (Opinion at 23 (PA01294)).  It requires evidence that it "broke the camel's back," not just advocates' assertions.  (Opinion at 24, (PA01295)).  In the cases the Bankruptcy Court relied on, the courts decided causation (or denied summary judgment thereon) only after weighing various potential causes developed in the evidentiary record.  *See Gross v. Hale-Halsell Co.*, 554 F.3d 870, 878 (10th Cir. 2009) (after discovery, facts "unequivocally" established cause of the layoffs); *Roquet v. Arthur Andersen LLP*, 398 F.3d 585, 587 (7th Cir. 2005); *In re Jevic Holding Corp.*, 496 B.R. 151, 165 (Bankr. D. Del. 2013) (causation determined, *inter alia*, based on testimony of the debtor's principal); *Jones v. Kayser-Roth Hosiery, Inc.*, 748 F. Supp. 1276, 1285 (E.D. Tenn. 1990) (same); *Easom v. US Well Servs., Inc.*, 527 F. Supp. 3d 898, 916 (S.D. Tex. 2021), *rev'd and remanded*, 37 F.4th 238 (5th Cir. 2022) (denying summary judgment on natural disaster defense).  (*See also* Op. Br. at 16-19, *citing Calloway v. Caraco*; *Carpenters v. Dillard*; *Bradley v. Sequoyah*; *Wallace v. Detroit Coke*).  The Bankruptcy Court found simply that the most accessible notion—namely one state's stay-at-home order (which Pennsylvania only issued on the day of the layoff)—was sufficient support for the cause of the layoff rather than giving Appellants the chance to provide a fuller frame of

reference.[4]  (Although other states subsequently issued similar orders, they were after the fact.)

**B.  The Decision Rested on No Evidence**

Appellants noted in the Opening Brief that Art Van's assertions connecting the layoff to COVID were barren of *any* evidentiary support that the decision itself was made for COVID reasons.  When Art Van first told employees that, with the onset of COVID, it no longer "support[ed]" the wind down – in its March 19 notice terminating them – it was free of details. (Notice (PA00795); Op. Br. at 22-24 (specific statement requirement)).  Art Van kept quiet about this decision in the Bankruptcy Court for about ten days.  When it finally announced its decision to convert to Chapter 7, Art Van blamed something else.  (*See* Op. Br. at 28 (financial obligations triggered by layoff)).  Only in its briefs arguing for the unopposed conversion of the Chapter 11 case to Chapter 7, did Art Van set forth the summary narrative blaming COVID for its ruin.  (*See* Op. Br. at 22 (Bankruptcy Court cited Art Van's Summary Judgment Memorandum, which cited press releases and its Motion to Convert); Motion to Convert, ¶¶ 1-2, 25 (PA01346-PA01347, PA01355-PA01356);).

In its Responsive Brief, Art Van repeats the self-serving passages in its Conversion motion (which themselves cite to nothing) when it states that because of COVID it was "forced…to discontinue all retail operations and immediately shut down [its] stores[,]" and

---

[4] As Appellants have noted, even COVID-era WARN courts require measuring the effects of the pandemic against other business circumstances to find the direct cause of the layoffs.  (Op. Br. at 21, *citing Easom* and *Benson*.) Indeed, while the Bankruptcy Court relied heavily on the *Easom* district court's decision for various points of law throughout its Opinion, it ignored *Easom*'s application of the law.  The *Easom* district court denied summary judgment on whether COVID-19 caused the layoffs there because other economic circumstances—primarily an oil price war between Saudi Arabia and Russia—were equally likely candidates and the question of each factor's relative contribution to the layoffs "[could] not be answered definitively on the current record."  *Easom v. US Well Servs.*, 527 F. Supp. 3d 898, 916 (S.D. Tex. 2021), *rev'd and remanded on other grounds*, 37 F.4th 238 (5th Cir. 2022).  It is notable that the record in *Easom* was remarkably similar to the record here – largely filled with public media reports about COVID-19 with minimal, if any, formal discovery.  527 F. Supp. 3d. at 904-95 (itemizing the summary judgment record which included the plaintiff's apparently unanswered "discovery requests").  The *Easom* court's application of the WARN causation standard to deny summary judgment was consistent with the rigor employed by WARN courts when determining the cause of a mass layoff.

"[t]hus…[it] made the painful decision to suspend all sales operations in all stores and terminate the majority of [its] employees[.]" (Resp. Br. at 16, *citing* Motion to Convert, ¶¶ 1-2, 25 (PA01346-PA01347, PA01355-PA01356)). At no time has Art Van supported these defense-friendly assertions with any declaration, affidavit or documentary evidence that tied the economic impacts of COVID—such as the stay-at-home orders or drop in sales at the stores—to the decision to permanently terminate the workforce.

The Bankruptcy Court acknowledged that Art Van bears the burden of proof with respect to its affirmative defense. (Opinion at 20 (PA01291)). The court should have noted the absence of evidence proffered by the movant, Art Van, and drawn a negative inference from its non-production. *See Hahn v. A. Richfield Co.*, 625 F.2d 1095, 1099–100 (3d Cir. 1980), *citing generally* 9 J. Wigmore, Evidence s 2486 (3rd ed. 1940). An adverse inference is especially appropriate when "(1) the evidence or witness is in the party's control, (2) the evidence was not equally available to the other party, (3) the party would have offered the evidence if it was favorable; and (4) the party last in possession of the evidence had no reasonable excuse for the failure to produce it." *Russell v. Natl. R.R. Passenger Corp.*, 189 F.3d 590, 595 (7th Cir. 1999).

Art Van must have direct evidence of its purported decisional process for it purportedly made the decision. Corporations, and certainly those in Chapter 11, document their business-ending decisions in emails, minutes, and resolutions. There are board members, officers, executives, consultants, and professionals who must have personal knowledge. In fact, many are hired and paid for with estate funds specifically to testify and safeguard the mandatory transparency. Yet, Art Van produced nothing of that sort. Nor has it supplied an explanation for that failure. No court has granted summary judgment on one of WARN's affirmative defenses based on government press releases and an after-the-fact citationless statement in a brief.

Art Van's word-smithed narrative attempts to smooth over the incongruous fact that while calling its COVID responses temporary, it permanently terminated its workforce. It writes that it made a "painful decision to suspend all sales operations in all stores and terminate the majority of [its] employees[.]" (Resp. Br. at 16). Had Art Van "suspended" its employees it would have acted in step with its "suspended" operations and avoided a WARN claim, since to "suspend" is to "to cause to stop temporarily." ("Suspend." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/suspend, accessed Aug. 82022). WARN notice pertains to only permanent termination. (*See* Notice (PA00795) ("All terminations of employment will be permanent.")) Admitting to permanent terminations would have shattered its image of moderation. Hence, on the day of the terminations, Art Van kept altogether silent about them in court. (*See* Op. Br. at 25-27). To maintain that image, it claimed weeks later in its Motion to Convert, that it had "hoped" the terminations would be temporary at the time, consistent with its "suspended operations" narrative. (Motion to Convert, ¶25 (PA01356)). Art Van simply hid from view what it told its employees explicitly – that they were permanently terminated that day – not that they were furloughed, temporarily laid off, or subject to recall. (Notice (PA00795)). Art Van now claims that COVID clearly compelled the timing of its permanent terminations, but Art Van never has explained why, if so, it never said or even broached them at the time.

To dodge the question, Art Van again mischaracterizes Plaintiffs' objection as a hindsight-based quibble whether the layoff was the best choice. That presupposes, however, that Appellants, or anyone else other than Art Van, knows what choices Art Van had. Without competent evidence there is, at most, only a plausible inference that COVID left Art Van no choice. It was Art Van's burden to prove it with evidence, however, but Art Van, in its Response

Brief, points to none.  The inference raised by Art Van's insufficient showing and its Janus-faced conduct is that Art Van was reacting to a more obdurate foil than COVID when it ditched its plans with the layoff.   All inferences should have been drawn in Appellants' favor to deny summary judgment, not in Art Van's.

### C. Appellants' Evidence Raised a Strong Inference that COVID was Not the Cause of the Layoff, Which Outweighed the Non-Existent Evidence to the Contrary

Even if, assuming *arguendo*, Appellants had the burden of rebutting an inference that COVID caused the terminations, Appellants did so.  Appellants offered evidence—not speculation—that Art Van was less than forthcoming.  Appellants pointed to statements in the record by Art Van's and other counsel that give rise to a genuine issue of disputed fact as to whether the cause of the layoffs was COVID.

First, on the same day Art Van told its employees that COVID had caused it to abandon its wind-down plan and terminate them effective the next day, (Notice (PA00795) ("the Company can no longer support the wind down…"), Art Van was in court.  It did not mention the permanent terminations which it was announcing out of court.  It was stating unequivocally that it was still exploring wind-down options and temporary issues raised by the onset of the COVD restrictions.  (Op. Br. at 25-27).  These simultaneous behaviors are poles apart.  They cast suspicion on the statement to employees.  Had COVID's interference with Art Van's plan risen to its abandonment of the Chapter 11 process (as it told its employees) it is inconceivable that Art Van would not have mentioned it when updating the Court that day.  Art Van's dichotomous behavior raises the inference that its reason for terminating the employees was something it wished to avoid speaking about, causing it to use COVID as a pretext for the employees, and to keep silent about the terminations in court that day.

This inference was strengthened nearly two weeks later, when Art Van had *another*

opportunity to explain to the Bankruptcy Court that COVID had supposedly wrecked the Chapter 11 plan, but again it did not. Instead of attributing its demise to COVID, Art Van stated that *the layoffs themselves* (triggering millions of dollars of obligations) were what doomed the wind-down plan and turned the case toward Chapter 7 liquidation. (Op. Br. at 28-29). The consequence of the permanent layoffs—the end of the Chapter 11—overshadowed the question why the permanent layoffs had even taken place. That Art Van did not advance COVID as the cause would be understandable, given on the day of the layoff announcement, Art Van has said nothing about it being that serious. Art Van apparently was keeping a reason for the layoff to itself.

That there was critical bankruptcy information that Art Van did not want to share is supported by a second fact issue: the accusation by Wells Fargo (Art Van's main counterparty and necessary funder of the Chapter 11 wind-down) that Wells Fargo had never "gotten the information that [it] needed to even consider a full wind-down plan." (PA00811 lines 16-18). There are many reasons why Chapter 11 cases convert to Chapter 7, some of which may be unflattering: the debtor realizes its hopes of abating a continuing loss were not realistic; its gamble that the secured lender would fund the enterprise was naive; or its own financial analysis that revenue generation could exceed the administrative fees and costs was flawed. Wells Fargo's comments at the hearings point to the possibility that Art Van's purported wind-down plan was either a non-starter to begin with or doomed by a reason Art Van preferred not to relate.

The cumulative evidence in the record gives rise to an inference that must be credited in Appellants' favor – that the cause of the layoff was something other than COVID. That inference is stronger than the direct evidence that COVID caused the layoff, which Art Van would have produced if it existed, but which, in the record, is nil.

### D. Appellants Sought Evidence but Were Denied It

When Appellants sought discovery from the beginning of the litigation, they sought specifics regarding the cause of the terminations. Art Van produced three partial documents, none of which related to the layoff decision[5], and filed for summary judgment. Appellants thus filed a cross motion under Federal Rule of Civil Procedure 56(d).

As Appellants have noted, in the Third Circuit, "properly filed Rule 56([d)]" motions are usually granted "as a matter of course." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007). This is "particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party." *Id*. In such circumstances, where a Rule 56(d) request "identifie[s the] areas of inquiry that…are relevant to deciding" summary judgment, denying such a request is reversible error. *Id*.

Appellants' was a textbook Rule 56(d) request. (*See* Pls.' Opp. to Summ. J. at 5-6 (PA00986)). The Roupinian Declaration attached to Plaintiff-Appellants' opposition to summary judgment detailed the numerous discovery requests (virtually all of them) which were pending at the time Art Van moved for summary judgment. (*See* Op. Br. at 3-5, 37; PA01012-PA01015). The Declaration identified the topics that were needed to respond to the factual allegations underlying Art Van's UBC and natural disaster affirmative defenses. (Declaration, ¶15 (PA01015) (Plaintiffs could not adequately oppose the defenses without discovery on "Defendants' purported liquidation process, the operations of the stores during the pendency of the bankruptcy, Defendants' efforts to obtain financing, and the decision-making process that led to the terminations of Defendants' employees.")

Indeed, Appellants went beyond the requirements of Rule 56(d) by showing in their

---

[5] As noted in the Opening Brief, the documents were board minutes from February and April, 2020, and a "Wind-Down Plan" dated days after the terminations. (Op. Br. at 4).

papers facts already in the record which disputed Art Van's claimed defenses (such as (a) the discrepancies between Art Van's in-court and out-of-court explanations for the layoffs and abandonment of the wind-down plan, and (b) Wells Fargo's claim that Art Van had not provided sufficient information to support the wind-down plan). Such an affirmative showing is not even necessary for Rule 56(d) purposes. *See Abington*, 480 F.3d at 258 n.8 (rejecting defendant's argument that plaintiffs needed to "detail[] those facts within their knowledge that might" rebut the defendant's summary judgment theory, holding that "[w]e will not fault the Does for failing to provide information principally within the control of Abington and which they could only have known secondhand."); *Harley v. Paulson*, No. CIV 07-3559(JBS), 2008 WL 5189931, at *6 (D.N.J. Dec. 9, 2008) ("Plaintiff must be given an opportunity to seek contradictory evidence in Defendant's possession.").

The Bankruptcy Court did not discuss Rule 56(d) or its requirements. It made only passing mention of Plaintiffs-Appellants' cross-motion in the "Conclusion" section of its Opinion, where it stated that because "it had sufficient undisputed facts and facts of record" to decide the summary judgment motion, it would deny Plaintiffs-Appellants' request. (Opinion at 29 (PA01300)).

Art Van tries to fill in the gaps. To be clear, Art Van does not contest the majority of factors courts consider when ruling on a Rule 56(d) motion. Art Van does not argue that the information Appellants seek "was not sought during discovery[;]" that Appellants' "proper course of action would have been to file a motion to compel[;]" that the information is "not in possession of the moving party [i.e., Art Van;]" that Appellants "are in a better position to provide such evidence[;]" or that Appellants "could have deposed" the relevant witnesses. *Rosenberg v. JCA Assocs., Inc.*, No. CIV. 03-0274(JBS), 2007 WL 1038893, at *8 (D.N.J. Mar.

30, 2007). Instead, Art Van makes generic citations to out-of-circuit cases which state, as a general principle, that the Rule 56(d) movant must show why they need discovery, and argues that Appellants are just "speculating" about what the evidence may show (a position Art Van has purposefully put Appellants in by resisting discovery).[6] Appellants have more than made their specific need for discovery clear.

Appellants' discovery is aimed precisely at the core of Art Van's affirmative defense: the business circumstances surrounding the layoff and the process by which Art Van decided to effect it. The discovery will seek the testimony of Art Van's principals and any supporting documentation regarding COVID's impact on Art Van's operations and the process by which Art Van made its decision to terminate Appellants. (*See*, *e.g.*, Op. Br. at 4 (informal requests regarding options considered other than permanent terminations); *id*. at 37 (interrogatories regarding participants in COVID-related discussions and the layoff decision)).

The discovery will similarly focus on Art Van's interactions with Wells Fargo and the viability of the wind-down plan. (Op. Br. at 37 (requests for communications concerning Art Van's financing). As a Chapter 11 estate fiduciary, Art Van was duty-bound to consult its secured lender throughout the process, both in formulating the wind-down plan and before taking extreme actions that would jeopardize it. To the extent it failed to do so, either by failing to provide Wells Fargo sufficient information to sustain the wind down plan or by making its March 19 decision unilaterally, the "cause" of the layoff shifts away from COVID and toward Art Van itself.

---

[6] Art Van also claims that Appellants are "disingenuous" for seeking discovery because the bankruptcy court proceedings are public. That is irrelevant. The Federal Rules of Civil Procedure do not require a litigant to rely on a record created by an opposing party in other proceedings, through which the opposing party sought to accomplish its own goals. *See F.T.C. v. Chinery*, No. CIV.05-3460 GEB, 2007 WL 1959270, at *9 (D.N.J. July 5, 2007) (where the only evidence available to plaintiff was "information obtained from other proceedings involving the defendants to which the [plaintiff] was not a party[,]" court denied defendant's motion for summary judgment as premature and ordered formal discovery).

There is not a single case that Art Van or the Bankruptcy Court have pointed to in which a plaintiff has been denied the right to look at a company's documents, and ask it questions when it is confronted by an affirmative defense. For the Bankruptcy Court and Art Van to insist that Appellants are just guessing what the evidence would show simply reinforces the need for discovery because in this remarkable case the movant, who has sole possession of the direct evidence, provides none whatsoever. There are many reasons why Chapter 11 cases convert to Chapter 7. The pandemic did not make these endemic reasons go away. Nor did it make the Federal Rules of Civil Procedure go away, which require that case dismissals are preceded by discovery and supported by evidence.

## II.  ART VAN'S "LOGICAL" AND "POLICY"-BASED READ OF WARN'S NATURAL DISASTER DEFENSE IS ATEXTUAL

The Bankruptcy Court's holding that COVID-19 is a WARN "natural disaster" is an outlier. Every other Rule 12(b)(6) or Rule 56 motion to dismiss a WARN suit based on the defense has failed. All the other courts have considered the statute's construction and agency interpretation. The Bankruptcy Court simply relied on the one interpretation that has been reversed. Again, Art Van defends itself, by advocating that when it comes to COVID, its word should be taken, regardless of the law and facts.

### A.  Art Van's Definition of "Natural Disaster" is Unfounded

To determine the meaning of "natural disaster" as used in the WARN Act, the four other courts that have ruled, have looked at the words' plain meaning and statutory construction. Art Van argues that COVID-19 qualifies as a WARN natural disaster based on Art Van's own "ordinary, logical" reading of the statute, which fails both of these norms. (Resp. Br. at 29).

The origins of COVID-19 are critical in determining whether it was a "natural" disaster. *See Carver v. Foresight Energy LP*, No. 3:16-CV-3013, 2016 WL 3812376, at *4 (C.D. Ill. July

12, 2016) ("human involvement in the origins of the combustion events would seem to preclude the events from being considered a natural disaster") (*cited in* Op. Br. at 33).  Art Van claims it is "irrelevant" whether the spread of COVID-19 began through human error or from animals; to Art Van, disasters are "natural" to the extent they are somehow related to "the external world in its entirety[,]" a definition that Art Van found for the word "nature." (Resp. Br. at 30 n.45 ).  But "nature" is not found in the WARN Act. Congress chose the word "natural" to modify "disaster." Hence, the Fifth Circuit Court of Appeals in *Easom* relied on definitions of "natural" meaning "of or *arising from* nature" and "not artificial or manufactured."  *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 243 (5th Cir. 2022) (emphasis added), *citing* WEBSTER'S NEW WORLD DICTIONARY (3d coll. ed. 1988).  That the definition of "natural disaster" and the exact origins of COVID are inconclusive, makes statutory interpretation necessary before a WARN case is dismissed due to a "natural disaster."

The courts, ultimately, have relied primarily on the well-established canons of statutory construction to determine the meaning of "natural disaster" as used in the WARN Act. Specifically, the canon of *noscitur a sociis* dictates that "natural disaster" should be interpreted consistent with WARN's listed examples of such disasters (floods, earthquakes, drought) to include only "hydrological, geological, and meteorological events."  *Easom*, 37 F.4th at 244. Similarly, the canon of *expressio unius est exclusion* gives rise to the inference that because Congress had legislated regarding pandemics in other contexts, yet chose to not include "pandemic," "disease," or "virus" in the statute, such phenomena were deliberately excluded from qualifying as "natural disasters" for WARN purposes.  *Id.*[7]

---

[7] Art Van cites cases where COVID-19 was found to be (or simply described as) a natural disaster in wholly different contexts, like private parties' contracts or state laws.  (Resp. Br. at 31 n.46).  These are irrelevant to the question of Congress' intent when it excluded (and listed specific examples of) "natural disasters" in the WARN Act.

Art Van rejects these canons, arguing that if Congress had wanted to *exclude* pandemics, it would have done so *explicitly*. (Resp. Br. at 32-33). According to Art Van, the use of "*any* form of natural disaster" should be the end of the inquiry. (*Id.*) That is simply not how the federal judiciary interprets Congress' words. *See Yates v. United States*, 574 U.S. 528, 544 (2015) (cited by *Easom*, 37 F.4th at 243) (applying *noscitur a sociis* to interpret statutory list beginning with "any").

Art Van complements its unfounded statutory construction position with an off-base policy argument. It notes that one of the purposes of WARN notice is to afford workers an opportunity to seek new employment. Then Art Van declares that it just would not "make sense" to hold Art Van accountable for abruptly cutting off its employees' income and health insurance during a pandemic because "[t]here were no new jobs" for them anyway. (Resp. Br. at 33). Putting aside the scorn of this bald statement, it reveals a topsy-turvy understanding of the WARN Act. Congress, indeed, enacted WARN to help employees when jobs are scarce. *See Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F. Supp. 2d 116, 122 (D. Del. 1999), *citing* 20 C.F.R. § 639.1(a) ("[A]dvance notice allows workers and their families transition time to adjust to the prospective loss of employment, seek and obtain alternative jobs, and if needed, enter skill training or retraining programs that will allow them to successfully compete in the job market."). Accordingly, the fewer jobs there are, the more necessary WARN's 60 days of notice becomes. That "[t]here were no new jobs" counsels *against* employers throwing workers into a free-fall stripped of health insurance during a pandemic without having a documented reason for doing so to which it could attest under oath if challenged.

**B.  Art Van's "But-For" Standard Folds under DOL and Circuit Court Authority**

In *Easom*, the Fifth Circuit joined the Sixth, Tenth and D.C. Circuits in finding that "due

to" is ambiguous as to whether it incorporates proximate or but-for causation.  *Easom,* 37 F.4th

at 245 n.2 (citing cases).  It therefore afforded controlling *Chevron* deference to the DOL's

regulations which requires that a natural disaster "directly" cause a layoff to qualify for WARN's

exception.  *Id.* at 245, *citing* 20 C.F.R. § 639.9(c)(2).  As *Easom* noted, "direct" causation is

tantamount to proximate causation.  *Id*. at 245, *citing Paroline v. United States*, 572 U.S. 434,

444 (2014) ("The idea of proximate cause .... generally refers to the basic requirement that ...

there must be some direct relation between the injury asserted and the injurious conduct

alleged[.]") (quotations omitted). Art Van argues that "due to" should incorporate but-for

causation but does not support its position with any form of statutory interpretation, opting

instead for more novel policy arguments and one purportedly based on WARN's legislative

history.[8]

First, Art Van again argues from a policy perspective for a "less stringent, more flexible"

application of the exception because an "overly narrow" one would impinge on WARN's

"protections" and "advantages" afforded to businesses.  (Resp. Br. at 35-36).  Again, WARN's

protections are for workers, not businesses.  The statute is construed consistent with *that*

---

[8] Although Art Van claims that the regulations are null because the statute unambiguously calls for but-for causation, (Resp. Br. at 36 n.48), nowhere does Art Van even purport to explain how this is so.   Art Van does not interpret the words "due to" or even cite a case doing so.  The closest Art Van comes to what it calls a "textual interpretation" is its recital of the *definition* of but-for causation and a declaration that WARN "reasonably signifies" that standard. (Resp. Br. 34-35, *citing U.S. v. Salinas, 918 F.3d 463, 466 (5th Cir. 2019)* and *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739 (2020)).  From a textual perspective, Art Van offers nothing to oppose *Easom*'s straightforward analysis.

Art Van later notes that *Bostock* found the phrase "because of" in Title VII of the Civil Rights Act of 1964 incorporated but-for causation.  *Bostock*, 140 S. Ct. at 1739.  But as the *Easom* court noted, *Bostock* did not discuss proximate cause.  *Easom*, 37 F.4th at 245 n.2.  That makes sense, because *Bostock* addressed a different causation question—namely, whether sex need be a but-for cause of discrimination versus the *only* cause. 140 S. Ct. at 1739.  Here, the question is whether COVID-19 need be a but-for cause *among other causes*.  In any event, as *Easom* noted, the Supreme Court was interpreting a different phrase from that used in the WARN Act.  *Bostock* is, therefore, inapposite compared with the numerous circuit courts that have interpreted "due to."

purpose. *See Hotel Emps. & Rest. Emps. Int'l Union Loc. 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999) ("The WARN Act was adopted in response to the extensive worker dislocation that occurred in the 1970s and 1980s"); *Easom*, 37 F.4th at 244 ("[T]he WARN Act's exceptions permitting a reduction of the notice period run counter to the Act's remedial purpose and thus, are to be narrowly construed.") (citations and quotations omitted).

Next, Art Van argues that the legislative history supports its position. It observes that Congress considered but ultimately rejected language that would have applied the exception to layoffs "due directly or indirectly" to a natural disaster. (Resp. Br. at 37) (citing 134 Cong. Rec 16,122-23 (1988). Art Van does not explain, however, how "[a]s a matter of basic statutory construction," this deletion supports broad causation, rather than proximate cause. Oddly, Art Van cites Senate floor remarks going both ways. (Resp. Br. 37 n.49 (Dole remark that it may apply to "someone downstream" from the farmer during a drought; Metzenbaum remark that exception was "not a carte blanche [for] anybody who claims they had some impact, however small.").

Indeed, Senators were still puzzled a week later. *See* 134 Cong. Rec. S8854-02, 1988 WL 173512 (Jul. 6, 1988) (remarks of Senator Wilson) ("[A]fter changes made last week in the Dole amendment on natural disasters which struck the words "There directly or indirectly," it is not clear what its effect would be on meatpackers. Specifically, it is likely that next year at some unknown time cattle will be unavailable to meatpackers. This shortage will result from the present drought[.] … It is not clear from last week's debate if the impact from the drought on meatpackers will be covered by the Dole amendment.").

The legislative history does not clarify the issue. Deference to the DOL, the agency charged with WARN's interpretation, which after notice and comment and its own experience

found "direct" caution is appropriate. *Easom,* 37 F.4th at 245, *citing* 20 C.F.R. § 639.9(c)(2).

## **CONCLUSION**

For the foregoing reasons, and those contained in Plaintiffs-Appellants' Opening Brief,

the judgment below in favor of the Defendant-Appellee should be vacated and the case remanded

for discovery.

Dated: August 8, 2022        Respectfully Submitted,

                        */s/ Michael J. Joyce*
                        Michael J. Joyce (No. 4563)
                        **JOYCE, LLC**
                        1225 King Street, Suite 800
                        Wilmington, DE 19801
                        Telephone: (302)-388-1944
                        Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian
Jack A. Raisner
Gail C. Lin
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email:jar@raisnerroupinian.com
Email: gcl@raisnerroupinian.com

*Attorneys for Appellants and Cross Appellees*
*Todd Stewart and Jennifer Sawle, on behalf of themselves and all others*